FILED

2015 Aug-24  PM 03:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

```
   1

   2

   3

   4    ------------------------------------

   5                                      )

   6    In Re:                            )

   7                                      )

   8    Fairfield Shopping Center, LLC )

   9    ------------------------------------ )

  10

  11          EXAMINATION UNDER OATH OF JOSEPH SCHNEERSON

  12                   Los Angeles, California

  13                 Wednesday, April 18, 2012

  14                        Volume I

  15

  16

  17

  18

  19

  20

  21    Reported by:

  22    CATHRYN L. BAKER

  23    CSR No. 7695

  24    Job No. 141218A

  25    PAGES 1 - 73
```

Page 1

```
 1
 2
 3     _____
 4                                     )
 5     In Re:                          )
 6                                     )
 7     Fairfield Shopping Center, LLC  )
 8     _____)
 9
10
11
12
13
14
15              Examination Under Oath of JOSEPH
16     SCHNEERSON, Volume I, taken on behalf of American
17     Safety Indemnity Company, at 835 Wilshire Boulevard,
18     Los Angeles, California, beginning at 9:25 A.M. and
19     ending at 10:50 A.M. on Wednesday, April 18, 2012,
20     before Cathryn L. Baker, Certified Shorthand
21     Reporter No. 7695.
22
23
24
25
```

```
 1    APPEARANCES:

 2

 3    For American Safety Indemnity Company:

 4        BOVIS KYLE & BURCH, LLC

 5        BY:  STEVEN J. KYLE, ESQ.

 6        200 Ashford Center North

 7        Suite 500

 8        Atlanta, Georgia 30338-2668

 9        (770) 668-0878

10        kyle@boviskyle.com

11

12    For GE Commercial Finance Business Property Corp:

13        ADAMS AND REESE LLP

14        BY:  STEPHEN A. ROWE, ESQ.

15        2100 Third Avenue North

16        Suite 1100

17        Birmingham, Alabama 35203-3367

18        (205) 250-5000

19        steve.rowe@arlaw.com

20

21    Also Present:

22        Dora R. Sher

23

24

25
```

Page 3

```
 1                    INDEX
 2   WITNESS                      EXAMINATION
 3
 4   JOSEPH SCHNEERSON
 5
 6              (By Mr. Kyle)           6
 7              (By Mr. Rowe)          58
 8
 9
10                    EXHIBITS
11   NUMBER                            PAGE
12   Exhibit 1    Commercial Package Binder    39
13
14   Exhibit 2    ACORD Property Loss Notice   49
15
16   Exhibit 3    November 16, 2011 e-mail to
17                Steven Riss from Dora Sher
18                with attachments             53
19
20   Exhibit 4    Invoice with Evidence of
21                Property Insurance           61
22
23
24
25
                                       Page 4
```

1          Wednesday, April 18, 2012; Los Angeles, California

2                              9:25 A.M.

3                            -- o0o --

4

5              JOSEPH SCHNEERSON,

6     the witness, having been administered an oath in

7     accordance with CCP Section 2094, testified as

8     follows:

9

10             MR. KYLE:   This is an examination under

11    oath of Joseph Schneerson.

12             MR. ROWE:   Before you ask any questions,

13    can we make the statement we made yesterday?

14             MR. KYLE:   Yes.

15             MR. ROWE:   That we're taking this

16    deposition, reserving all rights to object, either

17    side, in case this deposition is used in litigation.

18    It does not currently exist.

19             MR. KYLE:   Or this examination under oath.

20             MS. SHER:   I have a question.  You used the

21    word "deposition"; you said "examination."  There is

22    a difference, is there not?

23             MR. KYLE:   There is.  This is an

24    examination under oath.

25             MS. SHER:   Okay.

                                            Page 5

1          MR. KYLE:  Because nothing is in
2    litigation.  I understood what Steve was saying.
3    The purpose is, if there is any objection to any
4    question, any responsiveness, when and if the
5    examination under oath is used in any capacity,
6    everybody reserves their rights.  That was our
7    intent yesterday and that's what we're going to be
8    doing today.  Fair enough?
9          MR. ROWE:  Agreed.
10          MR. KYLE:  Good.
11
12                    EXAMINATION
13    BY MR. KYLE:
14      Q    Mr. Schneerson, this will be your
15    examination under oath.  You have affirmed to tell
16    the truth.  And I thank you for that.
17          It's being taken pursuant to the terms and
18    conditions of an insurance policy that was written
19    by American Safety Indemnity Company.  Policy No.
20    201 CMP 1000482-10.  Named insured:  Fairfield
21    Shopping Center, LLC.  Mailing address:  In care of
22    Ybm Properties, 500 North Larchmont, Los Angeles,
23    California 90004.
24          The policy period was September the 15th,
25    2010 to September the 15th, 2011.

Page 6

1              Okay.  I had sent an e-mail to Dora
2      requesting that she bring the agency file.  And as
3      we discussed out in the anteroom, you are paperless;
4      is that correct?
5          A    Correct.
6          Q    You have certain documents in your
7      computer.  And as you have indicated to me, you
8      believe all those documents are in the possession of
9      the insurance company?
10         A    Correct.
11         Q    Am I saying it correct?
12         A    Correct.
13         Q    As we go through this questioning, if we
14     find something that we may not have, I may ask you
15     to look in your computer and maybe make a copy of
16     something for me, but at this point, we're going to
17     proceed based that we have all the documents.  Fair
18     enough?
19         A    Fair enough.
20         Q    Can I begin by asking you just some general
21     questions, like stating your name.
22         A    Joseph Schneerson.
23         Q    And your address, please.
24         A    4221 Wilshire Boulevard, Suite 222, L.A.
25     California 90010.

                                              Page 7

1      Q     And what is your occupation, sir?

2      A     Insurance broker.

3      Q     Is there a difference between the term

4   insurance broker and insurance agent?

5      A     I believe insurance broker works for the

6   client and insurance agent works for or represents a

7   company.

8      Q     So in this instance, as an insurance

9   broker, you would be working for Fairfield Shopping

10  Center, LLC, the insured?

11     A     Correct.

12     Q     And the insurance agent, which I think

13  would be AmWINS, they would have been working for

14  American Safety?

15     A     No.  AmWINS is a broker also.  They're a

16  wholesale broker.

17     Q     Both you and AmWINS would be working for

18  Yair Ben-Moshe in his capacity as a managing member

19  of the LLC?

20     A     Could be.

21     Q     I guess you're confused about his role

22  but --

23     A     No.  AmWINS works for me.  I work for the

24  client.  Indirectly everybody works for the client,

25  including the insurance company.  I don't know why

1    you want to know this question.

2        Q    Are you the owner of the Shomer -- is it

3    Shomer Insurance Incorporated?

4        A    Correct.

5        Q    And you're the owner?

6        A    That's correct.

7        Q    I'm trying to explore a little bit about

8    your experience in the insurance agency.

9             How long have you been in the insurance

10   industry?

11       A    26 years.

12       Q    Have you had an opportunity to be in

13   contact with insureds on both personal lines and

14   commercial lines?

15       A    Correct.

16       Q    Does your agency have a tendency to write

17   more for personal lines or for commercial lines?

18       A    Commercial lines, the majority.

19       Q    Do you have any other thing you write or

20   help assist in the placement, other than personal

21   and commercial lines?

22       A    A little bit of medical.  That's really

23   all.

24       Q    Do you do any D&O?

25       A    That's part of commercial.

Page 9

1    Q     Inland marine would be commercial?

2    A     Yes.

3    Q     Thank you.  I had a copy of your website,

4  you represent a number of fine companies, I

5  understand.

6    A     I haven't looked at the website in a while.

7  I couldn't answer that.

8    Q     Do you have a contractual relationship with

9  my company American Safety Indemnity Company?

10   A     I don't think so.

11   Q     With certain companies that you have, you

12 have contractual relationships with certain

13 insurance companies?

14   A     I imagine so.

15   Q     And that allows you to bind certain risks?

16   A     Correct.

17   Q     But you do not have the authority to bind

18 anything with regard to American Safety Indemnity

19 Company?

20   A     That's correct.

21   Q     Now, let me ask you, when did you first

22 have an opportunity to meet Yair Ben-Moshe?

23   A     Ten years ago.

24   Q     Was it in a professional capacity?

25   A     I don't remember.

Page 10

1     Q    As a result of your being in contact with

2  him, did he ask you to write some insurance on some

3  of his properties?

4     A    Correct.

5     Q    What about a gentleman by the name of David

6  Maimon, do you know Mr. Maimon?

7     A    No.

8     Q    Have you ever spoken to Mr. Maimon?

9     A    I don't think so.

10    Q    With regard to the placement of insurance

11 at Fairfield Shopping Center, LLC, was all your

12 contact with Mr. Ben-Moshe?

13    A    I believe so.

14    Q    How would you describe the relationship

15 between you and Mr. Ben-Moshe?

16    A    It's all right.

17    Q    A business and -- would it be business or

18 friendship or would it just be business?

19    A    Combination of both.

20    Q    Do you happen to attend the same synagogue

21 together?

22    A    No.

23    Q    I'm not going to ask you the different

24 properties that you have assisted Mr. Ben-Moshe

25 with, but can you give me a rough estimate as to how

                                        Page 11

1    many properties you have placed insurance for?

2        A    I don't know offhand.  And it's

3    confidential information.

4        Q    Let's talk about the property in question.

5    The Fairfield Shopping Center in Fairfield, Alabama.

6             It's called Fairfield Shopping Center, LLC.

7    When did you first become aware of a desire on the

8    part of Mr. Ben-Moshe to insure this property?

9        A    Whenever we insured it, a little while

10   before we insured it.

11       Q    I'm sorry.  I didn't hear you.

12       A    Before we insured, a little while before

13   that.

14       Q    My understanding is that the property was

15   purchased on September the 15th, 2006.  And I'm

16   under the impression that there was a policy written

17   with an insurance company by the name of Granite

18   State Insurance Company.  Is this -- does this help

19   refresh your recollection?

20       A    There is a policy written by Granite

21   Insurance Company, that's correct.

22       Q    Can you give me the full name of Granite

23   State, if I'm not misstating it?

24       A    I think it's an AIG.  I don't have a full

25   name at the tip of my fingers.

1      Q     We don't have a copy of the insurance

2     policy.   Can you assist me in obtaining a copy of

3     the policy that was in effect for the year before

4     the American Safety policy went into effect, which

5     would have been -- I'm under the impression, 9/15/09

6     to 9/15/10.

7      A     If I'm obligated, I will.

8      Q     If Mr. Ben-Moshe requests it, will you

9     produce it for us?

10     A     Correct.

11     Q     Tell me, can you confirm that the Granite

12    State Insurance Company -- let me strike that.

13           Are you familiar with the term

14    Distinguished Programs?

15     A     Yes.

16     Q     What is Distinguished Programs?

17     A     I believe they're property -- it's a

18    program that they write insurance through then at

19    the Granite State.

20     Q     Would Distinguished Programs be in the same

21    role as AmWINS with regard to American Safety?

22     A     To a point.

23     Q     When you wrote the risk or submitted an

24    application for this property, would it be submitted

25    to Distinguished Programs, who would then place it

Page 13

```
 1   with Granite State, or do I have it backgrounds?
 2        A     That's correct.
 3        Q     Which one?
 4        A     You have it frontwards.
 5        Q     Frontwards.  In other words, you placed it
 6   with Distinguished?
 7        A     We sent the app to Distinguished and they
 8   gave us a quote with Granite.  And we bound it with
 9   Granite.
10        Q     The timing, September the 15th, 2006 when
11   we have the documents in front of us that he
12   purchased the property, until American Safety took
13   it over, took on the risk September 15th, 2010, it's
14   a nice little compartmentalization of four policy
15   periods of a year.
16              To the best of your knowledge, was the risk
17   on this property with Granite State all four years?
18        A     Whatever the records show.  If it's there,
19   it's there.  I don't have the four policies in front
20   of me.
21        Q     We don't either.  And so I'm going to have
22   to just --
23        A     I believe so.
24        Q     -- go back on your recollection.
25              Understanding that you don't have anything
```

Page 14

```
 1    to look at, but to the best of your recollection,
 2    you initially placed it with Granite State and it
 3    renewed for three policy periods?
 4        A    It was with GP until we moved it over to
 5    AmWINS, so I believe it was Granite State.
 6        Q    Did AmWINS, sometime before placement with
 7    -- let me see if I can say it in a different way.
 8            Sometime, maybe on the second or third
 9    policy period, did AmWINS become the broker instead
10    of Distinguished Programs, or are you trying to tell
11    me that AmWINS was who placed American Safety, but
12    DP was with Granite State all four years?
13        A    That's correct.
14        Q    Granite State was with --
15        A    DP.
16        Q    Okay.
17            Do you have any recollection as to the
18    amount of coverage with regard -- from a property
19    standpoint that Granite State had offered?
20        A    No.
21        Q    Do you know whether the amount of insurance
22    with Granite State had increased from the time you
23    originally placed it up until American Safety got on
24    the risk on September 15th, 2010?
25        A    I don't recall.  I don't think so.  But
```

Page 15

```
 1    it's all a matter of record.  You don't need my

 2    recollection, you can pull the policy.

 3         Q    The problem is I don't have the policy.

 4         A    If I'm allowed, I'll get you the policy.

 5         Q    I don't have a way to see it.

 6         A    No problem.

 7         Q    Maybe we can get it?

 8         A    I don't think it increased.

 9         Q    Do you recall in the beginning whether

10    there was a tenant that was possessing the premises

11    when Mr. Ben-Moshe's company bought it?

12         A    I believe so.

13         Q    Is it normal to add the tenant -- well, do

14    you know what Granite State intended to insure and

15    what the tenant undertook to -- tenant and his or

16    its insurance company intended to insure?

17         A    I only know that Granite State intended to

18    insure the building and the loss of income and the

19    liability.

20         Q    Yesterday we determined talking to Mr.

21    Ben-Moshe, that sometime around December of 2008,

22    Teletech, which was the name of the tenant that was

23    occupying the space, gave notice that it was going

24    to terminate its lease in February of 2009 and

25    relocate in a different area.
```

Veritext National Deposition & Litigation Services
866 299-5127

1           Were you aware of this?

2      A     No.

3      Q     In 2009 the structure became vacant and

4  unoccupied.  And it remained vacant and unoccupied

5  until sometime in August of 2009 when an entity

6  known as Bamaco Bingo signed a lease and took over

7  the premises.  That would have meant that it was

8  vacant for six months.

9           With regard to the Granite State policy, do

10 you know what provision was dealing with the vacancy

11 exclusion?

12     A     Not offhand.

13     Q     Based upon your 26 years experience in the

14 insurance business, are you aware of vacancy

15 exclusions or vacancy endorsements?

16     A     Yes.

17     Q     In general, not concentrated on this

18 policy, but in general, what do these policies

19 generally provide?

20     A     In a vacancy exclusion, usually it will

21 exclude vandalism and malicious mischief, possibly

22 water damage.

23     Q     If the property is vacant for maybe 30 days

24 or 60 days depending on the policy period?

25     A     Correct.

Page 17

1      Q    Now, in that regard, did Mr. Ben-Moshe or

2  anybody with Fairfield Shopping Center, LLC notify

3  you that the property was vacant for more than 30 or

4  60 days?

5      A    I don't recall.

6      Q    If you would have been told that the

7  property was vacant for more than 30 or 60 days,

8  what action would you have taken as the insurance

9  broker?

10     A    I would have either asked the company if

11 they would give a vacancy endorsement to Granite

12 State, or if not, I would have told them it has to

13 be rewritten to where you have vacant building

14 policy.

15     Q    But to the best of your recollection, you

16 didn't know about it and you didn't have an

17 opportunity to talk about it?

18         MR. ROWE:  He said he didn't remember one

19 way or the other.

20 BY MR. KYLE:

21     Q    I don't want to put words in your mouth.

22 Tell me again --

23     A    I don't remember -- I cannot remember,

24 either 2008 or 2009, when it became vacant.  So I

25 have no recollection to say if I did or did not have

Page 18

1    a conversation.  When I discovered that the building

2    was vacant, I cannot tell you the date, I have no

3    idea.  We rewrote -- either DP canceled or whatever

4    the story was, we just rewrote the policy with

5    American Safety.

6         Q    Now, I'm going to fast forward and tell

7    you, I believe that occurred in the summer of 2010,

8    the following year.  But I'm going back now the year

9    before when there was the six-month vacancy.  And so

10   that I have it clear on the record.  You can't

11   recall --

12        A    No.

13        Q    -- whether --

14        A    I cannot.

15        Q    -- Mr. Ben-Moshe or anybody informed you

16   that it was vacant or unoccupied?

17        A    Correct.

18        Q    Were you aware that Fairfield Shopping

19   Center filed for bankruptcy on May the 26th, 2009,

20   about 15 months before the summer of 2010?

21        A    Not to my recollection.

22        Q    In your experience as an insurance broker,

23   is the fact that an insured files bankruptcy an

24   increase in the risk of hazard?

25        A    Not really.

                                         Page 19

1      Q     Is it something that, if the insured tells
2   you about, you feel you should tell the insurance
3   company?
4      A     I don't think so.  There's no material
5   change in risk whether the insured has filed
6   bankruptcy or not, as long as there's a tenant in
7   the building.  There's no change in operations.
8      Q     In this particular instance when Fairfield
9   Shopping Center filed bankruptcy on May 26th, 2009,
10  there hadn't been a tenant in the building since
11  February 2009, which would have been February,
12  March, April, almost four months.
13        Would that have made a difference that it
14  was vacant and unoccupied for four months and in
15  bankruptcy?
16     A     I can't answer hypothetical questions.
17     Q     Well, we are -- let me see if I can try it
18  a different way.
19        Based on your experience in this industry,
20  if you had been told by Mr. Ben-Moshe these
21  circumstances, would you have notified somebody?
22     A     Had I been told that the building was
23  vacant, I would have notified the insured that he
24  has no coverage for vacant building after 30 days.
25  It really makes no material difference if the

Page 20

1  building -- if the insured entity went bankrupt or

2  not.  It's a vacant building, so what's the

3  difference if the insured went bankrupt or not?  It

4  doesn't add or decrease the risk.

5      Q    Do you feel it would be important -- do

6  you, as a normal practice, if these circumstances do

7  exist -- this is a hypothetical, I understand -- do

8  you inform the insurance of the mortgage company?

9      A    The mortgage company usually knows before

10 me if the insured went bankrupt or not because he's

11 not making payments.  I'm the last one to find out.

12     Q    In this instance, do you recall anybody

13 from Capital GE Commercial calling you and telling

14 you about this?

15     A    No.  The mortgagee almost never calls me

16 unless they need a cert.

17     Q    And a cert is a certificate of insurance?

18     A    Correct.

19     Q    In your experience, Mr. Schneerson, if a

20 company goes into bankruptcy do you ever add the

21 trustee in bankruptcy as an additional insured under

22 the policy?

23     A    The receiver, is that what you mean?

24     Q    Excuse me.  The receiver or whoever, since

25 it goes into bankruptcy and --

Page 21

1        A     If it's requested from the receiver, we add

2    them on.  We tell the insurance company the receiver

3    is taking over.  And either -- they usually

4    non-renewal, they usually keep it to the policy

5    expiration date.

6        Q     I have not seen all of the records from the

7    bankruptcy court.  I was told by Cynthia Futter

8    yesterday that there was a trustee's file that I

9    will endeavor to get when I get back to Atlanta.

10            But if there is a trustee who was in

11    charge, you used the term receiver, I don't know if

12    I'm using the right term, receiver, trustee, special

13    master, somebody like that, I'd ask that same

14    question.  Is it your normal practice once you're

15    informed, when you're informed, and if you're

16    informed, do you ask the insurance company to add

17    this person, this receiver, this trustee, as an

18    additional insured?

19        A     If they ask for it.

20        Q     And in this instance nobody asked for it to

21    the best of your recollection?

22        A     If it's not on the policy, that is correct.

23        Q     I want to come forward to August of 2009.

24    Do you have any knowledge or were you told that

25    Fairfield Shopping Center was able to locate a new

                                            Page 22

1    lessee for the building that had been unoccupied for

2    six months and the name of that entity was Bamaco

3    Bingo which ran a bingo hall?

4        A    I have no recollection of dates.

5        Q    Apart from the dates, did you ever learn

6    that a bingo hall was using the premises?

7             Ms. Sher, I don't --

8             MS. SHER:  I'm just telling him something

9    that will help him recollect, maybe.

10            THE WITNESS:  At some point I found there

11   was a bingo tenant but a lot later date.  I don't

12   know the date.  Let me take that back.

13   BY MR. KYLE:

14       Q    Okay.

15       A    Okay.  The tenant -- the only way I found

16   out is because the tenant -- they will put some foil

17   into the fire.  The tenant had his own policy on the

18   building and contents coverage.  And the insured

19   couldn't decide does he want to keep his policy in

20   force, or does he want to keep the tenant's policy

21   in force.  We went back and I said it's your

22   decision.  Do what you want.

23            That's the only time I probably knew it was

24   bingo or -- I might not have known it was bingo.  I

25   might have known it was another tenant.  But I knew

Page 23

1    there was a different tenant.

2         Q    Thank you for that.

3              Do you happen to recall the name of the

4    insurance company that was offering the coverage for

5    the building and contents?

6         A    Not offhand.

7         Q    Is there something in your file that could

8    help us determine the identity of that person?

9         A    Possibly.

10        Q    So I assume -- was it Ben-Moshe who came to

11   you or -- did you discuss it with Ben-Moshe?

12        A    Yeah.

13        Q    And said you've got an option, you could

14   keep your own policy in effect, which was a Granite

15   State, or you could perhaps come under the tenant's

16   policy.  Is that the advice that you gave?

17        A    I don't remember the dates of the policy,

18   if the American Safety was in force then or if the

19   Granite State policy was in force then, I don't

20   remember.

21        Q    I think I can help you with that.

22        A    Dates don't mean nothing to me.  You can

23   remember what you ate last week on Tuesday, that's

24   good.  I can't remember what happened in 2009, '10

25   or '11.

Veritext National Deposition & Litigation Services
866 299-5127

```
1        Q    I'm just trying to pick your brain for what
2   you do remember.  But I can say this, sir, when
3   American Safety took on the risk, it was vacant and
4   unoccupied.  And it's been vacant and unoccupied
5   during the period that American Safety was on the
6   risk.  So it would have been before that when Bamaco
7   Bingo was on the risk.  It was in -- Granite State
8   would have been on the risk.  Does that help?
9        A    Could be.  Whatever.  Whatever.  So it was
10  another -- he don't want to have two policies.
11  Whatever, he did know, he didn't know.  I explained
12  to him, there are advantages, there are
13  disadvantages.  That was it.
14       Q    Were you ever informed or did you ever see
15  any endorsement to that tenant's policy that added
16  Fairfield Shopping Center, LLC as an additional
17  insured?
18       A    No, I don't think so.
19       Q    Is a bingo hall a change in the risk that
20  is being underwritten?
21       A    I can't answer that.  Unless there's risk
22  policy.  It's really the operations, as long as
23  they're not hazardous, they don't make a difference.
24       Q    Do you as an insurance broker with 26 years
25  of experience, see a difference in risk, risk of
```

Page 25

1    hazard, between a tenant who is operating a

2    telecommunications center and a tenant who is

3    operating a bingo hall?

4         A    Possibly.  But, again, if -- if there

5    was -- if, according to the lease, he named

6    Fairfield as an additional insured on the policy, it

7    would really not make that much of a difference.

8         Q    But, again, from Joseph Schneerson's

9    standpoint, and Shomer Insurance Agency, you were

10   not given an opportunity to put any input because it

11   had already been done?

12        A    That's correct.

13        Q    Did you ever learn that at some time --

14   this is around the period of 2010, I'd say, May or

15   June -- that the bingo hall operation was shut down

16   across the State of Alabama for the last time by the

17   State Attorney General of Alabama?

18        A    I don't recall.

19        Q    It's our understanding that around Memorial

20   Day, I can't give you any more of a specific date,

21   2010, the Attorney General of the State of Alabama,

22   in some form or fashion, shut down all bingo halls

23   across Alabama, which one of these was a tenant

24   through a subtenant in this building.

25              And I'm trying to find out, did you ever

                                        Page 26

```
 1   learn of that action by the Attorney General?
 2       A    No.  I never did.
 3       Q    When did you learn that the building was
 4   vacant and unoccupied following Memorial Day 2010?
 5       A    I don't recall.
 6       Q    I assume you would have heard that it was
 7   vacant and unoccupied from Mr. Ben-Moshe?
 8       A    I don't assume anything.
 9       Q    You decided to write a policy or you
10   participated in writing a policy with American
11   Safety Insurance Company.  As I think you may have
12   said earlier, it was written as a structure that was
13   vacant and unoccupied --
14       A    Correct.
15       Q    -- correct?
16            How was it that you knew that it had been
17   occupied but was unoccupied?  What were the
18   circumstances surrounding that?
19       A    The only way I could have known is through
20   Mr. Ben-Moshe.
21       Q    Do you remember what Mr. Ben-Moshe told
22   you?
23       A    No.
24       Q    Did he tell you how long it had been vacant
25   and unoccupied?
```

Page 27

1        A     I don't recall.

2        Q     Did he advise you that he had employed

3    security guards to protect the premises while it was

4    unoccupied and vacant?

5        A     I don't recall.

6        Q     Do you recall if you advised him that in

7    order to safeguard the premises he should consider

8    employing a security guard to monitor the premises?

9        A     I don't recall.

10       Q     What risks in your experience as an

11   insurance broker over 26 years does an owner face

12   when a building is unoccupied and vacant for an

13   extended period of time?

14       A     Vandalism.

15       Q     Thefts of property?

16       A     Uh-huh.

17       Q     As well, perhaps water damage?

18       A     Also.

19       Q     Do you recall if you ever received a notice

20   of nonrenewal from Granite State?

21       A     I don't recall offhand, but possibly they

22   did cancel the policy, non-renewed the policy.

23       Q     Based on your recollection, why was it that

24   you changed the placement of this policy from

25   Granite State to American Safety?

Page 28

```
 1        A      Must be that Granite State did not write
 2   vacant buildings.
 3        Q      Is one way of expressing this intent not to
 4   insure vacant buildings to issue a notice of
 5   nonrenewal?
 6        A      Correct.
 7        Q      Normally most states require that this
 8   notice of nonrenewal be sent out by a prescribed
 9   period of time prior to the expiration of the
10   policy, is that your experience?
11        A      Correct.
12        Q      Are these notices of nonrenewal sent to the
13   insured?
14        A      Usually.
15        Q      Are they sent to the mortgagee?
16        A      Yes.
17        Q      Are they sent to additional insureds, to
18   the extent that there are additional insureds under
19   the policy?
20        A      They should be.
21        Q      Are they sent to the insurance broker?
22        A      Yes.
23        Q      Tell me what efforts you made to search for
24   another insurance company who would write vacant and
25   unoccupied structures?
```

Page 29

1        A      Repeat the question, please.

2        Q      What efforts did you as an insurance broker

3    take to search out possible companies who would

4    write this coverage?

5        A      Complete an ACORD ap and send to the

6    insurance broker.

7        Q      Mr. Schneerson, I want to hand you a

8    document that we identified yesterday as Exhibit 14.

9    And that appears to be a commercial insurance

10   application.  Do you recall that, sir?

11       A      Looking at it.

12       Q      On the very bottom of it in the right-hand

13   corner it appears to bear your signature?

14       A      Correct.

15       Q      Is that your signature?

16       A      Correct.

17       Q      What was the date of the application?

18       A      It shows here 8/13/2010.

19       Q      Now, I have been given -- this is a copy, I

20   do not have the original.  Do you know where the

21   original might be?

22       A      Scanned in my -- it should be scanned in my

23   computer.

24       Q      Do you know -- my copy does not show a

25   signature by Mr. Ben-Moshe in the lower left-hand

                                              Page 30

1    corner.  Do you recall if the original, is it your

2    practice -- is it your custom, habit and practice

3    when you fill out an insurance application to have

4    the insured sign it?

5         A     Yeah.  We try to get it signed.  And

6    sometimes the companies demand it signed or else

7    they won't bind without a signature.

8         Q     If you're unable to, because of travel

9    plans or something, not able to get a signature, do

10   you go over all the material and pertinent parts of

11   the application and get input from the insured to

12   fill it out?

13        A     We try.

14        Q     What is the significance of an insurance

15   application?

16        A     Describing the premises and the coverages

17   requested.

18        Q     Is it critical that all of the information

19   contained in an insurance application be true and

20   correct?

21        A     Yes.

22        Q     Do you understand that an underwriter with

23   any number of insurance companies will rely upon the

24   veracity and truthfulness of that application in

25   considering whether to underwrite the risk?

Page 31

1        A     Correct.

2        Q     And what type of premium to charge?

3        A     Correct.

4        Q     In this instance, do you recall going over

5   this application -- we don't have the application

6   signed, original -- I'm going to have to ask you if

7   you'll look in your system to see if it has his

8   signature.

9        A     Okay.

10       Q     And if it is, please let me know and then

11  get a copy of it.

12       A     Okay.

13       Q     Not knowing that, in regards to this

14  particular risk, in the middle of the -- in the

15  bottom of the page there's a series of general

16  information questions?

17       A     Uh-huh.

18       Q     Do you see that?

19       A     Yes.

20       Q     You're pretty familiar with this

21  application --

22       A     Yes.

23       Q     This ACORD Form 125 is a pretty standard

24  form used in the insurance industry, isn't it?

25       A     Correct.

Page 32

```
 1        Q     These questions 1 through 11 on the bottom
 2   are routine questions that you ask each and every
 3   insured, don't you?
 4        A     Correct.
 5        Q     And they're critical and material to the
 6   risk, aren't they?
 7        A     Correct.
 8        Q     Look at the question down here, No. 10.  It
 9   asks whether any bankruptcies have been filed by the
10   insured for the past five years.  And can you tell
11   in the -- point out whether the question is marked
12   "yes" or "no"?
13        A     It's marked no.  Possibly it was probably
14   because the person who filled out the ACORD app did
15   not know that there was a bankruptcy.
16        Q     Mr. Ben-Moshe was the contact that you
17   would have dealt with with regard to the placement
18   of this risk, wouldn't he?
19        A     Correct.
20        Q     You think Mr. Ben-Moshe would have known
21   that his company, Fairfield Shopping Center, LLC,
22   would have been in bankruptcy for 15 months before
23   being asked that question?
24        A     Correct.
25        Q     We can go through here and show you -- in
```

Page 33

 1    fact, I can show you this.  This was a -- what is

 2    called a declaration.   It is a sworn statement made

 3    by Mr. Yair Ben-Moshe on a status report of a debtor

 4    in possession at a status conference.

 5             Mr. Ben-Moshe identified this.  And it

 6    shows on page 4 that Mr. Ben-Moshe attested to this

 7    under oath August 17th, 2010.  Do you see that?

 8        A    Okay.

 9        Q    This is a filing that was filed in the

10    United States Bankruptcy Court for the Central

11    District of California, Los Angeles, Fairfield

12    Shopping Center, LLC, a California Limited Company.

13        A    Okay.

14        Q    The date of this application is April the

15    13th?

16        A    Correct.

17        Q    The date of this --

18             MR. ROWE:  April 13th?

19             MR. KYLE:  April 13th, 2010.

20             MR. ROWE:  April or August?

21             MR. KYLE:  Thank you, Steve.  I misspoke

22    myself.  I was going too quick.  August.

23        Q    So August 13th, when he -- and I'll

24    represent to you that the bankruptcy filing was May

25    26, 2009.  Do you have any idea why Mr. Ben-Moshe

                                              Page 34

1  would not have answered that question truthfully?

2      A    It is very possible that we could not get

3  ahold of Mr. Ben-Moshe and we filled out the

4  application based on the old ACORD information

5  except the changes that we knew about that the

6  building was vacant.

7      Q    The first ACORD, and the only other ACORD,

8  would have been back in 2006, correct?

9      A    I don't remember.  I don't remember the

10  year.  Could be.

11      Q    Let me ask you this:  Is it your custom,

12  habit and practice to have the applicant, the

13  insured, excuse me, fill out a new ACORD commercial

14  insurance application at every policy renewal or is

15  it just done in the beginning?

16      A    It depends.  If the company requests it, we

17  get it done.  If they don't request it, we just turn

18  it over.

19      Q    Since this is becoming a critical issue,

20  I'll ask you to look in your file again, if you find

21  a commercial application, other than the initial

22  commercial application, would you help me in getting

23  that for me?

24      A    Sure.

25      Q    You said the account representative, who's

Page 35

```
 1    the account representative on this file?
 2         A    She doesn't work for me.  She doesn't work
 3    for Shomer anymore.
 4         Q    Would you like to ask Ms. Sher if she can
 5    tell you?
 6         A    Donna?
 7              MS. SHER:  I believe it was Donna.
 8    BY MR. KYLE:
 9         Q    Donna Ratliff, R-a-t-l-i-f-f?
10         A    I believe that's it.
11         Q    Do you know where Ms. Ratliff might be
12    located?
13         A    No.
14         Q    Do you have a personnel file on her?
15         A    Yes.
16         Q    I'm going to show you some additional
17    documents in a minute that bear her signature.  And
18    it may be necessary for me to get in contact with
19    her.  So I may ask Dora to help me get a last known
20    address or something so I can locate her.
21              What was Donna Ratliff's title at the time
22    of 2010?
23              Dora, would you like to assist in this?
24              MS. SHER:  I would have to check.
25    ///
```

Page 36

```
 1    BY MR. KYLE:
 2        Q     Account representative, is that sometimes
 3    what the term is called?
 4            MS. SHER:  We don't use that, so I'll have
 5    to check what her title was.
 6    BY MR. KYLE:
 7        Q     She had some contact with Mr. Ben-Moshe if
 8    it's handled in the normal course?
 9        A     Or with his assistant.
10        Q     Why was it that Donna didn't sign the
11    application and you signed it?
12        A     I think the broker's the one who signs the
13    application.  The agency principal.
14        Q     And you were relying upon your staff to
15    make sure that these questions were asked properly?
16        A     I would have dealt with Mr. Ben-Moshe and
17    she might have dealt with Priscilla.  So I don't
18    really know exactly what transpired between her and
19    Priscilla.
20        Q     Let me ask you, based on your experience in
21    the business, if an insured were to fill out an
22    application and indicate that they had filed a
23    bankruptcy over the past five years, and on further
24    inquiry were presently in bankruptcy, in your
25    opinion, could that affect an insurance company's
```

Page 37

1    decision as to whether to underwrite the risk in the

2    first instance?

3          A     I can't answer that.

4          Q     Depends on the company?

5          A     Yes.

6          Q     And if they did decide to underwrite the

7    risk, the premium that would be charged, in your

8    experience, is a premium charged for a higher amount

9    if it's in bankruptcy?

10         A     I don't think so.  Again, the material --

11    the list of the building as being vacant and that of

12    it being in bankrupt or not being in bankrupt, as

13    long as the premium is paid.

14         Q     When a property is vacant for an extended

15    period of time, are there any protective safeguards,

16    warranties that are issued to insure that the

17    property has certain protection?

18         A     Each company is different.

19         Q     In this instance, do you know whether or

20    not this policy had a protective safeguard warranty?

21         A     No, I don't know.

22         Q     Mr. Ben-Moshe gave us some documents

23    yesterday through his attorney.  And I want to show

24    these documents to you.

25              Let's mark this -- this has been marked 25.

Page 38

1    Steve, could I mark this series of documents another

2    document?

3             MR. ROWE:  Yeah.  I mean, the problem is,

4    yesterday you pulled one document out of that set.

5             MR. KYLE:  Which is Exhibit --

6             MR. ROWE:  And marked it a different one.

7             MR. KYLE:  What we'll do --

8             MR. ROWE:  I just don't want it to appear

9    that that document wasn't originally part of that

10   set.

11            MR. KYLE:  Let's mark this, please, as

12   Mr. Schneerson Exhibit No. 1.

13            (Deposition Exhibit 1 was marked for

14   identification.)

15   BY MR. KYLE:

16       Q    Mr. Schneerson, I'm going to hand you --

17   seven pages, sir.  And I'll ask you to take a look

18   at those, those seven pages.  I cannot represent to

19   you that that was the order at which they came.  The

20   pages have been jumbled up as we were talking to Mr.

21   Ben-Moshe.  But they appear to be relating to the

22   issuance of the policy with American Safety.

23       A    Okay.

24       Q    Now, the question I want to ask you is --

25   going back to the application for just a second.

Page 39

```
 1    What did Mr. Ben-Moshe tell you about the existence
 2    of a burglar alarm with a central monitoring system?
 3              If you'll look at the form, there's a --
 4    under the property provision, there is a paragraph
 5    several lines, discuss that subject.
 6         A    I have no recollection what he told me at
 7    that time.
 8         Q    Can I see the application for a second,
 9    please, sir.  Can I come around next to you?
10         A    Sure.
11         Q    Would that be all right?
12         A    Uh-huh.
13         Q    Under the ACORD property section, which was
14    part of the application, about two thirds of the way
15    down there is a box that asks for burglar alarm
16    type.  Next to it, a certificate number, an
17    expiration date, extent, grade.  The next line down
18    has "Burglar alarm installed and serviced by,
19    guardsman -- number, guardsman, watchmen."
20              And then on the first set of boxes it has a
21    box for "Central station with keys," and then
22    underneath that, "Clock hourly."  Do you see that?
23         A    Yes.
24         Q    That whole area is silent?
25         A    Correct.
```

Page 40

1      Q    It's not filled in?

2      A    Correct.

3      Q    Below that is "Premises Fire Protection,

4   Sprinklers, Sandpipes, Co2 Chemical Systems."

5           And it has been typed in "fire

6   extinguishers/smoke alarm."  Under the question 100

7   percent sprinkler it has 100.  "Fire Alarm

8   Manufacturer," it does not list it, but under the

9   "Central Station" it has the box checked for

10  "central station."  Do you see that?

11     A    Yes.

12     Q    Can I fairly interpret that to mean that an

13  inquiry was made, either by you or Ms. Ratliff, as

14  to the existence of a central -- I mean, a burglar

15  alarm with a central monitoring system.  And the

16  fact that it is blank, can I imply that the answer

17  was there was none?

18     A    The central station is only under the

19  fire -- under the premises fire protection, not

20  under the burglar alarm.

21     Q    Okay.

22     A    We work on any information that's given to

23  us by the insured.  And if there's any blank, it's

24  because we never got the information from the

25  insured.

                                        Page 41

1      Q    Now, on the second page of Exhibit 1, there

2  is a document that says -- well, to put it in

3  context.  The first page is a "Commercial Package

4  Binder," are you familiar with that term, sir?

5      A    Yes.

6      Q    And what does a binder typically do?

7  What's its purpose?

8      A    It serves as a proof of insurance till the

9  policy is issued.

10      Q    And on the second page we have a form that

11  says "Protective Safety Promissory Warranties."  Are

12  you familiar with these endorsements and that term,

13  sir?

14      A    Yes.

15      Q    Give us the significance, in your opinion,

16  of a protective safeguard promissory warranty.

17      A    It warrants coverage.

18      Q    The form says in part, "It is understood

19  and agreed by the insured that it is a condition

20  precedent to the acceptance of this insurance and

21  payment of any claim under the policy, that the

22  insured warrants that at all times during the

23  currency of the policy, the premises described

24  herein is protected by the protective safeguard

25  described in the schedule and the insured shall

                                              Page 42

1    maintain in complete working order all equipment and

2    services pertaining to the operation of the

3    described protective safeguard."

4           You're familiar with that language, aren't

5    you?

6       A    Yeah.

7       Q    And in this particular one, this schedule

8    has certain checkmarks and one of the checkmarks is,

9    "The premises is locked and secured against

10   unauthorized entry."

11      A    Right.

12      Q    To your knowledge, at any time, of course

13   you may not know it, but to the best of your

14   knowledge, was this property ever secured against

15   unauthorized entry?

16      A    I have no way of knowing that.

17      Q    It goes on to say, "No occupancy

18   sufficient" -- it also says two other items.   The

19   checkmark is, "Automatic sprinkler system including

20   central station supervisory service thereon."

21          The application that we just referred to

22   indicated that there was a fire extinguisher in

23   place that had central monitoring?

24      A    Correct.

25      Q    So if that existed, if the water was

Page 43

1   operational, in place, paid for, then that warranty

2   would have been met, correct?

3       A    I assume so.

4       Q    But the second checkmark says, "Burglar

5   alarm including central station supervisory service

6   thereon."

7           If there was no burglar alarm or no central

8   station supervisory service, then this warranty

9   would have been violated or breached?

10      A    Possibly.

11      Q    Do you recall receiving or reviewing any

12  e-mails from Steve Riss at AmWINS regarding the

13  existence of a burglar alarm with a central station

14  monitoring?

15      A    I can't recall.

16      Q    So that I can understand it.  I think I

17  understand what a burglar alarm is, but with a

18  central station monitoring, can you explain what you

19  understand that term to be so we're on the same

20  page?

21      A    It would most probably mean any

22  unauthorized entry would ring an alarm in the

23  central station.

24      Q    By central station, I assume that if the

25  security is breached by either a broken window or a

Page 44

1    busted door, or some other unauthorized entry, that

2    an alarm will go off inside the premises?

3        A    No, it doesn't have to, as long as it goes

4    off in the central office.

5        Q    It could also go to an office which is

6    offsite, off compass?

7        A    Correct.

8        Q    And that is normally done through a

9    telephone system?

10       A    Correct.

11       Q    It's also sometimes done with a power

12   system if there's not a battery?

13       A    I don't know that.  I'm not familiar with

14   alarm systems.

15       Q    Now, in this policy, if American Safety

16   said we will insure this if these protective

17   safeguards are in place, is that significant to the

18   risk?

19       A    I imagine.

20       Q    Is that material to the underwriting of

21   this risk?

22       A    I imagine.

23       Q    Now, do you recall Mr. Riss contacting your

24   agency and -- I'll ask a series of questions.  Did

25   you ever tell Mr. Riss that per the agent, we can

Page 45

```
1    confirm there is a burglar alarm with central
2    monitoring system.  Did you ever say that to Mr.
3    Riss?
4        A    No, not to my knowledge.
5        Q    Do you know if Donna Ratliff said that to
6    Mr. Riss?
7        A    I wouldn't think she would.
8        Q    Do you know of anybody -- in your
9    knowledge, have you seen anything that indicated
10   there was somebody within your organization who
11   would have said that to Steve Riss?
12       A    No.
13       Q    Are you familiar with a company called
14   WKF&C?
15       A    Yes.
16       Q    What is WKF&C?
17       A    They're a wholesale broker.
18            MR. ROWE:  What did you say?  I'm sorry.
19            MR. KYLE:  They're a wholesale broker.
20            THE WITNESS:  They're more than a wholesale
21   broker.  The wholesale broker goes to them.  So I
22   don't know exactly what they're called.  AmWINS goes
23   to WKF&C.  I cannot go to WKF&C.
24   BY MR. KYLE:
25       Q    Let me show you a document that we saw
```

Page 46

1    yesterday.  It's not dated, but it's Exhibit 21.  On

2    the very top of that it says WKF&C vacant property

3    supplement.

4              It identifies Fairfield Shopping Center,

5    LLC.  And on the very bottom it has the signature of

6    a Donna Ratliff.  Do you see that?

7         A    Correct.

8         Q    It doesn't have a date on it.  We have no

9    idea when it was issued, who filled it out.  Who

10   signed it.  Have you ever seen a form similar to

11   this?

12        A    I imagine I did.  Not lately.

13        Q    Can you assist us in knowing the date that

14   Ms. Ratliff may have signed this document?

15        A    No idea.

16        Q    Do you have any idea how she -- do you know

17   if any of this information contained in this form is

18   true and correct?

19        A    Any information she would have gotten most

20   probably would have been from Priscilla.

21        Q    And who is Priscilla?

22        A    Works for Yair Ben-Moshe.

23        Q    Is Priscilla one of the associates or one

24   of his business associates?

25        A    She's an employee.

                                              Page 47

1    Q    But it doesn't indicate where she got that

2    information on this form?

3    A    Correct.

4    Q    And if the indication was that there was a

5    burglar alarm with a central monitoring system and,

6    in fact, there was not a burglar alarm and there was

7    no central monitoring system, the information given

8    to Donna would have been incorrect?

9    A    Possibly.

10    Q    Donna doesn't go out and check this

11    herself, does she?

12    A    No.

13    Q    She doesn't go to -- she didn't go to

14    Fairfield, Alabama?

15    A    No.

16    Q    She doesn't check it out, she relies on

17    what is told to her by the insured or the insured's

18    representative?

19    A    Or what's in the file.

20    Q    What would be in the file would be

21    something that would be information supplied to you,

22    to your agency, by the insured or the insured's

23    representative?

24    A    Correct.

25    Q    I want to show you a form.  Mark this No.

Page 48

1    2.

2              (Deposition Exhibit 2 was marked for

3    identification.)

4    BY MR. KYLE:

5        Q    This is an ACORD property loss form.  Are

6    you familiar with that, sir?

7        A    Yes.

8        Q    What is a property loss form?

9        A    Reporting claim to an insurance company.

10       Q    On the very bottom of it, it appears that

11   this particular form was reported by a Darrell

12   Varnardo.  Do you know Mr. Darrell Varnardo?

13       A    No.

14       Q    It shows that it was -- it bears your

15   agency's name, Shomer Insurance Agency?

16       A    Correct.

17       Q    Do you have any knowledge or understanding

18   as to how that phone call was made and the

19   preparation of that form?

20       A    Mr. Varnardo must have called the office.

21       Q    Excuse me?

22       A    Mr. Varnardo must have called the office

23   and spoken to somebody in the office.  I don't know

24   who.  And this was filled out and sent to the

25   insurance company.

Page 49

```
 1        Q     Will you give me some dates on that.   Will
 2    you, first of all, show me the date that the form
 3    was prepared.
 4        A     6/8/2011.
 5        Q     Is it your normal practice in your agency
 6    to fill out these forms near the time that the call
 7    is reported?
 8        A     Correct.
 9        Q     In other words, it's important to you that
10    the insurance company be given prompt notice of when
11    you learn about it?
12        A     That's correct.
13        Q     More likely than not, if the phone call
14    came in, it was prepared that same day and sent to
15    the insurance company that same day?
16        A     Within 24 hours.
17        Q     Okay.   That's fine.
18              It shows a date of an incident, and what
19    does the incident show?
20        A     2/7/2011.
21        Q     Now, are you familiar with the policy loss
22    conditions that describe duties in the event of a
23    loss or damage?
24        A     Yeah.
25        Q     You're pretty familiar with that?
```

Page 50

1      A      In and out, yeah.

2      Q      I'm going to hand you Exhibit 24, which is

3   pages 9 and 10 of this particular insurance contract

4   with American Safety.   And we have gone over

5   previously the duties in the event of a loss or

6   damage.   Why is prompt notice -- let me put it this

7   way.

8             Do you believe there's an obligation on the

9   part of the insured to follow certain acts in the

10  event of a loss or damage to covered property?

11     A      Yes.

12     Q      Is one of those things that they are

13  required to do to notify the police if a law may

14  have been broken?

15            And you can look at this form to see.   I'm

16  reading from that contract.

17     A      Possibly.

18     Q      Do you see 3A1, it's on page 9 of 14,

19  "Duties in the event of a loss."   3A1, do you see

20  that?

21            "Notify the police if a law may have been

22  broken."

23     A      Yes.

24     Q      And No. 2 says, "Give us," which is the

25  insurance company, "prompt notice of the loss or

Page 51

1    damage, including a description of the property

2    involved."

3        A    Okay.

4        Q    If they knew about it in February and

5    didn't tell you until June, do you think that's

6    prompt notice?

7        A    No.

8        Q    I'm going to ask you another hypothetical.

9             If Mr. Yair Ben-Moshe himself learned in

10   November of 2010, which would have been about eight

11   months before June of 2011, that a burglary had

12   occurred at his premises, and waited eight months,

13   do you think that is prompt noticed?

14       A    I don't know when he found out about it.

15       Q    I know.  It's just a hypothetical.

16   Assuming he did find out about it, Do you think

17   eight months is --

18       A    Somebody waited six months to put a loss

19   in, it is not prompt.

20       Q    The insurance contract, 3A4 also states

21   that "The insured is to take all reasonable steps to

22   protect the covered property from further damage

23   once they become aware of the damage."

24            In your opinion, would it be reasonable if

25   an insured knew about a loss in November of -- or

Page 52

1    damage in November of 2009 to take steps to prevent

2    further thefts to his property?

3         A    I don't know when this insured found out

4    about the theft.

5         Q    This is a hypothetical, sir.

6         A    Hypothetical.  It should be taken care of

7    as soon as possible.

8         Q    And that would include taking steps to

9    protect the property from further thefts?

10        A    Correct.

11        Q    Now, we also learned that subsequent to

12   that, an amended proof of loss was submitted by

13   somebody at your agency with the correction.  Do you

14   remember that taking place?  This may be Dora's --

15   let me have that marked as an Exhibit.

16             (Deposition Exhibit 3 was marked for

17   identification.)

18   BY MR. KYLE:

19        Q    This will be Exhibit 3, sir.  This is an

20   e-mail from Dora Sher to Steve Riss and Aaron

21   Zolonz, Z-o-l-o-n-z, with a copy to Yossi.  I assume

22   that would be you, that's your short nickname,

23   Debbie Delia, and David Lightbourn regarding claim

24   No. ASI0278P.

25             This is an e-mail that Dora authored.  And

                                              Page 53

```
 1    the intent of it was to correct the previous
 2    property loss notice.  And she attached a copy of a
 3    police report showing an incident that occurred on
 4    November 22nd, 2010 in Fairfield, Alabama.
 5           Do you recall receiving and reading this
 6    e-mail and the contents?
 7       A    No.  I must have received it.  I don't
 8    recall when I read it or if I read it.
 9       Q    Then I'll ask Dora about that when I take
10    her examination because she'll know about that.
11           How many thefts have you been told about
12    that have occurred at this subject premises?
13       A    I did not write -- I did not -- I was not
14    the manager on the account, so I personally was told
15    very little of anything.  I heard there was the
16    bankruptcy.  I heard later there was vandalism,
17    theft, whatever it was.  I really was not hands-on
18    on the account.
19       Q    Would the proper person for me to speak
20    with, since you don't have this knowledge, I
21    understand that, would that be either Dora or this
22    Donna Ratliff?
23       A    Correct.
24       Q    Which one would be the manager of the
25    account?
```

Page 54

```
 1        A     You'll have to ask Dora that question.

 2        Q     I assume that when Donna was there, she

 3   would have been the manager, and when she left, Dora

 4   would have taken over, is that the way your agency

 5   generally operates?

 6        A     Dora or Debbie, the other name on the

 7   e-mail.

 8        Q     I will ask Dora about that in just a

 9   minute.

10              Do you know a gentleman by the name of

11   Moti?

12        A     I don't recall.

13        Q     I will represent to you that Moti was a

14   gentleman who lives in -- in or about Birmingham,

15   Alabama.

16        A     I don't know him.

17        Q     That Yair Ben-Moshe contacted Moti -- or

18   Moti, I don't know how to pronounce his name -- to

19   do some cleaning work, maybe other work, he was a

20   friend.  I'm bringing this --

21        A     Don't know.

22        Q     -- to your attention to see, did Mr.

23   Ben-Moshe ever tell you about Moti or Moti's

24   involvement in this?

25        A     Not to my knowledge.
```

Page 55

```
 1        Q     He got the name of Moti through a Rabbi in
 2   Birmingham --
 3        A     I have no idea.
 4        Q     Did you ever speak with the Rabbi or the
 5   Rabbi's son?  No knowledge or anything about that?
 6        A     Nothing.
 7              To my recollection.  I don't want it to
 8   come back to haunt me.
 9        Q     I wanted to ask you about the policy that
10   was eventually canceled by American Safety.  Do you
11   remember the attempts that were made to do
12   inspection on this property?
13        A     I just recollect there were numerous
14   attempts made.  And we called the insured numerous
15   times, but for some reason it doesn't jibe for some
16   reason.  We kept telling the insured, the company's
17   going to cancel, you got to get it done.  Then the
18   company canceled, we told them we can't get it done.
19   We gave up.  We said we can't do anything about it.
20   We made numerous attempts.
21        Q     What is the significance or the importance
22   of an inspection on the property, particularly one
23   that's vacant or unoccupied?
24        A     The insurance company wants to see what
25   it's writing.
```

Page 56

1      Q     Do you know if Granite State had ever done

2    an inspection of the premises during the time it was

3    vacant when they were on the risk, which would have

4    been six or seven months in 2009, but more

5    particularly, more significantly, from around

6    Memorial Day until September 15 when they got off

7    the risk?

8      A     I don't know.  I don't recall.

9      Q     Do you recollect whether your file contains

10   any copies of any reports that they would have

11   submitted on the condition of the property?

12     A     Unless there is action they want us to

13   take, we don't get a copy of the report.  Then we

14   only get what they want us to improve or fix.

15     Q     Do you have a recollection whether your

16   file has any photographs in it of the condition of

17   the premises before September the 15th, 2010 or

18   after September 15, 2010?

19     A     I don't believe I've ever had any pictures.

20     Q     This policy that was written by American

21   Safety was canceled; is that correct?

22     A     Correct.

23     Q     It was canceled because of the failure of

24   the insured to cooperate and allow an inspection to

25   take place?

Page 57

1        A     Correct.

2        Q     Have you taken any steps as the insured's

3    insurance broker to place it with some other

4    company?

5        A     No.

6        Q     Do you know what happened after -- did you

7    have a conversation with Mr. Ben-Moshe or anybody at

8    the insured about what they were going to do now

9    that American Security had canceled in February, I

10   think it was February 2nd, 2011?

11       A     No.

12       Q     Did you hear from the mortgage company as

13   to whether they had forced placed this policy to

14   protect the property?

15       A     I don't think so.

16       Q     Thank you, Mr. Schneerson.  That's all the

17   questions I have at this time.  Mr. Rowe may have

18   some.

19

20                      EXAMINATION

21   BY MR. ROWE:

22       Q     What is surplus lines coverage?

23       A     It's written out of the standard market.

24       Q     I'm sorry?

25       A     It's written out of the standard market.

                                              Page 58

```
1     It's usually written out of extra surplus.
2          Q     And the policy from ASI is a surplus lines
3     policy, correct?
4          A     I don't recall offhand.  I imagine so.
5          Q     When you have a vacant building like the
6     one we had here, is it more difficult to get
7     coverage with a vacant building?
8          A     Correct.
9          Q     And do domestic carriers typically not
10    write that kind of coverage?
11         A     American Safety is a domestic carrier.
12         Q     American Safety is a surplus lines carrier?
13         A     Correct.
14         Q     Do you know whether or not they're a
15    domestic carrier?
16         A     Domestic carrier domiciled in the U.S. of
17    A.  I imagine they are.
18         Q     Do you know whether ASI is a domestic
19    carrier?
20         A     No.
21         Q     We know that this was a surplus lines
22    policy, though?
23         A     Placement, correct.
24         Q     That's what it says on the policy, surplus
25    line.
```

Page 59

1      A      Okay.

2      Q      And you had to go to surplus lines because

3  it was a vacant building, correct?

4      A      Usually.

5      Q      Now, you were asked by Mr. Kyle about the

6  cancellation of the policy due to the fact that

7  American Safety wanted to take a look at the

8  building, they wanted to inspect it, correct?

9      A      Correct.

10      Q      Now, they had the right to inspect the

11  becoming before they placed the coverage, didn't

12  they?

13      A      They have a right to inspect whenever they

14  want, I imagine.

15      Q      Sure.  You had no ability to force them to

16  take this -- take on this risk back in September of

17  2010, did you?

18      A      Correct.

19      Q      It was their decision to take on the risk?

20      A      Correct.

21      Q      And did they have the right to go out to

22  Fairfield, Alabama and inspect the building if they

23  so chose to do so?

24      A      Yes.

25      Q      And you don't know whether they did or not?

Page 60

1      A     I have no idea.

2      Q     Now, you were asked about an application

3   that was handed to you by Mr. Kyle.  It was marked

4   Exhibit 14, right?

5      A     Okay.

6      Q     Now, you didn't bring with you today the

7   actual application as a part of your record?

8      A     No.  I imagine it would be the same.

9      Q     But you're not sure, because you didn't

10  bring it, right?

11     A     Correct.

12     Q     Now, I want to show you --

13           I'll mark this Exhibit 4.

14           (Deposition Exhibit 4 was marked for

15  identification.)

16  BY MR. ROWE:

17     Q     I want to show you Exhibit 4, some

18  documents that we received from Mrs. Futter, the

19  attorney for Mr. Ben-Moshe and the Fairfield

20  Shopping Center, LLC.  Many of the documents you've

21  already seen.  But the reason I hand them to you was

22  because when I got them from Ms. Futter, I marked

23  them -- I had my paralegal mark them in order.  So

24  this is the documents I got.  The document -- after

25  Steve looks at it, I'll ask you a couple questions

Page 61

```
 1    about it.
 2            MR. KYLE:  I'm sorry, I just want to take
 3    one quick look at it.
 4            MR. ROWE:  That's fine.  Take your time.
 5            MR. KYLE:  Thank you.
 6    BY MR. ROWE:
 7       Q    Now, these documents -- I'll walk around
 8    there, since I only have one copy.  The top page of
 9    Exhibit 4 would appear to be an invoice from your
10    firm to Fairfield Shopping Center, LLC?
11       A    Correct.
12       Q    For the policy that we're talking about
13    here today?
14       A    Correct.
15       Q    And then the second page of Exhibit 4 is an
16    ACORD form.  What is that?
17       A    Evidence of property insurance.
18       Q    And what is that dated?
19       A    9/22/2010.  Effective date of 9/15/2010.
20       Q    What's the purpose of the evidence of
21    property insurance form?
22       A    For the mortgagee, usually.
23       Q    And who is shown as the mortgagee?
24       A    GE Commercial Finance Business.
25       Q    Does that indicate that GE Commercial
```

Page 62

1    Finance Business has been the mortgagee on the

2    policy since the date of inception?

3        A    Of this policy?

4        Q    Yes.

5        A    Correct.

6        Q    Now, the third page, what is that?

7        A    Certificates of liability insurance.

8        Q    So we have -- we have liability insurance

9    on the building, but we also have property insurance

10   on the building, so that's got two different --

11       A    Correct.

12       Q    -- ACORD forms?

13       A    Uh-huh.

14       Q    Now, the fourth form is a disclaimer.

15   Fifth page of Exhibit 4 is a form that Mr. Kyle

16   showed you earlier, the WKF&C vacant property

17   supplement.  Under that it says WKF&C vacant

18   property supplement in addition to ACORD property

19   application?

20       A    Correct.

21       Q    Do you see that?

22       A    Correct.

23       Q    Have you ever seen a form like that?

24       A    I imagine I have.

25       Q    Now, this form indicates that it is for the

                                            Page 63

1    Fairfield Shopping Center, LLC, correct?

2        A    Correct.

3        Q    Indicates that the date of last occupancy

4    was June 1st, 2010, right?

5        A    Okay.

6        Q    That's what it says on the form?

7        A    Okay.

8        Q    It says it has a burglar, fire and central

9    station alarm?

10       A    Okay.

11       Q    It's got places, someone checked it, it

12   says, "locked," "alarm"; do you see that?

13       A    Uh-huh.

14       Q    It's got operational gas, water, electric,

15   according to whoever filled out the form.

16       A    Correct.

17       Q    There's a valuation on the building of 7.7

18   million.  Do you see that?

19       A    Correct.

20       Q    Square footage of the building is indicated

21   and the date of purchase?

22       A    Correct.

23       Q    There are boxes for whether the real estate

24   taxes were paid, whether mortgage obligations are

25   paid, whether there are liens, and someone's filled

Page 64

1    that in?

2        A    Correct.

3        Q    And then it's got a signature by Donna

4    Ratliff?

5        A    Okay.

6        Q    And we've established that she was a former

7    employee of your company?

8        A    Correct.

9        Q    And she was an employee of your company

10   back in the fall of 2010?

11       A    I imagine so.

12       Q    Now, this document says it's in addition to

13   the ACORD property application.

14       A    Correct.

15       Q    The ACORD property application has been

16   marked by Mr. Kyle as Exhibit 14.  Do you know,

17   sitting here today, whether the WKF&C vacant

18   property supplement in addition to the ACORD

19   property application was submitted along with the

20   ACORD property application that's Exhibit 14?

21       A    I can't answer that.

22       Q    You can't answer it one way or the other?

23       A    Could be sent later.  Could have requested

24   it later.  Could have sent it later.

25       Q    Does WKF&C --

Page 65

1      A     Let me just say one thing.  WKF&C is just a

2   form we use.  It's a generic form.  It's no coverage

3   here at any time, any place, has anything to do with

4   WKF&C.  The wholesale broker must have sent me to

5   the generic vacancy and this is what he had, made

6   sense, sent it.  It had nothing to do with WKF&C.

7      Q     So is it possible that this is a form that

8   was requested by AmWINS and that you had filled out

9   at their request?

10     A     Possible.

11     Q     Is it possible that this form was submitted

12  along with the application or after the application?

13     A     Correct.

14     Q     And Mr. Kyle asked you, and I don't mean to

15  belabor the point, but I think we're both interested

16  to know if you've got copies of the application

17  forms that are signed by the insured?

18     A     To my knowledge, if you see, none of the

19  forms so far have been signed by the insured.

20  Either we couldn't get ahold of him --

21     Q     Couldn't what?

22     A     We couldn't get ahold of him, or he never

23  got it back to us.  I can't answer that question.

24           We can't get ahold of him or we had a

25  conversation over the phone, whatever it is.  We use

Page 66

 1    the information he either gave us or we have in the

 2    file.

 3         Q    Again, if the insurance company, here ASI,

 4    if they desire to have a signed application before

 5    they place the coverage, is that something they can

 6    demand?

 7         A    Correct.

 8         Q    In fact, they can refuse to offer coverage

 9    until you give them the signed form, can't they?

10         A    Correct.

11         Q    That's their right.

12              Again, if they chose to issue the policy

13    without having a signed application, then that's

14    their risk, isn't it?

15         A    I imagine so.

16         Q    Now, Mr. Kyle asked you about Exhibit 14

17    and the fact that the burglar alarm information is

18    not filled in.  There's nothing here about the type

19    of alarm, whether it's got a central station or not.

20    Do you see that?

21         A    Correct.

22         Q    And as we sit here today, you have no idea

23    whether the building in Fairfield, Alabama had a

24    burglar alarm or didn't have a burglar alarm back in

25    2010?

                                              Page 67

1        A      That is correct.  We can only go off the

2    information that we receive from the insured at the

3    time of writing the policy.

4        Q      But we do know that whoever filled in the

5    vacant property supplement, that's in addition to

6    the ACORD property application on that one, they put

7    that it had a burglar alarm and it was a central

8    station, didn't they?  They filled that in?

9        A      Correct.

10       Q      Now, again, would it be the insured, ASI's

11   right, if it wanted to know for sure before it wrote

12   this coverage whether there was a burglar alarm or

13   not, would it be their right to demand that the

14   insured fill in that part of the policy or tell them

15   that there was no coverage or there was no burglar

16   alarm?

17       A      Anybody can demand anything.  It's within

18   their right.

19       Q      This is a contractual relationship, no

20   one's forcing ASI to write this coverage, are they?

21       A      I imagine so.

22       Q      You don't know of anybody that's forcing --

23   this isn't a forced-placed coverage?

24       A      No.

25       Q      If ASI and its underwriting wants further

Page 68

1   information, is it their right to ask for that

2   information before it binds the policy?  Has that

3   been your experience?

4        A    Correct.  Unless they thought they would

5   inspect the building and get the information first

6   after looking at the building.

7        Q    And they had the right to inspect the

8   building before they bound the coverage, correct?

9        A    I imagine so.

10        Q    Do you have any recollection whether ASI

11   asked for additional information concerning this

12   policy application before they placed the coverage?

13        A    No.

14        Q    How would that work if there was a request

15   for additional information, would that come

16   through --

17        A    Only through AmWINS.  We have no

18   correspondence with American Safety, ASI.

19        Q    So any inquiries from ASI would come

20   through --

21        A    Wholesale.

22        Q    -- Steve Riss or someone at AmWINS?

23        A    Correct.

24             MR. ROWE:  Thank you, sir.  That's all the

25   questions I have.

Page 69

```
 1             MR. KYLE:  Just one more minute.  I think
 2      we'll be finished.
 3             That's all the questions I have,
 4      Mr. Schneerson.  Thank you very much.
 5             THE WITNESS:  Thank you very much.
 6             (Off the record.)
 7             MR. KYLE:  Mr. Schneerson, you have the
 8      right -- I want to afford you the right to read over
 9      this transcript after it's been prepared to see if
10      it's correct or incorrect.  Make any changes you
11      think are appropriate, or you can waive that
12      signature.  I mean waive that right.  It's up to
13      you.
14             THE WITNESS:  I'd like to see a copy of it.
15             MR. KYLE:  Send me the original, please,
16      with all the exhibits.  Send you a copy.
17             Would you please read it over.  There will
18      be instructions.  It's called an errata sheet.  If
19      there's anything you read, that you look on and you
20      feel that she has not taken it down properly, she is
21      a competent reporter but sometimes she makes
22      mistakes, we're all human.
23             If you see a mistake, correct it, send it
24      back to her.  She'll give you a self-addressed
25      stamped envelope on that.  Just send the whole
```

Page 70

1  situation back to her and she'll send it back to me.
2  And I'll see that Mr. Rowe gets a copy of any
3  changes, if anything.   Oftentimes there's no changes
4  that need to be made.
5
6          It has to be done within 30 days.   Is that
7  sufficient time?   We can give you more time.
8          THE WITNESS:   When I get it.   30 days from
9  when I get it.
10         MR. KYLE:   That will be fine.   Thank you,
11 sir.
12         (TIME NOTED:   10:50 A.M.)
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 71

1          I declare under penalty of perjury

2    under the laws of the State of California

3    that the foregoing is true and correct.

4          Executed on _____, 2012,

5    at _____, California.

6

7

8                    _____

9                    SIGNATURE OF THE WITNESS

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 72

```
 1    STATE OF CALIFORNIA    ) ss:
 2    COUNTY OF LOS ANGELES )

 3

 4            I, CATHRYN L. BAKER, C.S.R. No. 7695, do
 5    hereby certify:
 6            That the foregoing examination under oath
 7    of JOSEPH SCHNEERSON was taken before me at the time
 8    and place therein set forth, at which time the
 9    witness was placed under oath by me;
10            That the testimony of the witness and all
11    objections made at the time of the examination were
12    recorded stenographically by me, were thereafter
13    transcribed under my direction and supervision and
14    that the foregoing is a true record of same.
15            I further certify that I am neither
16    counsel for nor related to any party in said action,
17    nor in any way interested in the outcome thereof.
18            IN WITNESS WHEREOF, I have subscribed my
19    name this 3rd day of May, 2012.

20

21

22

23    _____
24            Cathryn L. Baker, C.S.R. No. 7695

25
```

Page 73

**[& - american]**

| & |
| --- |
| **&**   3:4 |

| 1 |
| --- |

**1**   1:25 4:12 33:1
  39:12,13 42:1
**10**   24:24 33:8 51:3
**100**   41:6,7
**1000482-10**   6:20
**10:50**   2:19 71:12
**11**   24:25 33:1
**1100**   3:16
**125**   32:23
**13th**   34:15,18,19,23
**14**   30:8 51:18 61:4
  65:16,20 67:16
**141218a**   1:24
**15**   19:20 33:22 57:6
  57:18
**15th**   6:24,25 12:15
  14:10,13 15:24
  57:17
**16**   4:16
**17th**   34:7
**18**   1:13 2:19 5:1
**1st**   64:4

| 2 |
| --- |

**2**   4:14 49:1,2 51:24
**2/7/2011**   50:20
**200**   3:6
**2006**   12:15 14:10
  35:8
**2008**   16:21 18:24
**2009**   16:24 17:3,5
  18:24 19:19 20:9,11
  22:23 24:24 34:25
  53:1 57:4
**201**   6:20
**2010**   6:25 14:13
  15:24 19:7,20 26:14
  26:21 27:4 34:7,19
  36:22 52:10 54:4
  57:17,18 60:17 64:4
  65:10 67:25

**2011**   4:16 6:25
  52:11 58:10
**2012**   1:13 2:19 5:1
  72:4 73:19
**205**   3:18
**2094**   5:7
**21**   47:1
**2100**   3:15
**222**   7:24
**22nd**   54:4
**24**   50:16 51:2
**25**   38:25
**250-5000**   3:18
**26**   9:11 17:13 25:24
  28:11 34:25
**26th**   19:19 20:9
**2nd**   58:10

| 3 |
| --- |

**3**   4:16 53:16,19
**30**   17:23 18:3,7
  20:24 71:6,8
**30338-2668**   3:8
**35203-3367**   3:17
**39**   4:12
**3a1**   51:18,19
**3a4**   52:20
**3rd**   73:19

| 4 |
| --- |

**4**   4:20 34:6 61:13,14
  61:17 62:9,15 63:15
**4221**   7:24
**49**   4:14

| 5 |
| --- |

**500**   3:7 6:22
**53**   4:18
**58**   4:7

| 6 |
| --- |

**6**   4:6
**6/8/2011**   50:4
**60**   17:24 18:4,7
**61**   4:21
**668-0878**   3:9

| 7 |
| --- |

**7.7**   64:17
**73**   1:25
**7695**   1:23 2:21 73:4
  73:24
**770**   3:9

| 8 |
| --- |

**8/13/2010**   30:18
**835**   2:17

| 9 |
| --- |

**9**   51:3,18
**9/15/09**   13:5
**9/15/10**   13:6
**9/15/2010**   62:19
**9/22/2010**   62:19
**90004**   6:23
**90010**   7:25
**9:25**   2:18 5:2

| a |
| --- |

**a.m.**   2:18,19 5:2
  71:12
**aaron**   53:20
**ability**   60:15
**able**   22:25 31:9
**acceptance**   42:20
**account**   35:25 36:1
  37:2 54:14,18,25
**acord**   4:14 30:5
  32:23 33:14 35:4,7
  35:7,13 40:13 49:5
  62:16 63:12,18
  65:13,15,18,20 68:6
**action**   18:8 27:1
  57:12 73:16
**acts**   51:9
**actual**   61:7
**adams**   3:13
**add**   16:13 21:4,20
  22:1,16
**added**   25:15
**addition**   63:18
  65:12,18 68:5

**additional**   21:21
  22:18 25:16 26:6
  29:17,18 36:16
  69:11,15
**address**   6:21 7:23
  36:20
**addressed**   70:24
**administered**   5:6
**advantages**   25:12
**advice**   24:16
**advise**   28:2
**advised**   28:6
**affect**   37:25
**affirmed**   6:15
**afford**   70:8
**agency**   7:2 9:8,16
  26:9 37:13 45:24
  48:22 49:15 50:5
  53:13 55:4
**agency's**   49:15
**agent**   8:4,6,12 45:25
**ago**   10:23
**agreed**   6:9 42:19
**ahold**   35:3 66:20,22
  66:24
**aig**   12:24
**alabama**   3:17 12:5
  26:16,17,21,23
  48:14 54:4 55:15
  60:22 67:23
**alarm**   40:2,15,18
  41:6,7,15,20 44:5,7
  44:13,17,22 45:2,14
  46:1 48:5,6 64:9,12
  67:17,19,24,24 68:7
  68:12,16
**allow**   57:24
**allowed**   16:4
**allows**   10:15
**amended**   53:12
**american**   2:16 3:3
  6:19 8:14 10:9,18
  13:4,21 14:12 15:11
  15:23 19:5 24:18
  25:3,5 27:10 28:25

[american - burglar]

39:22 45:15 51:4
56:10 57:20 58:9
59:11,12 60:7 69:18
**amount**  15:18,21
38:8
**amwins**  8:13,15,17
8:23 13:21 15:5,6,9
15:11 44:12 46:22
66:8 69:17,22
**angeles**  1:12 2:18
5:1 6:22 34:11 73:2
**answer**  10:7 20:16
25:21 38:3 41:16
65:21,22 66:23
**answered**  35:1
**anteroom**  7:3
**anybody**  18:2 19:15
21:12 46:8 58:7
68:17,22
**anymore**  36:3
**ap**  30:5
**apart**  23:5
**app**  14:7 33:14
**appear**  39:8,21 62:9
**appearances**  3:1
**appears**  30:9,13
49:10
**applicant**  35:12
**application**  13:24
30:10,17 31:3,11,15
31:19,24 32:5,5,21
34:14 35:4,14,21,22
37:11,13,22 39:25
40:8,14 43:21 61:2
61:7 63:19 65:13,15
65:19,20 66:12,12
66:16 67:4,13 68:6
69:12
**appropriate**  70:11
**april**  1:13 2:19 5:1
20:12 34:14,18,19
34:20
**area**  16:25 40:24
**arlaw.com**  3:19

**ashford**  3:6
**asi**  59:2,18 67:3
68:20,25 69:10,18
69:19
**asi's**  68:10
**asi0278p**  53:24
**asked**  18:10 22:20
33:23 37:15 60:5
61:2 66:14 67:16
69:11
**asking**  7:20
**asks**  33:9 40:15
**assist**  9:20 13:2
36:23 47:13
**assistant**  37:9
**assisted**  11:24
**associates**  47:23,24
**assume**  24:10 27:6,8
44:3,24 53:21 55:2
**assuming**  52:16
**ate**  24:23
**atlanta**  3:8 22:9
**attached**  54:2
**attachments**  4:18
**attempts**  56:11,14
56:20
**attend**  11:20
**attention**  55:22
**attested**  34:6
**attorney**  26:17,21
27:1 38:23 61:19
**august**  17:5 22:23
34:7,20,22,23
**authored**  53:25
**authority**  10:17
**automatic**  43:19
**avenue**  3:15
**aware**  12:7 17:1,14
19:18 52:23

**b**

**back**  14:24 19:8
22:9 23:12,21 35:8
39:25 56:8 60:16
65:10 66:23 67:24

70:24 71:1,1
**backgrounds**  14:1
**baker**  1:22 2:20
73:4,24
**bamaco**  17:6 23:2
25:6
**bankrupt**  21:1,3,10
38:12,12
**bankruptcies**  33:9
**bankruptcy**  19:19
19:23 20:6,9,15
21:20,21,25 22:7
33:15,22 34:10,24
37:23,24 38:9 54:16
**based**  7:17 17:13
20:19 28:23 35:4
37:20
**battery**  45:12
**bear**  30:13 36:17
**bears**  49:14
**becoming**  35:19
60:11
**beginning**  2:18 16:9
35:15
**behalf**  2:16
**belabor**  66:15
**believe**  7:8 8:5 11:13
13:17 14:23 15:5
16:12 19:7 36:7,10
51:8 57:19
**ben**  8:18 10:22
11:12,15,24 12:8
13:8 16:11,21 18:1
19:15 20:20 24:10
24:11 27:7,20,21
30:25 33:16,20 34:3
34:5,6,25 35:3 37:7
37:16 38:22 39:21
40:1 47:22 52:9
55:17,23 58:7 61:19
**best**  14:16 15:1
18:15 22:21 43:13
**bind**  10:15,17 31:7
**binder**  4:12 42:4,6

**binds**  69:2
**bingo**  17:6 23:3,3,6
23:11,24,24 25:7,19
26:3,15,22
**birmingham**  3:17
55:14 56:2
**bit**  9:7,22
**blank**  41:16,23
**bottom**  30:12 32:15
33:1 47:5 49:10
**bought**  16:11
**boulevard**  2:17 7:24
**bound**  14:8 69:8
**bovis**  3:4
**boviskyle.com**  3:10
**box**  40:15,21 41:9
**boxes**  40:20 64:23
**brain**  25:1
**breached**  44:9,25
**bring**  7:2 61:6,10
**bringing**  55:20
**broken**  44:25 51:14
51:22
**broker**  8:2,4,5,9,15
8:16 15:9 18:9
19:22 25:24 28:11
29:21 30:2,6 46:17
46:19,21,21 58:3
66:4
**broker's**  37:12
**building**  16:18
18:13 19:1 20:7,10
20:22,24 21:1,2
23:1,18 24:5 26:24
27:3 28:12 35:6
38:11 59:5,7 60:3,8
60:22 63:9,10 64:17
64:20 67:23 69:5,6
69:8
**buildings**  29:2,4
**burch**  3:4
**burglar**  40:2,15,18
41:14,20 44:4,7,13
44:17 46:1 48:5,6
64:8 67:17,24,24

**[burglar - coverage]**

68:7,12,15
**burglary** 52:11
**business** 3:12 11:17
  11:17,18 17:14
  37:21 47:24 62:24
  63:1
**busted** 45:1

**c**

**c.s.r.** 73:4,24
**california** 1:12 2:18
  5:1 6:23 7:25 34:11
  34:12 72:2,5 73:1
**call** 49:18 50:6,13
**called** 12:6 34:2
  37:3 46:13,22 49:20
  49:22 56:14 70:18
**calling** 21:13
**calls** 21:15
**cancel** 28:22 56:17
**canceled** 19:3 56:10
  56:18 57:21,23 58:9
**cancellation** 60:6
**capacity** 6:5 8:18
  10:24
**capital** 21:13
**care** 6:21 53:6
**carrier** 59:11,12,15
  59:16,19
**carriers** 59:9
**case** 5:17
**cathryn** 1:22 2:20
  73:4,24
**ccp** 5:7
**center** 1:8 2:7 3:6
  6:21 8:10 11:11
  12:5,6 18:2 19:19
  20:9 22:25 25:16
  26:2 33:21 34:12
  47:4 61:20 62:10
  64:1
**central** 34:10 40:2
  40:21 41:9,10,14,15
  41:18 43:20,23 44:5
  44:7,13,18,23,24

45:4 46:1 48:5,7
  64:8 67:19 68:7
**cert** 21:16,17
**certain** 7:6 10:11,12
  10:15 38:17 43:8
  51:9
**certificate** 21:17
  40:16
**certificates** 63:7
**certified** 2:20
**certify** 73:5,15
**change** 20:5,7 25:19
**changed** 28:24
**changes** 35:5 70:10
  71:3,3
**charge** 22:11 32:2
**charged** 38:7,8
**check** 36:24 37:5
  48:10,16
**checked** 41:9 64:11
**checkmark** 43:19
  44:4
**checkmarks** 43:8,8
**chemical** 41:4
**chose** 60:23 67:12
**circumstances**
  20:21 21:6 27:18
**claim** 42:21 49:9
  53:23
**cleaning** 55:19
**clear** 19:10
**client** 8:6,24,24
**clock** 40:22
**cmp** 6:20
**co2** 41:4
**combination** 11:19
**come** 22:23 24:15
  40:9 56:8 69:15,19
**commercial** 3:12
  4:12 9:14,17,18,21
  9:25 10:1 21:13
  30:9 35:13,21,22
  42:3 62:24,25
**companies** 10:4,11
  10:13 30:3 31:6,23

**company** 2:17 3:3
  6:19 7:9 8:7,25 10:9
  10:9,19 12:17,18,21
  13:12 16:11,16
  18:10 20:3 21:8,9
  21:20 22:2,16 24:4
  27:11 29:24 33:21
  34:12 35:16 38:4,18
  46:13 49:9,25 50:10
  50:15 51:25 56:18
  56:24 58:4,12 65:7
  65:9 67:3
**company's** 37:25
  56:16
**compartmentaliza...**
  14:14
**compass** 45:6
**competent** 70:21
**complete** 30:5 43:1
**computer** 7:7,15
  30:23
**concentrated** 17:17
**concerning** 69:11
**condition** 42:19
  57:11,16
**conditions** 6:18
  50:22
**conference** 34:4
**confidential** 12:3
**confirm** 13:11 46:1
**confused** 8:21
**consider** 28:7
**considering** 31:25
**contact** 9:13 11:1,12
  33:16 36:18 37:7
**contacted** 55:17
**contacting** 45:23
**contained** 31:19
  47:17
**contains** 57:9
**contents** 23:18 24:5
  54:6
**context** 42:3
**contract** 51:3,16
  52:20

**contractual** 10:8,12
  68:19
**conversation** 19:1
  58:7 66:25
**cooperate** 57:24
**copies** 57:10 66:16
**copy** 7:15 10:3 13:1
  13:2 30:19,24 32:11
  53:21 54:2 57:13
  62:8 70:14,16 71:2
**corner** 30:13 31:1
**corp** 3:12
**correct** 7:4,5,10,11
  7:12 8:11 9:4,6,15
  10:16,20 11:4 12:21
  13:10 14:2 15:13
  17:25 19:17 21:18
  22:22 26:12 27:14
  27:15 29:6,11 30:14
  30:16 31:20 32:1,3
  32:25 33:4,7,19,24
  34:16 35:8 40:25
  41:2 43:24 44:2
  45:7,10 47:7,18
  48:3,24 49:16 50:8
  50:12 53:10 54:1,23
  57:21,22 58:1 59:3
  59:8,13,23 60:3,8,9
  60:18,20 61:11
  62:11,14 63:5,11,20
  63:22 64:1,2,16,19
  64:22 65:2,8,14
  66:13 67:7,10,21
  68:1,9 69:4,8,23
  70:10,23 72:3
**correction** 53:13
**correspondence**
  69:18
**counsel** 73:16
**county** 73:2
**couple** 61:25
**course** 37:8 43:12
**court** 22:7 34:10
**coverage** 15:18
  20:24 23:18 24:4

[coverage - expressing]

30:4 42:17 58:22
59:7,10 60:11 66:2
67:5,8 68:12,15,20
68:23 69:8,12
**coverages** 31:16
**covered** 51:10 52:22
**critical** 31:18 33:5
35:19
**csr** 1:23
**currency** 42:23
**currently** 5:18
**custom** 31:2 35:11
**cynthia** 22:7

**d**

**d&o** 9:24
**damage** 17:22 28:17
50:23 51:6,10 52:1
52:22,23 53:1
**darrell** 49:11,12
**date** 19:2 22:5 23:11
23:12 26:20 30:17
34:14,17 40:17 47:8
47:13 50:2,18 62:19
63:2 64:3,21
**dated** 47:1 62:18
**dates** 23:4,5 24:17
24:22 50:1
**david** 11:5 53:23
**day** 26:20 27:4
50:14,15 57:6 73:19
**days** 17:23,24 18:4,7
20:24 71:6,8
**dealing** 17:10
**dealt** 33:17 37:16,17
**debbie** 53:23 55:6
**debtor** 34:3
**december** 16:21
**decide** 23:19 38:6
**decided** 27:9
**decision** 23:22 38:1
60:19
**declaration** 34:2
**declare** 72:1

**decrease** 21:4
**delia** 53:23
**demand** 31:6 67:6
68:13,17
**depending** 17:24
**depends** 35:16 38:4
**deposition** 5:16,17
5:21 39:13 49:2
53:16 61:14
**describe** 11:14
50:22
**described** 42:23,25
43:3
**describing** 31:16
**description** 52:1
**desire** 12:7 67:4
**determine** 24:8
**determined** 16:20
**difference** 5:22 8:3
20:13,25 21:3 25:23
25:25 26:7
**different** 11:23 15:7
16:25 20:18 24:1
38:18 39:6 63:10
**difficult** 59:6
**direction** 73:13
**disadvantages**
25:13
**disclaimer** 63:14
**discovered** 19:1
**discuss** 24:11 40:5
**discussed** 7:3
**distinguished** 13:14
13:16,20,25 14:6,7
15:10
**district** 34:11
**document** 30:8 39:2
39:4,9 42:2 46:25
47:14 61:24 65:12
**documents** 7:6,8,17
14:11 36:17 38:22
38:24 39:1 61:18,20
61:24 62:7
**doing** 6:8

**domestic** 59:9,11,15
59:16,18
**domiciled** 59:16
**donna** 36:6,7,9,21
37:10 46:5 47:6
48:8,10 54:22 55:2
65:3
**door** 45:1
**dora** 3:22 4:17 7:1
36:19,23 53:20,25
54:9,21 55:1,3,6,8
**dora's** 53:14
**dp** 15:12,15 19:3
**due** 60:6
**duties** 50:22 51:5,19

**e**

**e** 4:16 7:1 44:12
53:20,25 54:6 55:7
**earlier** 27:12 63:16
**effect** 13:3,4 24:14
**effective** 62:19
**efforts** 29:23 30:2
**eight** 52:10,12,17
**either** 5:16 14:21
18:10,24 19:3 22:3
41:13 44:25 54:21
66:20 67:1
**electric** 64:14
**employed** 28:2
**employee** 47:25
65:7,9
**employing** 28:8
**endeavor** 22:9
**endorsement** 18:11
25:15
**endorsements** 17:15
42:12
**entity** 17:5 21:1 23:2
**entry** 43:10,15
44:22 45:1
**envelope** 70:25
**equipment** 43:1
**errata** 70:18

**esq** 3:5,14
**established** 65:6
**estate** 64:23
**estimate** 11:25
**event** 50:22 51:5,10
51:19
**eventually** 56:10
**everybody** 6:6 8:24
**evidence** 4:20 62:17
62:20
**exactly** 37:18 46:22
**examination** 1:11
2:15 4:2 5:10,19,21
5:24 6:5,12,15
54:10 58:20 73:6,11
**exclude** 17:21
**exclusion** 17:11,20
**exclusions** 17:15
**excuse** 21:24 35:13
49:21
**executed** 72:4
**exhibit** 4:12,14,16
4:20 30:8 39:5,12
39:13 42:1 47:1
49:2 51:2 53:15,16
53:19 61:4,13,14,17
62:9,15 63:15 65:16
65:20 67:16
**exhibits** 4:10 70:16
**exist** 5:18 21:7
**existed** 43:25
**existence** 40:1 41:14
44:13
**experience** 9:8
17:13 19:22 20:19
21:19 25:25 28:10
29:10 37:20 38:8
69:3
**expiration** 22:5 29:9
40:17
**explain** 44:18
**explained** 25:11
**explore** 9:7
**expressing** 29:3

[extended - human]

| | | | |
|---|---|---|---|
| **extended** 28:13 38:14<br>**extent** 29:18 40:17<br>**extinguisher** 43:22<br>**extinguishers** 41:6<br>**extra** 59:1 | **filled** 33:14 35:3 41:1 47:9 49:24 64:15,25 66:8 67:18 68:4,8<br>**finance** 3:12 62:24 63:1 | **found** 23:10,15 52:14 53:3<br>**four** 14:14,17,19 15:12 20:12,14<br>**fourth** 63:14<br>**friend** 55:20 | **good** 6:10 24:24<br>**gotten** 47:19<br>**gp** 15:4<br>**grade** 40:17<br>**granite** 12:17,20,22 13:11,19 14:1,8,9 |

**f**

| | | | |
|---|---|---|---|
| **f** 36:9,9<br>**face** 28:11<br>**fact** 19:23 34:1 41:16 48:6 60:6 67:8,17<br>**failure** 57:23<br>**fair** 6:8 7:17,19<br>**fairfield** 1:8 2:7 6:20 8:9 11:11 12:5 12:5,6 18:2 19:18 20:8 22:25 25:16 26:6 33:21 34:11 47:4 48:14 54:4 60:22 61:19 62:10 64:1 67:23<br>**fairly** 41:12<br>**fall** 65:10<br>**familiar** 13:13 32:20 42:4,12 43:4 45:13 46:13 49:6 50:21,25<br>**far** 66:19<br>**fashion** 26:22<br>**fast** 19:6<br>**february** 16:24 20:11,11 52:4 58:9 58:10<br>**feel** 20:2 21:5 70:20<br>**fifth** 63:15<br>**file** 7:2 22:8 24:7 35:20 36:1,14 48:19 48:20 57:9,16 67:2<br>**filed** 19:19 20:5,9 33:9 34:9 37:22<br>**files** 19:23<br>**filing** 34:9,24<br>**fill** 31:3,12 35:13 37:21 50:6 68:14 | **find** 7:14 21:11 26:25 35:20 52:16<br>**fine** 10:4 50:17 62:4 71:10<br>**fingers** 12:25<br>**finished** 70:2<br>**fire** 23:17 41:3,5,7 41:19,19 43:22 64:8<br>**firm** 62:10<br>**first** 10:21 12:7 35:7 38:2 40:20 42:3 50:2 69:5<br>**five** 33:10 37:23<br>**fix** 57:14<br>**foil** 23:16<br>**follow** 51:9<br>**following** 19:8 27:4<br>**follows** 5:8<br>**footage** 64:20<br>**force** 23:20,21 24:18 24:19 60:15<br>**forced** 58:13 68:23<br>**forcing** 68:20,22<br>**foregoing** 72:3 73:6 73:14<br>**form** 26:22 32:23,24 40:3 42:10,18 47:10 47:17 48:2,25 49:5 49:8,11,19 50:2 51:15 62:16,21 63:14,15,23,25 64:6 64:15 66:2,2,7,11 67:9<br>**former** 65:6<br>**forms** 50:6 63:12 66:17,19<br>**forth** 73:8<br>**forward** 19:6 22:23 | **friendship** 11:18<br>**front** 14:11,19<br>**frontwards** 14:4,5<br>**full** 12:22,24<br>**further** 37:23 52:22 53:2,9 68:25 73:15<br>**futter** 22:7 61:18,22<br><br>**g**<br><br>**gas** 64:14<br>**ge** 3:12 21:13 62:24 62:25<br>**general** 7:20 17:17 17:18 26:17,21 27:1 32:15<br>**generally** 17:19 55:5<br>**generic** 66:2,5<br>**gentleman** 11:5 55:10,14<br>**georgia** 3:8<br>**getting** 35:22<br>**give** 11:25 12:22 18:11 26:20 42:15 50:1 51:24 67:9 70:24 71:7<br>**given** 26:10 30:19 41:22 48:7 50:10<br>**go** 7:13 14:24 31:10 33:25 45:2,5 46:23 48:10,13,13 60:2,21 68:1<br>**goes** 21:20,25 43:17 45:3 46:21,22<br>**going** 6:7 7:16 11:23 14:21 16:23 19:6,8 32:4,6 34:22 36:16 39:16,25 51:2 52:8 56:17 58:8 | 14:17 15:2,5,12,14 15:19,22 16:14,17 17:9 18:11 24:14,19 25:7 28:20,25 29:1 57:1<br>**guard** 28:8<br>**guards** 28:3<br>**guardsman** 40:19 40:19<br>**guess** 8:21<br><br>**h**<br><br>**habit** 31:2 35:12<br>**hall** 23:3,6 25:19 26:3,15<br>**halls** 26:22<br>**hand** 30:7,12,25 39:16 51:2 61:21<br>**handed** 61:3<br>**handled** 37:8<br>**hands** 54:17<br>**happen** 11:20 24:3<br>**happened** 24:24 58:6<br>**haunt** 56:8<br>**hazard** 19:24 26:1<br>**hazardous** 25:23<br>**hear** 12:11 58:12<br>**heard** 27:6 54:15,16<br>**help** 9:20 12:18 23:9 24:8,21 25:8 35:22 36:19<br>**higher** 38:8<br>**hourly** 40:22<br>**hours** 50:16<br>**huh** 28:16 32:17 40:12 63:13 64:13<br>**human** 70:22 |

[hypothetical - kyle]

| hypothetical 20:16 21:7 52:8,15 53:5,6 | indirectly 8:24 | insure 12:8 16:14,16 | k |
|---|---|---|---|

**hypothetical** 20:16
21:7 52:8,15 53:5,6

**i**

**idea** 19:3 34:25 47:9
47:15,16 56:3 61:1
67:22
**identification** 39:14
49:3 53:17 61:15
**identified** 30:8 34:5
**identifies** 47:4
**identity** 24:8
**imagine** 10:14 45:19
45:22 47:12 59:4,17
60:14 61:8 63:24
65:11 67:15 68:21
69:9
**imply** 41:16
**importance** 56:21
**important** 21:5 50:9
**impression** 12:16
13:5
**improve** 57:14
**inception** 63:2
**incident** 50:18,19
54:3
**include** 53:8
**including** 8:25
43:19 44:5 52:1
**income** 16:18
**incorporated** 9:3
**incorrect** 48:8 70:10
**increase** 19:24
**increased** 15:22
16:8
**indemnity** 2:17 3:3
6:19 10:9,18
**index** 4:1
**indicate** 37:22 48:1
62:25
**indicated** 7:7 43:22
46:9 64:20
**indicates** 63:25 64:3
**indication** 48:4

**indirectly** 8:24
**industry** 9:10 20:19
32:24
**inform** 21:8
**information** 12:3
31:18 32:16 35:4
41:22,24 47:17,19
48:2,7,21 67:1,17
68:2 69:1,2,5,11,15
**informed** 19:15
22:15,15,16 25:14
**initial** 35:21
**initially** 15:2
**inland** 10:1
**input** 26:10 31:11
**inquiries** 69:19
**inquiry** 37:24 41:13
**inside** 45:2
**inspect** 60:8,10,13
60:22 69:5,7
**inspection** 56:12,22
57:2,24
**installed** 40:18
**instance** 8:8 20:8
21:12 22:20 32:4
38:2,19
**instructions** 70:18
**insurance** 4:21 6:18
7:9 8:2,4,4,5,6,8,12
8:25 9:3,8,9 10:13
11:2,10 12:1,17,18
12:21 13:1,12,18
15:21 16:16 17:14
18:8 19:22 20:2
21:8,17 22:2,16
24:4 25:24 26:9
27:11 28:11 29:21
29:24 30:2,6,9 31:3
31:14,19,23 32:24
35:14 37:25 42:8,20
49:9,15,25 50:10,15
51:3,25 52:20 56:24
58:3 62:17,21 63:7
63:8,9 67:3

**insure** 12:8 16:14,16
16:18 29:4 38:16
45:16
**insured** 6:20 8:10
12:9,10,12 19:23
20:1,5,23 21:1,3,10
21:21 22:18 23:18
25:17 26:6 29:13
31:4,11 33:3,10
35:13 37:21 41:23
41:25 42:19,22,25
48:17,22 51:9 52:21
52:25 53:3 56:14,16
57:24 58:8 66:17,19
68:2,10,14
**insured's** 48:17,22
58:2
**insureds** 9:13 29:17
29:18
**intended** 16:14,16
16:17
**intent** 6:7 29:3 54:1
**interested** 66:15
73:17
**interpret** 41:12
**invoice** 4:20 62:9
**involved** 52:2
**involvement** 55:24
**issuance** 39:22
**issue** 29:4 35:19
67:12
**issued** 38:16 42:9
47:9
**items** 43:18

**j**

**j** 3:5
**jibe** 56:15
**job** 1:24
**joseph** 1:11 2:15 4:4
5:5,11 7:22 26:8
73:7
**jumbled** 39:20
**june** 26:15 52:5,11
64:4

**k**

**keep** 22:4 23:19,20
24:14
**kept** 56:16
**keys** 40:21
**kind** 59:10
**knew** 23:23,25
27:16 35:5 52:4,25
**know** 8:25 9:1 11:6
12:2 15:21 16:14,17
17:10 18:16 22:11
23:12 25:11,11
30:20,24 32:10
33:15 36:11 37:18
38:19,21 43:13
45:13 46:5,8,22
47:16 49:12,23
52:14,15 53:3 54:10
55:10,16,18,21 57:1
57:8 58:6 59:14,18
59:21 60:25 65:16
66:16 68:4,11,22
**knowing** 32:13
43:16 47:13
**knowledge** 14:16
22:24 43:12,14 46:4
46:9 49:17 54:20
55:25 56:5 66:18
**known** 17:6 23:24
23:25 27:19 33:20
36:19
**knows** 21:9
**kyle** 3:4,5,10 4:6
5:10,14,19,23 6:1
6:10,13 18:20 23:13
34:19,21 36:8 37:1
37:6 39:5,7,11,15
46:19,24 49:4 53:18
60:5 61:3 62:2,5
63:15 65:16 66:14
67:16 70:1,7,15
71:10

[l - oath]

## l

l  1:22 2:20 36:9
  53:21 73:4,24
l.a.  7:24
language  43:4
larchmont  6:22
lately  47:12
law  51:13,21
laws  72:2
learn  23:5 26:13
  27:1,3 50:11
learned  52:9 53:11
lease  16:24 17:6
  26:5
left  30:25 55:3
lessee  23:1
liability  16:19 63:7
  63:8
liens  64:25
lightbourn  53:23
limited  34:12
line  40:17 59:25
lines  9:13,14,17,17
  9:18,21 40:5 58:22
  59:2,12,21 60:2
list  38:11 41:8
litigation  5:17 6:2
little  9:7,22 12:9,12
  14:14 54:15
lives  55:14
llc  1:8 2:7 3:4 6:21
  8:10,19 11:11 12:6
  18:2 25:16 33:21
  34:12 47:5 61:20
  62:10 64:1
llp  3:13
locate  22:25 36:20
located  36:12
locked  43:9 64:12
long  9:9 20:6 25:22
  27:24 38:13 45:3
look  7:15 15:1 32:7
  33:8 35:20 39:17
  40:3 51:15 60:7

62:3 70:19
looked  10:6
looking  30:11 69:6
looks  61:25
los  1:12 2:18 5:1
  6:22 34:11 73:2
loss  4:14 16:18 49:5
  49:8 50:21,23 51:5
  51:10,19,25 52:18
  52:25 53:12 54:2
lot  23:11
lower  30:25

## m

mail  4:16 7:1 53:20
  53:25 54:6 55:7
mailing  6:21
mails  44:12
maimon  11:6,6,8
maintain  43:1
majority  9:18
making  21:11
malicious  17:21
manager  54:14,24
  55:3
managing  8:18
manufacturer  41:8
march  20:12
marine  10:1
mark  38:25 39:1,11
  48:25 61:13,23
marked  33:11,13
  38:25 39:6,13 49:2
  53:15,16 61:3,14,22
  65:16
market  58:23,25
master  22:13
material  20:4,25
  31:10 33:5 38:10
  45:20
matter  16:1
mean  21:23 24:22
  39:3 41:12,14 44:21
  66:14 70:12

meant  17:7
medical  9:22
meet  10:22
member  8:18
memorial  26:19
  27:4 57:6
met  44:2
middle  32:14
million  64:18
minute  36:17 55:9
  70:1
mischief  17:21
misspoke  34:21
misstating  12:23
mistake  70:23
mistakes  70:22
monitor  28:8
monitoring  40:2
  41:15 43:23 44:14
  44:18 46:2 48:5,7
month  19:9
months  17:8 19:20
  20:12,14 23:2 33:22
  52:11,12,17,18 57:4
mortgage  21:8,9
  58:12 64:24
mortgagee  21:15
  29:15 62:22,23 63:1
moshe  8:18 10:22
  11:12,15,24 12:8
  13:8 16:21 18:1
  19:15 20:20 24:10
  24:11 27:7,20,21
  30:25 33:16,20 34:3
  34:5,6,25 35:3 37:7
  37:16 38:22 39:21
  40:1 47:22 52:9
  55:17,23 58:7 61:19
moshe's  16:11
moti  55:11,13,17,18
  55:23 56:1
moti's  55:23
mouth  18:21
moved  15:4

## n

n  53:21
name  7:21 11:5
  12:17,22,25 16:22
  23:2 24:3 49:15
  55:6,10,18 56:1
  73:19
named  6:20 26:5
near  50:6
necessary  36:18
need  16:1 21:16
  71:4
neither  73:15
never  21:15 27:2
  41:24 66:22
new  22:25 35:13
nice  14:14
nickname  53:22
non  22:4 28:22
nonrenewal  28:20
  29:5,8,12
normal  16:13 21:6
  22:14 37:8 50:5
normally  29:7 45:8
north  3:6,15 6:22
noted  71:12
notice  4:14 16:23
  28:19 29:4,8 50:10
  51:6,25 52:6 54:2
noticed  52:13
notices  29:12
notified  20:21,23
notify  18:2 51:13,21
november  4:16
  52:10,25 53:1 54:4
number  4:11 10:4
  31:23 40:16,19
numerous  56:13,14
  56:20

## o

o  53:21,21
o0o  5:3
oath  1:11 2:15 5:6
  5:11,19,24 6:5,15

[oath - program]

34:7 73:6,9
**object** 5:16
**objection** 6:3
**objections** 73:11
**obligated** 13:7
**obligation** 51:8
**obligations** 64:24
**obtaining** 13:2
**occupancy** 43:17
  64:3
**occupation** 8:1
**occupied** 27:17
**occupying** 16:23
**occurred** 19:7 52:12
  54:3,12
**offer** 67:8
**offered** 15:19
**offering** 24:4
**offhand** 12:2 17:12
  24:6 28:21 59:4
**office** 45:4,5 49:20
  49:22,23
**offsite** 45:6
**oftentimes** 71:3
**okay** 5:25 7:1 15:16
  23:14,15 32:9,12
  34:8,13 39:23 41:21
  50:17 52:3 60:1
  61:5 64:5,7,10 65:5
**old** 35:4
**once** 22:14 52:23
**one's** 68:20
**operates** 55:5
**operating** 26:1,3
**operation** 26:15
  43:2
**operational** 44:1
  64:14
**operations** 20:7
  25:22
**opinion** 37:25 42:15
  52:24
**opportunity** 9:12
  10:22 18:17 26:10

**option** 24:13
**order** 28:7 39:19
  43:1 61:23
**organization** 46:10
**original** 30:20,21
  31:1 32:6 70:15
**originally** 15:23
  39:9
**outcome** 73:17
**owner** 9:2,5 28:11

**p**

**package** 4:12 42:3
**page** 4:11 32:15
  34:6 42:1,3,10
  44:20 51:18 62:8,15
  63:6,15
**pages** 1:25 39:17,18
  39:20 51:3
**paid** 38:13 44:1
  64:24,25
**paperless** 7:3
**paragraph** 40:4
**paralegal** 61:23
**part** 9:25 12:8 39:9
  40:14 42:18 51:9
  61:7 68:14
**participated** 27:10
**particular** 20:8
  32:14 43:7 49:11
  51:3
**particularly** 56:22
  57:5
**parts** 31:10
**party** 73:16
**payment** 42:21
**payments** 21:11
**penalty** 72:1
**percent** 41:7
**period** 6:24 15:9
  17:24 25:5 26:14
  28:13 29:9 38:15
**periods** 14:15 15:3
**perjury** 72:1

**person** 22:17 24:8
  33:14 54:19
**personal** 9:13,17,20
**personally** 54:14
**personnel** 36:14
**pertaining** 43:2
**pertinent** 31:10
**phone** 49:18 50:13
  66:25
**photographs** 57:16
**pick** 25:1
**pictures** 57:19
**place** 13:25 43:23
  44:1 45:17 53:14
  57:25 58:3 66:3
  67:5 73:8
**placed** 12:1 14:5
  15:2,11,23 58:13
  60:11 68:23 69:12
  73:9
**placement** 9:20
  11:10 15:6 28:24
  33:17 59:23
**places** 64:11
**plans** 31:9
**please** 7:23 30:1
  32:10 39:11 40:9
  70:15,17
**point** 7:16 13:22
  23:10 33:11 66:15
**police** 51:13,21 54:3
**policies** 14:19 17:18
  25:10
**policy** 6:18,19,24
  12:16,20 13:2,3,4
  14:14 15:3,9 16:2,3
  16:4 17:9,18,24
  18:14 19:4 21:22
  22:4,22 23:17,19,20
  24:14,16,17,19
  25:15,22 26:6 27:9
  27:10 28:22,22,24
  29:10,19 35:14
  38:20 39:22 42:9,21
  42:23 45:15 50:21

56:9 57:20 58:13
  59:2,3,22,24 60:6
  62:12 63:2,3 67:12
  68:3,14 69:2,12
**possessing** 16:10
**possession** 7:8 34:4
**possible** 30:3 35:2
  53:7 66:7,10,11
**possibly** 17:21 24:9
  26:4 28:21 33:13
  44:10 48:9 51:17
**power** 45:11
**practice** 21:6 22:14
  31:2,2 35:12 50:5
**precedent** 42:20
**premises** 16:10 17:7
  23:6 28:3,7,8 31:16
  41:3,19 42:23 43:9
  45:2 52:12 54:12
  57:2,17
**premium** 32:2 38:7
  38:8,13
**preparation** 49:19
**prepared** 50:3,14
  70:9
**prescribed** 29:8
**present** 3:21
**presently** 37:24
**pretty** 32:20,23
  50:25
**prevent** 53:1
**previous** 54:1
**previously** 51:5
**principal** 37:13
**prior** 29:9
**priscilla** 37:17,19
  47:20,21,23
**probably** 23:23
  33:13 44:21 47:20
**problem** 16:3,6 39:3
**proceed** 7:17
**produce** 13:9
**professional** 10:24
**program** 13:18

[programs - risk]

| | | | |
|---|---|---|---|
| **programs** 13:14,16 13:20,25 15:10 | **pursuant** 6:17 | **receive** 68:2 | **renewed** 15:3 28:22 |
| **promissory** 42:11 42:16 | **put** 18:21 23:16 26:10 42:2 51:6 52:18 68:6 | **received** 28:19 54:7 61:18 | **repeat** 30:1 |
| **prompt** 50:10 51:6 51:25 52:6,13,19 | **q** | **receiver** 21:23,24 22:1,2,11,12,17 | **report** 34:3 54:3 57:13 |
| **pronounce** 55:18 | **question** 5:20 6:4 9:1 12:4 22:14 30:1 33:8,11,23 35:1 39:24 41:6 55:1 66:23 | **receiving** 44:11 54:5 | **reported** 1:21 49:11 50:7 |
| **proof** 42:8 53:12 | | **recollect** 23:9 56:13 57:9 | **reporter** 2:21 70:21 |
| **proper** 54:19 | | **recollection** 12:19 14:24 15:1,17 16:2 18:15,25 19:21 22:21 23:4 28:23 40:6 56:7 57:15 69:10 | **reporting** 49:9 |
| **properly** 37:15 70:20 | | | **reports** 57:10 |
| **properties** 6:22 11:3 11:24 12:1 | **questioning** 7:13 | | **represent** 10:4 34:24 39:18 55:13 |
| **property** 3:12 4:14 4:21 12:4,8,14 13:17,24 14:12,17 15:18 17:23 18:3,7 28:15 38:14,17 40:4 40:13 43:14 47:2 49:5,8 51:10 52:1 52:22 53:2,9 54:2 56:12,22 57:11 58:14 62:17,21 63:9 63:16,18,18 65:13 65:15,18,19,20 68:5 68:6 | **questions** 5:12 7:21 20:16 32:16 33:1,2 37:15 45:24 58:17 61:25 69:25 70:3 | **record** 16:1 19:10 61:7 70:6 73:14 | **representative** 35:25 36:1 37:2 48:18,23 |
| | **quick** 34:22 62:3 | **recorded** 73:12 | **represents** 8:6 |
| | **quote** 14:8 | **records** 14:18 22:6 | **request** 35:17 66:9 69:14 |
| | **r** | **reese** 3:13 | **requested** 22:1 31:17 65:23 66:8 |
| | **r** 3:22 36:9 | **referred** 43:21 | **requesting** 7:2 |
| | **rabbi** 56:1,4 | **refresh** 12:19 | **requests** 13:8 35:16 |
| | **rabbi's** 56:5 | **refuse** 67:8 | **require** 29:7 |
| | **ran** 23:3 | **regard** 10:18 11:10 13:21 15:18 17:9 18:1 33:17 | **required** 51:13 |
| | **ratliff** 36:9,11 41:13 46:5 47:6,14 54:22 65:4 | | **reserves** 6:6 |
| | | **regarding** 44:12 53:23 | **reserving** 5:16 |
| **protect** 28:3 52:22 53:9 58:14 | **ratliff's** 36:21 | **regards** 32:13 | **responsiveness** 6:4 |
| **protected** 42:24 | **read** 54:8,8 70:8,17 70:19 | **related** 73:16 | **result** 11:1 |
| **protection** 38:17 41:3,19 | **reading** 51:16 54:5 | **relating** 39:21 | **reviewing** 44:11 |
| **protective** 38:15,20 42:11,16,24 43:3 45:16 | **real** 64:23 | **relationship** 10:8 11:14 68:19 | **rewritten** 18:13 |
| | **really** 9:22 19:25 20:25 25:22 26:7 37:18 54:17 | | **rewrote** 19:3,4 |
| **provide** 17:19 | | **relationships** 10:12 | **right** 11:16 22:12 30:12 40:11 43:11 60:10,13,21 61:4,10 64:4 67:11 68:11,13 68:18 69:1,7 70:8,8 70:12 |
| **provision** 17:10 40:4 | **reason** 56:15,16 61:21 | **relies** 48:16 | |
| **pull** 16:2 | **reasonable** 52:21,24 | **relocate** 16:25 | |
| **pulled** 39:4 | **recall** 15:25 16:9 18:5 19:11 21:12 24:3 26:18 27:5 28:1,5,6,9,19,21 30:10 31:1 32:4 44:11,15 45:23 54:5 54:8 55:12 57:8 59:4 | **rely** 31:23 | |
| **purchase** 64:21 | | **relying** 37:14 | **rights** 5:16 6:6 |
| **purchased** 12:15 14:12 | | **remained** 17:4 | **ring** 44:22 |
| **purpose** 6:3 42:7 62:20 | | **remember** 10:25 18:18,23,23 24:17 24:20,23,24 25:2 27:21 35:9,9 53:14 56:11 | **risk** 13:23 14:13,16 15:24 19:24 20:5 21:4 25:3,6,7,8,19 25:21,25,25 31:25 32:14 33:6,18 38:1 38:7 45:18,21 57:3 57:7 60:16,19 67:14 |
| | | **renewal** 22:4 35:14 | |

[risks - steps]

**risks**  10:15 28:10
**riss**  4:17 44:12
  45:23,25 46:3,6,11
  53:20 69:22
**role**  8:21 13:21
**rough**  11:25
**routine**  33:2
**rowe**  3:14 4:7 5:12
  5:15 6:9 18:18
  34:18,20 39:3,6,8
  46:18 58:17,21
  61:16 62:4,6 69:24
  71:2

**s**

**safeguard**  28:7
  38:20 42:16,24 43:3
**safeguards**  38:15
  45:17
**safety**  2:17 3:3 6:19
  8:14 10:9,18 13:4
  13:21 14:12 15:11
  15:23 19:5 24:18
  25:3,5 27:11 28:25
  39:22 42:11 45:15
  51:4 56:10 57:21
  59:11,12 60:7 69:18
**sandpipes**  41:4
**saw**  46:25
**saying**  6:2 7:11
**says**  42:2,11,18
  43:18 44:4 47:2
  51:24 59:24 63:17
  64:6,8,12 65:12
**scanned**  30:22,22
**schedule**  42:25 43:7
**schneerson**  1:11
  2:16 4:4 5:5,11 6:14
  7:22 21:19 30:7
  39:12,16 58:16 70:4
  70:7 73:7
**schneerson's**  26:8
**search**  29:23 30:3
**second**  15:8 39:25
  40:8 42:1,10 44:4

62:15
**section**  5:7 40:13
**secured**  43:9,14
**security**  28:3,8
  44:25 58:9
**see**  15:7 16:5 20:17
  25:14,25 32:7,18
  34:7 40:8,22 41:10
  47:6 51:15,18,19
  55:22 56:24 63:21
  64:12,18 66:18
  67:20 70:9,14,23
  71:2
**seen**  22:6 46:9 47:10
  61:21 63:23
**self**  70:24
**send**  30:5 70:15,16
  70:23,25 71:1
**sense**  66:6
**sent**  7:1 14:7 29:8
  29:12,15,17,21
  49:24 50:14 65:23
  65:24 66:4,6
**september**  6:24,25
  12:15 14:10,13
  15:24 57:6,17,18
  60:16
**series**  32:15 39:1
  45:24
**serves**  42:8
**service**  43:20 44:5,8
**serviced**  40:18
**services**  43:2
**set**  39:4,10 40:20
  73:8
**seven**  39:17,18 57:4
**she'll**  54:10 70:24
  71:1
**sheet**  70:18
**sher**  3:22 4:17 5:20
  5:25 23:7,8 36:4,7
  36:24 37:4 53:20
**shomer**  9:2,3 26:9
  36:3 49:15

**shopping**  1:8 2:7
  6:21 8:9 11:11 12:5
  12:6 18:2 19:18
  20:9 22:25 25:16
  33:21 34:12 47:4
  61:20 62:10 64:1
**short**  53:22
**shorthand**  2:20
**show**  14:18 30:24
  33:25 34:1 36:16
  38:23 46:25 48:25
  50:2,19 61:12,17
**showed**  63:16
**showing**  54:3
**shown**  62:23
**shows**  30:18 34:6
  49:14 50:18
**shut**  26:15,22
**side**  5:17
**sign**  31:4 37:10
**signature**  30:13,15
  30:25 31:7,9 32:8
  36:17 47:5 65:3
  70:12 72:9
**signed**  17:6 31:5,6
  32:6 37:11 47:10,14
  66:17,19 67:4,9,13
**significance**  31:14
  42:15 56:21
**significant**  45:17
**significantly**  57:5
**signs**  37:12
**silent**  40:24
**similar**  47:10
**sir**  8:1 25:2 30:10
  39:17 40:9 42:4,13
  49:6 53:5,19 69:24
  71:11
**sit**  67:22
**sitting**  65:17
**situation**  71:1
**six**  17:8 19:9 23:2
  52:18 57:4
**smoke**  41:6

**somebody**  20:21
  22:13 46:10 49:23
  52:18 53:13
**someone's**  64:25
**son**  56:5
**soon**  53:7
**sorry**  12:11 46:18
  58:24 62:2
**space**  16:23
**speak**  54:19 56:4
**special**  22:12
**specific**  26:20
**spoken**  11:8 49:23
**sprinkler**  41:7 43:19
**sprinklers**  41:4
**square**  64:20
**ss**  73:1
**staff**  37:14
**stamped**  70:25
**standard**  32:23
  58:23,25
**standpoint**  15:19
  26:9
**state**  12:18,23 13:12
  13:19 14:1,17 15:2
  15:5,12,14,19,22
  16:14,17 17:9 18:12
  24:15,19 25:7 26:16
  26:17,21 28:20,25
  29:1 57:1 72:2 73:1
**statement**  5:13 34:2
**states**  29:7 34:10
  52:20
**stating**  7:21
**station**  40:21 41:9
  41:10,18 43:20 44:5
  44:8,13,18,23,24
  64:9 67:19 68:8
**status**  34:3,4
**stenographically**
  73:12
**stephen**  3:14
**steps**  52:21 53:1,8
  58:2

Veritext National Deposition & Litigation Services
866 299-5127

**[steve - usually]**

**steve**  6:2 34:21 39:1
  44:12 46:11 53:20
  61:25 69:22
**steve.rowe**  3:19
**steven**  3:5 4:17
**story**  19:4
**strike**  13:12
**structure**  17:3 27:12
**structures**  29:25
**subject**  40:5 54:12
**submitted**  13:23,24
  53:12 57:11 65:19
  66:11
**subscribed**  73:18
**subsequent**  53:11
**subtenant**  26:24
**sufficient**  43:18 71:7
**suite**  3:7,16 7:24
**summer**  19:7,20
**supervision**  73:13
**supervisory**  43:20
  44:5,8
**supplement**  47:3
  63:17,18 65:18 68:5
**supplied**  48:21
**sure**  35:24 37:15
  40:10 60:15 61:9
  68:11
**surplus**  58:22 59:1,2
  59:12,21,24 60:2
**surrounding**  27:18
**sworn**  34:2
**synagogue**  11:20
**system**  32:7 40:2
  41:15 43:19 45:9,12
  46:2 48:5,7
**systems**  41:4 45:14

**t**

**t**  36:9
**take**  23:12 30:3
  39:17 52:21 53:1
  54:9 57:13,25 60:7
  60:16,16,19 62:2,4

**taken**  2:16 6:17 18:8
  53:6 55:4 58:2
  70:20 73:7
**talk**  12:4 18:17
**talking**  16:20 39:20
  62:12
**taxes**  64:24
**telecommunications**
  26:2
**telephone**  45:9
**teletech**  16:22
**tell**  6:15 13:11 15:10
  18:22 19:2,6 20:2
  22:2 27:24 29:23
  33:10 36:5 40:1
  45:25 52:5 55:23
  68:14
**telling**  21:13 23:8
  56:16
**tells**  20:1
**ten**  10:23
**tenant**  16:10,13,15
  16:15,22 20:6,10
  23:11,15,16,17,25
  24:1 26:1,2,23
**tenant's**  23:20 24:15
  25:15
**tendency**  9:16
**term**  8:3 13:13
  22:11,12 37:3 42:4
  42:12 44:19
**terminate**  16:24
**terms**  6:17
**testified**  5:7
**testimony**  73:10
**thank**  6:16 10:3
  24:2 34:21 58:16
  62:5 69:24 70:4,5
  71:10
**theft**  53:4 54:17
**thefts**  28:15 53:2,9
  54:11
**thereof**  73:17
**thereon**  43:20 44:6

**thing**  9:19 66:1
**things**  51:12
**think**  8:12 10:10
  11:9 12:24 15:25
  16:8 20:4 24:21
  25:18 27:11 33:20
  37:12 38:10 44:16
  46:7 52:5,13,16
  58:10,15 66:15 70:1
  70:11
**third**  3:15 15:8 63:6
**thirds**  40:14
**thought**  69:4
**three**  15:3
**till**  42:8
**time**  15:22 23:22
  26:13,16 28:13 29:9
  36:21 38:15 40:7
  43:12 50:6 57:2
  58:17 62:4 66:3
  68:3 71:7,7,12 73:7
  73:8,11
**times**  42:22 56:15
**timing**  14:10
**tip**  12:25
**title**  36:21 37:5
**today**  6:8 61:6 62:13
  65:17 67:22
**told**  18:6,12 20:20
  20:22 22:7,24 27:21
  40:6 48:17 54:11,14
  56:18
**top**  47:2 62:8
**transcribed**  73:13
**transcript**  70:9
**transpired**  37:18
**travel**  31:8
**true**  31:19 47:18
  72:3 73:14
**trustee**  21:21 22:10
  22:12,17
**trustee's**  22:8
**truth**  6:16
**truthfully**  35:1

**truthfulness**  31:24
**try**  20:17 31:5,13
**trying**  9:7 15:10
  25:1 26:25
**tuesday**  24:23
**turn**  35:17
**two**  25:10 40:14
  43:18 63:10
**type**  32:2 40:16
  67:18
**typed**  41:5
**typically**  42:6 59:9

**u**

**u.s.**  59:16
**uh**  28:16 32:17
  40:12 63:13 64:13
**unable**  31:8
**unauthorized**  43:10
  43:15 44:22 45:1
**underneath**  40:22
**understand**  10:5
  21:7 31:22 44:16,17
  44:19 54:21
**understanding**
  12:14 14:25 26:19
  49:17
**understood**  6:2
  42:18
**undertook**  16:15
**underwrite**  31:25
  38:1,6
**underwriter**  31:22
**underwriting**  45:20
  68:25
**underwritten**  25:20
**united**  34:10
**unoccupied**  17:4,4
  19:16 20:14 23:1
  25:4,4 27:4,7,13,17
  27:25 28:4,12 29:25
  56:23
**use**  37:4 66:2,25
**usually**  17:20 21:9
  22:3,4 29:14 59:1

Veritext National Deposition & Litigation Services
866 299-5127

[usually - zolonz]

| 60:4 62:22 |
| --- |

**v**

**vacancy** 17:10,14,15
    17:20 18:11 19:9
    66:5
**vacant** 17:3,4,8,23
    18:3,7,13,24 19:2
    19:16 20:14,23,24
    21:2 25:3,4 27:4,7
    27:13,24 28:4,12
    29:2,4,24 35:6
    38:11,14 47:2 56:23
    57:3 59:5,7 60:3
    63:16,17 65:17 68:5
**valuation** 64:17
**vandalism** 17:21
    28:14 54:16
**varnardo** 49:12,12
    49:20,22
**veracity** 31:24
**violated** 44:9
**volume** 1:14 2:16

**w**

**waited** 52:12,18
**waive** 70:11,12
**walk** 62:7
**want** 9:1 18:21
    22:23 23:19,20,22
    25:10 30:7 38:23
    39:8,24 48:25 56:7
    57:12,14 60:14
    61:12,17 62:2 70:8
**wanted** 56:9 60:7,8
    68:11
**wants** 56:24 68:25
**warranties** 38:16
    42:11
**warrants** 42:17,22
**warranty** 38:20
    42:16 44:1,8
**watchmen** 40:19
**water** 17:22 28:17
    43:25 64:14

**way** 15:7 16:5 18:19
    20:18 23:15 27:19
    29:3 40:14 43:16
    51:7 55:4 65:22
    73:17
**we've** 65:6
**website** 10:3,6
**wednesday** 1:13
    2:19 5:1
**week** 24:23
**went** 13:4 21:1,3,10
    23:21
**whereof** 73:18
**wholesale** 8:16
    46:17,19,20,21 66:4
    69:21
**wilshire** 2:17 7:24
**window** 44:25
**witness** 4:2 5:6
    23:10 46:20 70:5,14
    71:8 72:9 73:9,10
    73:18
**wkf&c** 46:14,16,23
    46:23 47:2 63:16,17
    65:17,25 66:1,4,6
**word** 5:21
**words** 14:5 18:21
    50:9
**work** 8:23 36:2,2
    41:22 55:19,19
    69:14
**working** 8:9,13,17
    43:1
**works** 8:5,6,23,24
    47:22
**write** 9:16,19 11:2
    13:18 27:9 29:1,24
    30:4 54:13 59:10
    68:20
**writing** 27:10 56:25
    68:3
**written** 6:18 12:16
    12:20 27:12 57:20
    58:23,25 59:1

**wrote** 13:23 68:11

**y**

**yair** 8:18 10:22 34:3
    47:22 52:9 55:17
**ybm** 6:22
**yeah** 24:12 31:5
    39:3 43:6 50:24
    51:1
**year** 13:3 14:15 19:8
    19:8 35:10
**years** 9:11 10:23
    14:17 15:12 17:13
    25:24 28:11 33:10
    37:23
**yesterday** 5:13 6:7
    16:20 22:8 30:8
    38:23 39:4 47:1
**yossi** 53:21

**z**

**z** 53:21,21
**zolonz** 53:21

**COMMERCIAL PACKAGE BINDER**

Insurance Carrier: American Safety Indemnity Company (Non-Admitted) A9

**One Year Term**

Named Insured:      Fairfield Shopping Center LLC

Policy Number:      201CMP1000482-10          Policy Term:   9/15/2010 - 9/15/2011

Locations Covered:  as per the SOV on file
6501 EJ Oliver Blvd, Fairfield AL 35064
1 Building, Vacant Office, CSBA & 100% SPRINKLERED, MNC, $89.63/SQFT
Property Coverage & Limit(s):
Building            $7,753,000      RCV /                    100% Co-Insurance

TIV                 $7,753,000                      Rate 0.2950
Limits Scheduled per SOV on file
Deductible:         $25,000

Covered Causes of Loss:        ISO Special Excluding Flood; Earthquake & EQSL

General Liability: Coverage & Limit(s):

| | | |
|---|---|---|
| General Aggregate (other than Products/Completed Operations) | $ | 2,000,000 |
| Products/Completed Operation - Annual Aggregate | $ | 1,000,000 |
| Personal/Advertising Injury Limit | $ | 1,000,000 |
| Each Occurrence | $ | 1,000,000 |
| Fire Damage Legal | $ | 100,000   (Any One Fire) |
| Medical Payments | $ | 5,000   (Any One Person) |

Deductible:        NIL
Special Conditions/Exclusions:   CGL 12/04, Designated Premises Endt., Employment Related Practices,
Nuclear Energy Liability
Y2K Excl (IL09350702) (CG21600998), Lead, Mold, Asbestos

Vacancy Permit Included
One Mortgagee
PROTECTIVE SAFEGUARD PROMISSORY WARRANTIES AS PER FORM CFD00010607 ATTACHED APPLY

Minimum Retained Premium            25%

Exhibit
25
4/17/12
Yair Ben-Moshe
Cathryn L. Baker, CSR 7695

Exhibit
1
4/18/12
Joseph Schneerson
Cathryn L. Baker, CSR 7695

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## PROTECTIVE SAFEGUARD PROMISSORY WARRANTY

In consideration of the premium charged, it is understood and agreed by the insured that it is a condition precedent to the acceptance of this insurance and payment of any claim under the policy that the insured warrants that at all times during the currency of the policy, (1) the premises described herein is protected by the protective safeguard described in the SCHEDULE and, (2) the insured shall maintain in complete working order all equipment and services pertaining to the operation of the described protective safeguard.

### SCHEDULE - Applicable Item(s) Denoted By "X"

- ☒ An approved dry chemical extinguishing system protecting all cooking surfaces including deep fat fryers.

- ☐ Watchman During Non Working Hours.

- ☐ All accessible openings are boarded.

- ☒ Premises is Locked and Secured against unauthorized entry.

- ☒ No Occupancy (Including storage) without Underwriter Agreement.

- ☒ Sufficient Heat to preclude freezing.

- ☐ All water has been drained from the plumbing and any other water vessels.

- ☒ Automatic Sprinkler System including Central Station supervisory service therefore.

- ☒ Burglar Alarm including Central Station supervisory service therefore.

- ☐ Fire Alarm including Central Station supervisory service therefore.

- ☐

- ☐ _____

- ☐ _____

**BREACH OF ANY   WARRANTY(S) SHALL RENDER COVERAGE PROVIDED BY THIS POLICY NULL AND VOID.**

CPD00010607

# *ACORD* EVIDENCE OF PROPERTY INSURANCE

DATE: 09/22/2010

THIS IS EVIDENCE THAT INSURANCE AS IDENTIFIED BELOW HAS BEEN ISSUED, IS IN FORCE, AND CONVEYS ALL THE RIGHTS AND PRIVILEGES AFFORDED UNDER THE POLICY.

| PRODUCER | PHONE (A/C, No, Ext): (323) 934-8160 | COMPANY |
|---|---|---|
| Shomer Insurance Agency<br>7461 Beverly Blvd., Ste. 306<br><br>Los Angeles   CA 90036- | | American Safety Indemnity Company |

| CODE: | SUB CODE: |
|---|---|
| CUSTOMER ID #: 0C798B8 | |

| INSURED | LOAN NUMBER | POLICY NUMBER 201CMP100048210 |
|---|---|---|
| Fairfield Shopping Center, LLC<br>c/o YEM Properties | EFFECTIVE DATE 09/15/2010 | EXPIRATION DATE 09/15/2011 | CONTINUED UNTIL TERMINATED IF CHECKED |

THIS REPLACES PRIOR EVIDENCE DATED:

## PROPERTY INFORMATION

| LOCATION/DESCRIPTION | | |
|---|---|---|
| 6501 EJ Oliver Blvd | Fairfield | AL 35064- |

## COVERAGE INFORMATION

| COVERAGE/PERILS/FORMS | AMOUNT OF INSURANCE | DEDUCTIBLE |
|---|---|---|
| Building/Special Form/All Risk/Replacement Cost/No Coinsurance<br>Business Income not available for vacant building<br><br><br>Terrorism Coverage included | 7,753,000 | 25,000 |

## REMARKS (Including Special Conditions)

RE: Loan #6322688  6501 E J Oliver Blvd.
Except 10 days Notice of Cancellation for Non-Payment of Premium.*

## CANCELLATION

THE POLICY IS SUBJECT TO THE PREMIUMS, FORMS, AND RULES IN EFFECT FOR EACH POLICY PERIOD. SHOULD THE POLICY BE TERMINATED, THE COMPANY WILL GIVE THE ADDITIONAL INTEREST IDENTIFIED BELOW  30*  DAYS WRITTEN NOTICE, AND WILL SEND NOTIFICATION OF ANY CHANGES TO THE POLICY THAT WOULD AFFECT THAT INTEREST, IN ACCORDANCE WITH THE POLICY PROVISIONS OR AS REQUIRED BY LAW.

## ADDITIONAL INTEREST

| NAME AND ADDRESS | | |
|---|---|---|
| ( )   -       ( ) | X MORTGAGEE | X ADDITIONAL INSURED |
| | X LOSS PAYEE | |
| | LOAN # 6322688 | |
| GE Commercial Finance Business<br>Property Corp (see remarks)<br>1500 City West Blvd. #200<br>Houston     TX 77042- | AUTHORIZED REPRESENTATIVE | |

ACORD 27 (3/93)

© ACORD CORPORATION 1993

INS027 (0112) 05

ELECTRONIC LASER FORMS, INC. - (800)327-0545

# ACORD. CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 09/22/2010 |

| PRODUCER   (323) 934-8160 | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. | | |
|---|---|---|---|
| Shomer Insurance Agency | | | |
| 7461 Beverly Blvd., Ste. 306 | | | |
| | **INSURERS AFFORDING COVERAGE** | | NAIC # |
| Los Angeles       CA  90036- | | | |
| **INSURED** | INSURER A: American Safety Indemnity | | |
| Fairfield Shopping Center, LLC | INSURER B: | | |
| c/o YBM Properties | INSURER C: | | |
| 500 N. Larchmont | INSURER D: | | |
| Los Angeles       CA  90004- | INSURER E: | | |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADDL INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| A | X | **GENERAL LIABILITY** | 201CMP100048210 | 09/15/2010 | 09/15/2011 | EACH OCCURRENCE | $ 1,000,000 |
| | X | COMMERCIAL GENERAL LIABILITY | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | CLAIMS MADE   X  OCCUR | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | PRODUCTS - COMP/OP AGG | $ 1,000,000 |
| | X | X POLICY  PRO-JECT  LOC | | | | NO DED / SIR | |
| | | **AUTOMOBILE LIABILITY** | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | ANY AUTO | | | | | |
| | | ALL OWNED AUTOS | | | | BODILY INJURY (Per person) | $ |
| | | SCHEDULED AUTOS | | | | | |
| | | HIRED AUTOS | | | | BODILY INJURY (Per accident) | $ |
| | | NON-OWNED AUTOS | | | | | |
| | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | **GARAGE LIABILITY** | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | ANY AUTO | | | | OTHER THAN      EA ACC | $ |
| | | | | | | AUTO ONLY:        AGG | $ |
| | | **EXCESS/UMBRELLA LIABILITY** | | | | EACH OCCURRENCE | $ |
| | | OCCUR    CLAIMS MADE | | | | AGGREGATE | $ |
| | | | | | | | $ |
| | | DEDUCTIBLE | | | | | $ |
| | | RETENTION  $ | | | | | $ |
| | | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** | | | | WC STATU-TORY LIMITS      OTH-ER | |
| | | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? | | | | E.L. EACH ACCIDENT | $ |
| | | If yes, describe under SPECIAL PROVISIONS below | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | **OTHER** | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS
RE: Loan #6322688-001  Property Located at 6501 E. J. Oliver Blvd.
GE Commercial Finance Business Property Corporation, its successors and/or assigns are included as additional insured.
Except 10 days notice of cancellation for non-payment of premium.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| ( )  - | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL **30** DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. |
| GE Commercial Finance Business Property Corp. 1500 City West Blvd. #200 Houston          TX  77042- | AUTHORIZED REPRESENTATIVE |

ACORD 25 (2001/08)                                                                © ACORD CORPORATION 1988
INS025 (0108).05                    ELECTRONIC LASER FORMS, INC. - (800)327-0545                    Page 1 of 2

# IMPORTANT

If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

# DISCLAIMER

The Certificate of Insurance on the reverse side of this form does not constitute a contract between the issuing insurer(s), authorized representative or producer, and the certificate holder, nor does it affirmatively or negatively amend, extend or alter the coverage afforded by the policies listed thereon.



**SELECTION OR REJECTION STATEMENT**
**TERRORISM RISK INSURANCE ACT OF 2002**

To:  American Safety Insurance Services, Inc.
d/b/a in California as ASIG Insurance Services, Inc.

Applicant:              Fairfield Shopping Center LLC
Insurance Company:      American Safety Insurance Company

**Please select one.**

☐  I hereby elect to purchase terrorism coverage as afforded by the Terrorism Risk
Insurance Act of 2002 for the premium amount as quoted.

☐  I hereby reject the offer to amend the terrorism exclusion contained in this Quote.
I understand that the exclusion will be applicable at the inception date of my policy.

First Named Insured:  Fairfield Shopping Center LLC

Applicant:            Fairfield Shopping Center LLC

Signature:

Print Name:

Title:

Date:

Notes:

• Must be signed by owner or corporate officer.
• Please attach your completed Selection or Rejection Statement to your request to
bind coverage.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

PROTECTIVE SAFEGUARD PROMISSORY WARRANTY

In consideration of the premium charged, it is understood and agreed by the insured that it is a condition precedent to the acceptance of this insurance and payment of any claim under the policy that the insured warrants that at all times during the currency of the policy (1) the premises described herein is protected by the protective safeguard described in the SCHEDULE and (2) the insured shall maintain in complete working order all equipment and services pertaining to the operation of the described protective safeguard.

SCHEDULE - Applicable Item(s) Denoted By "X"

☐   An approved dry chemical extinguishing system protecting all cooking surfaces including deep fat fryers.

☐   Watchman During Non Working Hours.

☐   All accessible openings are boarded.

☒   Premises is Locked and Secured against unauthorized entry.

☒   No Occupancy (including storage) without Underwriter Agreement.

☒   Sufficient Heat to preclude freezing.

☐   All water has been drained from the plumbing and any other water vessels.

☒   Automatic Sprinkler System including Central Station supervisory service therefore.

☒   Burglar Alarm including Central Station supervisory service therefore.

☐   Fire Alarm including Central Station supervisory service therefore.

☐

☐   _____

☐   _____

BREACH OF ANY  WARRANTY(S) SHALL RENDER COVERAGE PROVIDED BY THIS POLICY NULL AND VOID.

CPD00010607

From:
**Shomer Insurance Agency**
7461 Beverly Blvd, Suite 306
Los Angeles, CA          90036
License No. 0C79888

Phone:   323-934-8160
Fax       323-934-8170

To:
Fairfield Shopping Center, LLC
c/o YBM Properties
500 North Larchmont Avenue
Los Angeles, CA 90004

Account #  FAIR152
Date:      11/09/2010

---

Premium Due

---

Policy Effective Date:    9/15/2010
Expiration Date:          9/15/2011

Insured:     Fairfield Shopping Center (YBM
Policy #:    201CMP100482-10
Company:     American Safety Indemnity Co

Total Premium:    29,119.26

Reason For Billing:    PACKAGE
                       6501 EJ OLIVER BLVD  FAIRFIELD, AL

Amount Due:          29,119.26
Premium Due By: 11/12/2010

PLEASE MAKE YOUR CHECK PAYABLE TO SHOMER INSURANCE.

THANK YOU FOR YOUR PATRONAGE.

This is an invoice not a binder or indication of coverage

# ACORD™ PROPERTY LOSS NOTICE

**DATE (MM/DD/YYYY):** 06/08/2011

| PRODUCER | PHONE (A/C, No, Ext): (323) 934-8160 107 |
|---|---|

Shomer Insurance Agency
7461 Beverly Blvd., Ste. 306

Los Angeles        CA 90036—

CODE: | SUB CODE:

AGENCY CUSTOMER ID

| MISCELLANEOUS INFO (Site & location code) | DATE OF LOSS AND TIME | AM | PREVIOUSLY REPORTED |
|---|---|---|---|
| | 02/17/2011        : | PM | YES X NO |

| POLICY TYPE | COMPANY AND POLICY NUMBER | NAIC CODE | POLICY DATES |
|---|---|---|---|
| PROP/HOME | CO: AMERICAN SAFETY IND | | EFF: 09/15/2010 |
| | POL: 201CMP1000482-10 | | EXP: 09/15/2011 |
| FLOOD | CO: | | EFF: / / |
| | POL: | | EXP: / / |
| WIND | CO: | | EFF: / / |
| | POL: | | EXP: / / |

## INSURED

| NAME AND ADDRESS OF INSURED | DATE OF BIRTH / / | CONTACT | CONTACT INSURED |
|---|---|---|---|

Fairfield Shopping Center, LLC
c/o YBM PROP'S;500 N LARCHMONT
Los Angeles        CA 90004—

SOC SEC # OR FEIN: — —

NAME AND ADDRESS OF INSURED
DARRELL VARNADO-GLASS PATNER AS RECEIVER FOR GE CAPITAL

| RESIDENCE PHONE (A/C, No) ( )  — | BUSINESS PHONE (A/C, No, Ext) (323) 954-8888 104 | | |
|---|---|---|---|

| NAME AND ADDRESS OF SPOUSE (IF APPLICABLE) | DATE OF BIRTH / / | RESIDENCE PHONE (A/C, No) ( )  — | BUSINESS PHONE (A/C, No, Ext) (251) 767-9976 |
|---|---|---|---|
| | SOC SEC # OR FEIN: / / | WHERE TO CONTACT BIZ # | WHEN TO CONTACT |

## LOSS

| LOCATION OF LOSS | 6501 E J OLIVER BLVD. FAIRFIELD AL 35064 | POLICE OR FIRE DEPT TO WHICH REPORTED FAIRFIELD PD |
|---|---|---|

| KIND OF LOSS | FIRE | LIGHTNING | FLOOD | OTHER (explain) X VANDALISM | PROBABLE AMOUNT ENTIRE LOSS . |
|---|---|---|---|---|---|
| | THEFT | HAIL | WIND | | |

**DESCRIPTION OF LOSS & DAMAGE (Use separate sheet, if necessary)**

Property was severely vandalized and suffered water damage; vandals took copper pipes, wiring, AC anything of value. Mr Varnado has police report and necessary paperwork re claim

## POLICY INFORMATION

MORTGAGEE  GE COMMERCIAL FINANCE 1500 CITY WEST BL HOUSTON TX 77024 LOAN #6322688

NO MORTGAGEE

HOMEOWNER POLICIES SECTION 1 ONLY (Complete for coverages A, B, C, D & additional coverages. For Homeowners Section II Liability Losses, use ACORD 3.)

| A. DWELLING | B. OTHER STRUCTURES | C. PERSONAL PROPERTY | D. LOSS OF USE | DEDUCTIBLES | DESCRIBE ADDITIONAL COVERAGES PROVIDED |
|---|---|---|---|---|---|
| | | | | | ON |

COVERAGE A. EXCLUDES WIND
SUBJECT TO FORMS (Insert form numbers and edition dates, special deductibles)

FIRE, ALLIED LINES & MULTI-PERIL POLICIES (Complete only those items involved in loss)

| ITEM | SUBJECT OF INSURANCE | AMOUNT | % COINS | DEDUCTIBLE | COVERAGE AND/OR DESCRIPTION OF PROPERTY INSURED |
|---|---|---|---|---|---|
| 1 | X BLDG   CNTS | 7,753,000 | 100 | 25,000 | VACANT BUILDING (VACANCY PERMIT ATTACHED) |
| | BLDG   CNTS | | | | |
| | BLDG   CNTS | | | | |

SUBJECT TO FORMS (Insert form numbers and edition dates, special deductibles)

**Exhibit 2**
4/18/12

Joseph Schneerson
Cathryn L. Baker, CSR 7695

| FLOOD POLICY | BUILDING: | DEDUCTIBLE: | ZONE | PRE FIRM | DIFF IN ELEV | FORM TYPE | GENERAL DWELLING | CONDO |
|---|---|---|---|---|---|---|---|---|
| | CONTENTS: | DEDUCTIBLE: | | POST FIRM | | | | |

| WIND POLICY | BUILDING | DEDUCTIBLE | CONTENTS | DEDUCTIBLE | ZONE | FORM TYPE | GENERAL DWELLING | CONDO |
|---|---|---|---|---|---|---|---|---|

REMARKS/OTHER INSURANCE (List companies, policy numbers, coverages & policy amounts)/NY ONLY: PREVIOUS ADDRESS OF INSURED & WIFE'S MAIDEN NAME
CP0010(04/02);CPD0001(06/07);CP0450(07/88);CF150(11/850:CP0090(07/88);CP1030(04/02)

| CAT # | FICO # | ADJUSTER ASSIGNED | ADJUSTER # | DATE ASSIGNED / / |
|---|---|---|---|---|

| REPORTED BY | REPORTED TO | SIGNATURE OF INSURED | SIGNATURE OF PRODUCER |
|---|---|---|---|
| DARRELL VARNADO | SHOMER INS | | |

ACORD 1 (2002/01)        NOTE: IMPORTANT STATE INFORMATION ON PAGE 2        © ACORD CORPORATION 1988

### Applicable in Arizona

For your protection, Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

### Applicable in Arkansas, District of Columbia, Kentucky, Louisiana, Maine, Michigan, New Jersey, New Mexico, New York, Pennsylvania, Tennessee and Virginia

Any person who knowingly and with intent to defraud any insurance company or another person, files a statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact, material thereto, commits a fraudulent insurance act, which is a crime, subject to criminal prosecution and [NY: substantial] civil penalties. In DC, LA, ME, TN and VA, insurance benefits may also be denied.

### Applicable in California

Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

### Applicable in Colorado

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policy holder or claimant for the purpose of defrauding or attempting to defraud the policy holder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

### Applicable in Florida and Idaho

Any person who Knowingly and with the intent to injure, Defraud, or Deceive any Insurance Company Files a Statement of Claim Containing any False, Incomplete or Misleading Information is Guilty of a Felony.*
* In Florida - Third Degree Felony

### Applicable in Hawaii

For your protection, Hawaii law requires you to be informed that presenting a fraudulent claim for payment of a loss or benefit is a crime punishable by fines or imprisonment, or both.

### Applicable in Indiana

A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

### Applicable in Minnesota

A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

### Applicable in Nevada

Pursuant to NRS 686A.291, any person who knowingly and willfully files a statement of claim that contains any false, incomplete or misleading information concerning a material fact is guilty of a felony.

### Applicable in New Hampshire

Any person who, with purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

### Applicable in Ohio

Any person who, with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

### Applicable in Oklahoma

WARNING: Any person who knowingly and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

From: Dora Sher [dora@shomerinsurance.com]
Sent: Wednesday, November 16, 2011 1:24 PM
To: Steven Riss; Aaron Zolonz
Cc: Yossi; Debbie Delia; David Lightbourn
Subject: URGENT - Claim # ASI0278P - Fairfield Shopping Center DOL 2/17/11

Gentlemen:

There is a mix-up with the Date of Loss.  The first report that we filed on 6/8/11 (copy attached) with a DOL of 2/17/11 was erroneous.  At that time we were given the copy of a police report 2/17/11 (copy attached) and  therefore submitted the claim with that date as DOL.  If you read the 2nd page of the report you will see that it is a FOLLOW  UP report to the ones dated 11/20/10 and 11/22/10 THEREFORE the Date of loss is 11/20/2010!

Please reopen your file and use DOL of 11/20/2010 to investigate and handle.


Please call me if you have any questions.

Best regards

Dora R. Sher, CIC, CPIW
General Manager
SHOMER INSURANCE AGENCY, INC
4221 Wilshire Blvd, Suite 222
Los Angeles, CA 90010
(323) 934-8160
Fax: (323) 934-8170
dora@shomerinsurance.com<mailto:dora@shomerinsurance.com>
0C79888
IMPORTANT ANNOUNCEMENT:

WE HAVE MOVED!!! OUR NEW ADDRESS IS:
4221 Wilshire Boulevard, Suite 222
Los Angeles, California  90010

Our phone and fax numbers will not change.
Thank you in advance for your patience and understanding during the transition.

**Exhibit**
**3**
**4/18/12**
**Joseph Schneerson**
Cathryn L. Baker, CSR 7695

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

| ADDITIONAL INCIDENT/OFFENSE NARRATIVE CONTINUED | 79 Date and Time of Report | | 80 Case # | 01 SFX |
|---|---|---|---|---|
| | 11 22 10 | 1240 ☐ AM ☑ PM ☐ TAIL | 10 11 14 44 2 | |

82 Type Report: ☐ 1. Continuation   ☑ 2. Follow-up

On this date I went to Weil Wrecker lot. I photographed a white Chevrolet Suburban, AZ 28064 AL. This vehicle had been impounded and towed to Weil on Saturday 11-20-10 by officer T Martin. The vehicle contained three aluminum Air conditioner cooling units, with copper coils and pipes. It also held a cordless drill w/ battery, a flashlight, a pair of gloves, + nut driver.

These items were brought back to Police Head quarters and logged in under item #14392

☐ Continued on Additional Supplement

DISCRETION OF THE CHIEF LAW ENFORCEMENT OFFICER

**Incident/Offense Report - Continued**

| 83 Date of Report (MM/DD/YY) | 84 Time of Report | ☐ AM ☐ PM ☒ MIL | 85 Agency Case Number | 86 Suffix | 87 | ☐ Offender ☒ Suspect ☐ Missing Person | ☐ Check if Multiple |
|---|---|---|---|---|---|---|---|
| 1/20/2011 | 0645 | | 10114442 | | | | |

| 88 Reported By (Last, First, Middle Name) | ☐ Victim Or | 89 Suffix | 90 ☒ Resident ☐ Non-Resident | 91 Home Phone | 92 Work Phone 205-... |
|---|---|---|---|---|---|
| T. MARTIN | | | | | 93 Other Phone |

## VICTIM INFORMATION

| 94 Victim # | 95 Victim (Last, First, Middle Name) | 96 Suffix | 97 Address (Street, City, State, Zip) | 98 Home Phone | 99 Work Phone 205-786-4111 |
|---|---|---|---|---|---|
| | FAIRFIELD BINGO | | 6501 E.J. OLIVER BLVD FAIRFIELD AL 35064 | | 100 Other Phone |

| 101 Employer/School | 102 Occupation | 103 Address (Street, City, State, Zip) | 104 Work Phone |
|---|---|---|---|
| | | | 105 Other Phone |

| 106 Sex ☐ M ☐ F | 107 Race ☐ W ☐ A ☐ B ☐ I | ☐ English ☐ Spanish ☐ Other | 108 Language | 109 HGT | 110 WGT | 111 Date of Birth | 112 Age | | |
|---|---|---|---|---|---|---|---|---|---|

| ☐ Multiple Victims | 115 ☐ Victim ☐ L Officer | 116 ☐ Other | 117 Injury ☐ Yes ☐ No | 118 Offender known to Victim? ☐ Yes ☐ No | 119 Victim was? (Explain Relationship.) | |
|---|---|---|---|---|---|---|
| | | Hispanic | | | | |

| 121 Weapons Used ☐ Firearm ☐ Other Dangerous | ☐ Hands, Fist, Feet, Voice, etc. | 122 Description of Weapons/Firearms/Tools Used in Offense | ☐ Handgun ☐ Rifle ☐ Shotgun ☒ Unknown |
|---|---|---|---|

| 123 Place of Occurrence (Enter exact street address here.) | 124 Type Injury ☒ N None ☐ B Broken Bones | ☐ I Internal Injury ☐ L Severe Laceration | ☐ M Minor Injury ☐ O Other Major Injury | ☐ T Loss of Teeth ☐ U Unconscious | 125 Sector |
|---|---|---|---|---|---|
| 6501 E.J. OLIVER BLVD | | | | | V1 |

| | 128 Assault ☐ Simple ☐ Aggravated | 129 Treatment for Assault? ☐ Yes ☒ No | 130 Verify for Rape Exam? ☐ Yes ☒ No | 131 Treatment for Rape? ☐ Yes ☒ No |
|---|---|---|---|---|

## SUSPECT INFORMATION

**1**

| 132 Off # | 133 Name (Last, First, Middle) | 134 SFX | 135 Alias | 136 Social Security # 417716152 | 137 Race ☒ W ☐ A ☐ B ☐ I | 138 Sex ☒ M ☐ F | 139 Date of Birth 03/28/83 | 140 Age 27 |
|---|---|---|---|---|---|---|---|---|
| 1 | JOHNSON, ANGELO | | | | | | | |

| 141 Address (Street, City, State, Zip) | 142 HGT | 143 WGT | 144 Ethnicity ☐ Hispanic | 145 Language ☐ English ☐ Spanish ☐ Other |
|---|---|---|---|---|
| 6718 TERRACE AVE. FAIRFIELD AL 35064 | 601 | 195 | | |

| 146 Probable Destination | 147 Eye | 148 Hair | 149 Complexion | 150 Armed | Weapon |
|---|---|---|---|---|---|
| | BRO | BRN | MED | | |

| 151 Clothing | 152 ☐ Scars ☐ Marks ☐ Tattoos ☐ Amputations | 153 ☒ Arrested ☐ Wanted ☐ Dual Arrest (Domestic Violence) |
|---|---|---|

**2**

| 154 Off # | 155 Name (Last, First, Middle) | 156 SFX | 157 Alias | 158 Social Security # 419134504 | 159 Race ☐ W ☐ A ☒ B ☐ I | 160 Sex ☐ M ☒ F | 161 Date of Birth 01/04/82 | 162 Age 28 |
|---|---|---|---|---|---|---|---|---|
| 2 | ANDERSON, SHUNTA M. | | | | | | | |

| 163 Address (Street, City, State, Zip) | 164 HGT | 165 WGT | 166 Ethnicity ☐ Hispanic | 167 Language ☐ English ☐ Spanish ☐ Other |
|---|---|---|---|---|
| 6718 TERRACE CT. FAIRFIELD, AL 35064 | 57 | 302 | | |

| 168 Probable Destination | 169 Eye | 170 Hair | 171 Complexion | 172 Armed ☐ Yes ☐ No | Weapon |
|---|---|---|---|---|---|
| | BRN | BLK | DK. | | |

| 173 Clothing | 174 ☐ Scars ☐ Marks ☐ Tattoos ☐ Amputations | 175 ☒ Arrested ☐ Wanted ☐ Dual Arrest (Domestic Violence) |
|---|---|---|

## WITNESSES

| Name (Last, First, Middle) | Sex | Race | Date of Birth | Address | Contact Telephone Numbers |
|---|---|---|---|---|---|
| 176 | 177 ☐ M ☐ F | 178 ☐ W ☐ B ☐ A | 179 Date of Birth | 180 Address | 181 Home / 182 Work / 183 Other |
| 184 | 185 ☐ M ☐ F | 186 ☐ W ☐ B ☐ A | 187 | 188 | 189 Home / 190 Work / 191 Other |
| 192 | 193 ☐ M ☐ F | 194 ☐ W ☐ B ☐ A | 195 | 196 | 197 Home / 198 Work / 199 Other |
| 200 Witness # 1 SSN | | | 201 Witness # 2 SSN | | 202 Witness # 3 SSN |

## NARRATIVE

203

ON THE ABOVE DATE, WHILE ON A BEAT PATROL, I OFFICER MARTIN, DROVE TO THE BACK OF 6501 E.J. OLIVER BLVD (FAIRFIELD BINGO) AND OBSERVED THE LISTED VEHICLE BACKED UP TO THE BACK WALL NEAR AN OPEN GATE. I OBSERVED A BLACK MALE AT THE BACK OF THE VEHICLE WITH THE BACK DOOR OPEN, TRYING TO PUSH SOMETHING INSIDE. I ALSO NOTICED A BLACK FEMALE SITTING IN THE FRONT PASSENGER SIDE OF THE VEHICLE. I GOT OUT OF MY VEHICLE AND APPROACHED THE LISTED VEHICLE

Continued on Supplement

| 204 Continued on Supplement ☐ Yes ☐ No | 205 Assisting Agency ORI | 206 Assisting Agency Case Number | 207 SFX | 208 Warrant Signed ☐ Yes ☐ No | Warrant # | 209 Add. Cases Closed Narrative ☐ Y ☐ N |
|---|---|---|---|---|---|---|

I hereby affirm that I have read this report and that all the information given by me is correct to the best of my knowledge. I will assume full responsibility for notifying the agency if any stolen property or missing person herein reported is returned.

| 210 | | Signature |
|---|---|---|

AO.00 - 11-06

C

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

**ADDITIONAL INCIDENT/OFFENSE**
**NARRATIVE CONTINUED**

NARRATIVE

AND ANNOUNCED MY PRESENT. THE LISTED SUSPECT WHO
WAS LATER IDENTIFIED AS ANGELO JOHNSON WHO WAS
AT THE BACK OF THE LISTED VEHICLE SEEMED SURPRISED
TO SEE ME APPROACH HIM. I ASKED THE SUSPECT WHAT
HE WAS DOING, AND HE REPLIED THAT HE WAS RIDING
AROUND AND SAW THE LISTED ITEMS LYING ON THE
GROUND. I OBSERVED THE LISTED ITEMS IN THE BACK
OF THE VEHICLE THROUGH THE ALREADY OPEN DOOR.
ALSO I OBSERVED SEVERAL SCRAPS OF METAL AND
COPPER TUBING ON THE GROUND NEAR THE LISTED VEHICLE
ALSO A PAIR OF WORK GLOVES WERE ON TOP OF THE
VEHICLE NEAR THE BACK WHERE MR JOHNSON WAS
STANDING. DUE TO THE RASH OF COPPER THEFT
THAT HAS OCCURRED IN THE PAST. I CONTACTED MY
SUPERVISOR AND THE ON CALL DETECTIVE OF THE
SITUATION. PER DETECTIVE FELBY THE TWO LISTED
OFFENDERS WERE ARRESTED FOR THE LISTED CHARGES
AND THE VEHICLE WITH THE LISTED ITEMS
CONTAINED WERE TOWED TO WELL WRECKER SERVICE
WITH INSTRUCTION TO BE PLACED IN A SECURE
LOCATION UNTIL A DETECTIVE FROM THIS DEPARTMENT
CAN DO ANY FOLLOW UP OF THE VEHICLE WITH THE
LISTED ITEMS. ALSO DOING AN OFFICIAL INVENTORY
OF THE VEHICLE THIS OFFICER FOUND A BATTERY
POWERED DRILL UNDER THE PASSENGER SIDE SEAT THAT
THAT SHAUNTA ANDERSON WAS SITTING IN. ALSO A
BATTERY PACK WAS FOUND IN THE GLOVE COMPARTMENT

NARRATIVE

NARRATIVE

NARRATIVE

OFFICERS WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

# ADDITIONAL INCIDENT/OFFENSE NARRATIVE CONTINUED

| 78 Date and Time of Report | | 80 Case # | | 81 SEX |
|---|---|---|---|---|
| 01 24 11 | 1030 | 11 04 11 44 2 | | |
| 82 Type Report: ☐ 1. Continuation | ☒ 2. Follow-up | | | |

**NARRATIVE**

On February 15, 2011, I made contact with Pac Zachary of the GlasRainer Advisory & Capitol Group LLC, which owns the property at 6501 E. J. Oliver Blvd. The property has been damaged severely, with the large air conditioning units being stripped of the copper and aluminum coils. On November 20, 2010, two arrests were made at the location when patrol units caught a man and woman trying to load coils and copper into a van. The subjects were released because police could not locate an owner of the building. Prior to this incident, police were called to the location about a couple days earlier concerning air conditioners being damaged and the copper and coils being stolen. Sgt. Thompson and I, Detective Erby, went to the location and went onto the roof of the building. There was damage to some of the units, but there were others that had not been damaged. When the defendants were arrested they were trying to load coils and copper from three of the previously undamaged units. The defendants had a drill and battery packs, flashlight, pair of gloves, nut driver and a pocket knife. All of these items are needed to strip the air conditioners of the coils and copper. Also on November 21, 2010, up to around sun down, I personally drove by the building to check to see if any of the other units had been damaged and I did not see any additional damage from the first time I was on the roof.

☐ Continued on Additional Supplement

TYPE OR PRINT IN BLACK INK ONLY

AC/1C-06-96

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

| 1 ORI# | 2 Agency Name | 3 Date and Time of Report | 4 Case # | 5 SF |
|---|---|---|---|---|
| A L 0 0 1 0 4 0 0 | Fairfield P. D. | 0 2 1 7 1 1   1030 | ☒ AM ☐ PM ☐ MIL   1 0 1 1 4 4 4 2 | |

| 6 Victim's Name (Original Report) | 7 Original Offense Date | 8 Type Report |
|---|---|---|
| Fairfield Bingo | 1 1 2 0 1 1 | ☐ Continuation ☒ Follow-Up |

**EVENT**

9 Original Incident/Offense
Theft of Property First Degree/ Criminal Mischief First Degree

| 10 UCR Code | 11 State Code/Local Ordinance |
|---|---|
| | 13a-8-3/ 13a-7-21 |

12 New Incident/Offense
Victim identified

| 13 UCR Code | 14 State Code/Local Ordinance |
|---|---|

| 15 Has an Arrest Been Made? | 16 Date of Arrest | 17 Has a Warrant Been Obtained? | 18 Date of Warrant | 19 Prior Premise Weapon |
|---|---|---|---|---|
| ☐ Yes ☒ No | | ☐ Yes ☒ No   Warrant # | | |

| 20 ☒ Defendant ☐ Suspect | 21 ☐ Defendant ☐ Suspect |
|---|---|
| Name: Angelo Johnson | Name: Shunta Anderson |

| Race: ☒ W ☐ A ☐ | Ethnicity: ☒ Hispanic ☐ Other | Sex: ☒ M ☐ F | DOB: 0 3 2 8 8 3 | Age: 27 | Race: ☒ W ☐ A ☐ | Ethnicity: ☒ Hispanic ☐ Other | Sex: ☒ M ☐ F | DOB: 0 1 0 4 8 2 | Age: 29 |
|---|---|---|---|---|---|---|---|---|---|

**DOLLAR VALUE**

| 22 Local Use | 24 Aircraft | | 25 Alcohol | | 26 Autos | | 27 Bicycles | | 28 Buses | |
|---|---|---|---|---|---|---|---|---|---|---|
| 23 State Use | | S R D C B F | | S R D C B F | | S R D C B F | | S R D C B F | | S R D C B F |

| 29 Clothes/Furs | | 30 Computer Hardware/Software | | 31 Consumables | | 32 Credit/Debit Cards | | 33 Drugs/Narcotics | | 34 Drugs/Narcotics Equipment | |
|---|---|---|---|---|---|---|---|---|---|---|
| | S R D C B F | | S R D C B F | | S R D C B F | | S R D C B F | | S R D C B F | |

| 35 Farm Equipment | | 36 Firearms | | 37 Gambling Equipment | | 38 Heavy Construction/Industrial Eqt | | 39 Household Goods | | 40 Jewelry/Precious Metals | |
|---|---|---|---|---|---|---|---|---|---|---|
| | S R D C B F | | S R D C B F | | S R D C B F | | S R D C B F | | S R D C B F | |

| 41 Livestock | | 42 Merchandise | | 43 Money | | 44 Negotiable Instruments | | 45 Non-negotiable Instruments | | 46 Office Equipment | |
|---|---|---|---|---|---|---|---|---|---|---|
| | S R D C B F | | S R D C B F | | S R D C B F | | S R D C B F | | S R D C B F | |

| 47 Other Motor Vehicle | | 48 Purses/Handbags/Wallets | | 49 Radios/TV/VCR | | 50 Recordings - Audio/Visual | | 51 Recreational Vehicles | | 52 Structure - Single Occupancy Dwell | |
|---|---|---|---|---|---|---|---|---|---|---|
| | S R D C B F | | S R D C B F | | S R D C B F | | S R D C B F | | S R D C B F | |

| 53 Structure - Other Dwelling | | 54 Structure - Other Commercial | | 55 Structure - Industrial/Manufacturing | | 56 Structure - Public/Community | | 57 Structure - Storage | | 58 Structure - Other | |
|---|---|---|---|---|---|---|---|---|---|---|
| | S R D C B F | | S R D C B F | 2000.00 / 30,000.00 S R D C B F | | S R D C B F | | S R D C B F | | S R D C B F |

| 59 Tools | | 60 Trucks | | 61 Vehicle Parts/Accessories | | 62 Watercraft | | 63 Other | |
|---|---|---|---|---|---|---|---|---|---|
| | S R D C B F | | S R D C B F | | S R D C B F | | S R D C B F | | S R D C B F |

| Motor Vehicle Recovery Only Required for 24xx UCR Code | 64 Motor Veh. Stolen in Your Jurisdiction? ☐ Y ☒ N   Where? | 65 Recovered in Your Jurisdiction? ☐ Y ☒ N   Where? |
|---|---|---|

| MULTIPLE CASES CLOSED | 66 Case # | 67 SFX | 68 Case # | 69 SFX | 70 Case # | 71 SFX | 72 ADDITIONAL CASES CLOSE NARRATIVE ☐ Y ☐ N |
|---|---|---|---|---|---|---|---|

**ADMINISTRATIVE**

| 73 Case Status | 74 Case Disposition: | Exceptional Clearance (Circle One) | 75 Reporting Officer |
|---|---|---|---|
| ☒ Pending ☐ Inactive ☐ Closed | 1 Cleared by Arrest (Juvenile) 2 Cleared by Arrest (Adult) 3 Unfounded 4 Exceptional Clearance 5 Administratively Cleared | A Suspect/Offender Dead B Prosecution Declined/Other Prosecution C Extradition Denied D Victim Refused to Cooperate E Juvenile (No Custody) F Death of Victim | Detective M. P. Erby |
| Entered ACIC/NCIC ☐ Y ☐ N | | | 76 Assisting Officer |
| | | | 77 Supervisor Approval | ID# | 78 Watch Cmdr |

TYPE OR PRINT IN BLACK INK ONLY

A

# ALABAMA UNIFORM INCIDENT/OFFENSE REPORT

| 1 ORI # | 2 Date of Report | 3 Time of Report | 4 ☐ Incident ☐ Offense ☐ Supplement | 5 Supplement Date | 6 Agency Case Number | 7 Suffix |
|---|---|---|---|---|---|---|
| AL 09 04 00 | 1 20 10 | 0645 ☐AM ☐PM ☑MIL | | | 13 11 4 46 2 | |

| 8 Agency Name | 9 Sector |
|---|---|
| FAIRFIELD P.D | 01 |

**10 Type of Incident or Offense** ☑Felony ☐Misdemeanor ☐Attempted ☑Completed — THEFT OF PROPERTY
**11 Degree (Circle)** (1) 2 3   **12 UCR Code**   **13 State Code/Local Ordinance** 13A-8-3

**14 Type of Incident or Offense** ☑Felony ☐Misdemeanor ☐Attempted ☐Completed — CRIMINAL MISCHIEF
**15 Degree (Circle)** (1) 2 3   **16 UCR Code**   **17 State Code/Local Ordinance** 13A-7-21

**18 Place of Occurrence** ☐ Check here if event occurred at victim's residence
4500 BLK OF E.J. OLIVER BLVD

If offense occurred at victim's residence, then only the approximate location should be listed in this section. (For example, a block number should be entered.) If the offense occurred elsewhere, then the specific address should be listed here.

**Victim Demographics (Where victim is an individual)**
19 Sex ☐M ☐F   20 Race   21 Ethnicity ☐Hispanic ☐Non-Hispanic ☐Other   22 Multiple Victims ☐   23 Age

24 Offender Suspected of Using ☐Alcohol ☐Computer Equipment ☐Drugs ☐N/A   25 ☐Juvenile Gang ☐Adult Gang ☐None/Unknown   26 Hate Bias ☐No ☑Yes   27 Bias Code

**28 Point of Entry** ☐Door ☐Window ☐Roof ☐Other
**29 Method of Entry** ☐Forcible ☐No Force ☐Attempted Forcible
**31 Local Use**
**32 Lighting** ☑Natural ☐Moon ☐Artificial Exterior ☐Artificial Interior ☐Unknown
**33 Weather** 1 Clear 2☑Cloudy 3 Rain 4 Fog 5 Snow 6 Hail 7 Unknown
**34 Location Type (Circle)** 01 Terminal 02 Bank 03 Bar 04 Church 05 Commercial 06 Construction 07 Conv Store 08 Dept Store 09 Drug Store 10 Field/Woods 11 Govt/Public Building 12 Supermarket 13 Liquor Store 14 Hotel/Motel 15 Jail/Prison 16 Lake/Waterway 17 Liquor Store 18 Parking Lot/Garage 19 Storage Facility 20 Residence/Home 21 Restaurant 22 School/College 23 Service/Gas Station 24 Specialty Store 25☑Other/Unknown

**35 Occurred from MM/DD/YY** 11 20 2010   **36 Time of Event** 0645 ☐AM ☐PM ☑MIL   **37 Day of Week** S M T W T F S (circled T)
**38 Occurred to MM/DD/YY**   **39 Time of Event** ☐AM ☐PM ☐MIL   **40 Day of Week** S M T W T F S
**41 # Premises Entered (Burglary)**

**42 Type Criminal Activity** ☐B Buying/Receiving ☐C Cultivating/Manu ☐D Distributing/Selling ☐E Exploiting Children ☐O Operating/Promoting ☐P Possessing/Concealing ☐T Transporting/Importing ☐U Using/Consuming

**43 Victim Type** ☑I Individual ☐B Business ☐F Financial (Bank) ☐G Government ☐R Religious Org ☐S Society

| 44 Loss Code | 45 Property Code | 46 Qty | 47 Property Description (Include Make, Model, Size Type, Serial #, Color, Drug Type, Drug Qty, Etc.) | 48 Dollar Value Stolen | Damaged | 49 Recovered Date | Value |
|---|---|---|---|---|---|---|---|
| S | 35 | UNK | COPPER TUBBING | $3000 | | 11 20 10 | $3000 |
| S | 35 | 3 | AIR COOLING COILS | $3000 | | 11 20 10 | $3000 |
| D | 35 | 10 | AIR CONDITIONING | | $10000 | | |

☐ Continued on Property

**Loss Code** (Enter letter in loss code column)
S Stolen   B Burned
R Recovered   F Forged/Counterfeited
D Damaged/Destroyed   N None
C Confiscated/Seized

**Property Code** (Enter # in property type column)
01 Aircraft   02 Alcohol   03 Autos   04 Bicycles   05 Buses   06 Clothes
07 Computer   08 Consumables   09 Credit Card   10 Drugs   11 Drug Equip   12 Farm Equip   13 Firearms   14 Gambling Equipment   15 Heavy Construction
16 Household Goods   17 Jewelry   18 Livestock   19 Merchandise   20 Money   21 Negotiable Instrument   22 Non-negotiable Instru   23 Office Equipment   24 Other Motor Vehicle
25 Purse/Wallet   26 Radios/TV/VCR   27 Recordings   28 RVs   29 Structure - Single-Occupancy Dwelling   30 Structure - Other Dwelling   31 Structure - Other Commercial   32 Structure - Industrial/Manufacturing   33 Structure - Public/Community
34 Structure - Storage   35 Structure - Other   36 Tools - Power/Hand   37 Trucks   38 Vehicle Parts/Accessories   39 Watercraft   77 Other

| 50 Stolen Vehicle Only ☐ | Area Stolen ☐Business ☐Rural | ☐Residence | 51 Ownership verified by: ☐Tag Receipt ☐Bill of Sale | ☐Title ☐Other | 52 Veh. Categories: ☐Stolen ☑Suspect's Vehicle | ☐Recovered ☐Unauthorized Use | ☐Victim's Vehicle | ☐Abandoned |
|---|---|---|---|---|---|---|---|---|

| 53 Vehicle Year | 54 Vehicle Make | 55 Vehicle Model | 56 Number Veh Stolen | 57 Vehicle Description |
|---|---|---|---|---|
| 2001 | CHEV | SUBURBAN | | |

| 58 Vehicle Style | 59 Vehicle Color Top WHI Bottom | 60 License A228064 | 61 LST AL | 62 LSY 2011 | 63 Tag Color |
|---|---|---|---|---|---|
| SU | | | | | |

**64 Vehicle VIN Number** 1 GNEC 16 R X 1 3 8 8 0 1 2

Motor Vehicle Recovery Only. Required for 24XX UCR Code   66 Stolen in your jurisdiction? ☐Yes ☐No Where?   67 Recovered in your jurisdiction? ☐Yes ☐No Where?

| 68 Case # | 69 SFX | 70 Case # | 71 SFX | 72 Case # | 73 SFX |
|---|---|---|---|---|---|

**74 Case Status** 1☑Pending 2☐Inactive 3☐Closed
**75** ☐Multiple Cases Closed Listed Above ☐Multiple Cases Closed Listed On Supplement

**76 Entered NCIC/ACJIC** ☐Yes ☐No   Date (MM/DD/YY)

**77 Case Disposition**
1 Cleared by Arrest (Juvenile)
2 Cleared by Arrest (Adult)
3 Unfounded
4 Exceptional Clearance
5 Administratively Cleared

**78 Exceptional Clearance (Circle One)**
A Suspect/Offender Dead
B Prosecution Declined/Other Prosecution
C Extradition Denied
D Victim Refused to Cooperate
E Juvenile (No Custody)
F Death of Victim

**79 Reporting Officer** MARTIN, T   **Officer ID Number** 0362

**80 Assisting Officer**   **Officer ID Number**

**81 Supervisor Approval** [signature] Shelton   **Officer ID Number** 344

**82 Watch Commander**   **Officer ID Number**

NIC/AIN #

ACJIC - 11-06

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

| 1 ORI # AL 0 0 4 0 0 | 2 Agency Name FAIRFIELD PD | 3 Date and Time of Report 1 1 2 0 1 1 0 TY 45 | ☐ AM ☐ PM ☐ MIL | 4 Case # 1 5 1 4 4 4 2 | 5 SI |

**EVENT**

6 Victim's Name (Original Report) FAIRFIELD BINGO

9 Original Incident/Offense THEFT OF PROPERTY 1° / CRIMINAL MISCHIEF

7 Original Offense Date 1 1 2 0 1 0

8 Type Report ☐ Continuation ☐ Follow-Up

10 State Code/Local Ordinance 13A-8-3 / 13A-7-21

12 New Incident/Offense

13 State Code/Local Ordinance

14 State Code/Local Ordinance

15 Has an Arrest Been Made? ☐ Yes ☑ No

16 Date of Arrest 1 1 2 0 1 1 0

17 Has a Warrant Been Obtained? ☐ Yes ☑ No Warrant #

18 Date of Warrant

| 20 ☐ Delinquent ☐ Suspect Name: JOHNSON, ANGELO | 21 ☐ Delinquent ☐ Suspect Name: ANDERSON, SHUNTA M. |

| Race ☐ W ☑ B ☐ I | Ethnicity ☐ Hispanic ☐ Other | Sex ☑ M ☐ F | DOB 0 3 2 8 8 3 | Age 27 | Race ☑ W ☐ B ☐ I | Ethnicity ☐ Hispanic ☐ Other | Sex ☐ M ☑ F | DOB 0 1 0 4 8 2 | Age 28 |

**DOLLAR VALUE**

| 22 Office Equip | 24 Aircraft | 25 Alcohol | 26 Autos | 27 Bicycles | 28 Buses |
|---|---|---|---|---|---|
| 23 State... | S R D C B F | S R D C B F | S R D C B F | S R D C B F | S R D C B F |

| 29 Clothes/Furs S R D C B F | 30 Computer Hardware/Software S R D C B F | 31 Consumables S R D C B F | 32 Credit/Debit Cards S R D C B F | 33 Drugs/Narcotics S R D C B F | 34 Drugs/Narcotics Equipment S R D C B F |

| 35 Farm Equipment S R D C B F | 36 Firearms S R D C B F | 37 Gambling Equipment S R D C B F | 38 Heavy Construction/Industrial Eqt S R D C B F | 39 Household Goods S R D C B F | 40 Jewelry/Precious Metals S R D C B F |

| 41 Livestock S R D C B F | 42 Merchandise S R D C B F | 43 Money S R D C B F | 44 Negotiable Instruments S R D C B F | 45 Non-negotiable Instruments S R D C B F | 46 Office Equipment S R D C B F |

| 47 Other Motor Vehicle S R D C B F | 48 Purses/Handbags/Wallets S R D C B F | 49 Radios/TV/VCR S R D C B F | 50 Recordings Audio/Visual S R D C B F | 51 Recreational Vehicles S R D C B F | 52 Structure - Single Occupancy Dwel S R D C B F |

| 53 Structure - Other Dwelling S R D C B F | 54 Structure - Other Commercial S R D C B F | 55 Structure - Industrial/Manufacturing S R D C B F | 56 Structure - Public/Community S R D C B F | 57 Structure - Storage S R D C B F | 58 Structure - Other S R D C B F |

| 59 Tools S R D C B F | 60 Trucks S R D C B F | 61 Vehicle Parts/Accessories S R D C B F | 62 Watercraft S R D C B F | 63 Other S R D C B F |

Motor Vehicle Recovery Only Required for 24xx UCR Code

64 Motor Veh. Stolen in Your Jurisdiction? ☐ Where?

65 Recovered in Your Jurisdiction? ☐ Where?

**MULTIPLE CASES CLOSED**

| 66 Case # | 67 SFX | 68 Case # | 69 SFX | 70 Case # | 71 SFX | 72 ADDITIONAL CASES CLOSED NARRATIVE ☐ Y ☐ N |

**ADMINISTRATIVE**

73 Case Status ☐ Pending ☐ Inactive ☐ Closed

Entered ACIC/NCIC M D Y

74 Case Disposition: 1 Cleared by Arrest (Juvenile) 2 Cleared by Arrest (Adult) 3 Unfounded 4 Exceptional Clearance 5 Administratively Cleared

Exceptional Clearance (Circle One) A. Suspect/Offender Dead B. Prosecution Declined/Other Prosecution C. Extradition Denied D. Victim Refused to Cooperate E. Juvenile (No Custody) F. Death of Victim

75 Reporting Officer MARTIN, T 056

76 Assisting Officer

77 Supervisor Approval _____ ID # 3414

78 Watch Cmdr

TYPE OR PRINT IN BLACK INK ONLY

ACJIC - V

ALABAMA UNIFORM INCIDENT / OFFENSE REPORT / UCR SUPPLEMENT

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

| ORI | AL 01 04 00 | Agency Name Fairfield P.D. | Date and Time of Report 11 22 10 12 40 | Case # 10 14 42 |

**EVENT**

5 Victim's Name (Original Report): Fairfield Bingo

6 Original Incident/Offense: Criminal Mischief And Theft of Property

New Incident/Offense: Evidence Tech Report

Original Offense Date: 11 20 10

6 UCR Code / 13 State Code/Local Ordinance: 13A-7-21 + 13A-8-3

15 Has an Arrest Been Made? No

**DOLLAR VALUE**

22 Local Use
23 State Use
24 Aircraft
25 Alcohol
26 Autos
27 Bicycles
28 Buses
29 Clothes/Furs
30 Computer Hardware/Software
31 Consumables
32 Credit/Debit Cards
33 Drugs/Narcotics
34 Drugs/Narcotics Equip
35 Farm Equipment
36 Firearms
37 Gambling Equipment
38 Heavy Construction/Industrial Eqt
39 Household Goods
40 Jewelry/Precious Metals
41 Livestock
42 Merchandise
43 Money
44 Negotiable Instruments
45 Non-negotiable Instruments
46 Office Equipment
47 Other Motor Vehicle
48 Purses/Handbags/Wallets
49 Radios/TV/VCR
50 Recordings - Audio/Visual
51 Recreational Vehicles
52 Structure - Single Occupancy
53 Structure - Other Dwelling
54 Structure - Other Commercial
55 Structure - Industrial/Manufacturing
56 Structure - Public/Community
57 Structure - Storage
58 Structure - Other
59 Tools
60 Trucks
61 Vehicle Parts/Accessories
62 Watercraft
63 Other

75 Reporting Officer: Higgins H  0476

TYPE OR PRINT IN BLACK INK ONLY

From:
*Shomer Insurance Agency*
7461 Beverly Blvd, Suite 306
Los Angeles, CA          90036
License No. 0C79888

Phone:     323-934-8160
Fax          323-934-8170

To:
**Fairfield Shopping Center, LLC**
c/o YBM Properties
500 North Larchmont Avenue
Los Angeles, CA 90004

Account #: FAIR152
Date:          11/09/2010

---

## Premium Due

---

Policy Effective Date:     9/15/2010
Expiration Date:            9/15/2011

Insured:       Fairfield Shopping Center (YBM
Policy #:      201CMP100482-10
Company:     American Safety Indemnity Co

Total Premium:     29,119.26

Reason For Billing:     PACKAGE
                               6501 EJ OLIVER BLVD, FAIRFIELD, AL

Amount Due:      29,119.26
Premium Due By: 11/12/2010

PLEASE MAKE YOUR CHECK PAYABLE TO SHOMER INSURANCE.
THANK YOU FOR YOUR PATRONAGE.

This is an invoice not a binder or indication of coverage

**Exhibit
4**
4/18/12
**Joseph Schneerson**
Cathryn L. Baker, CSR 7695

**Chron Source Doc 02257**

# ACORD EVIDENCE OF PROPERTY INSURANCE

**DATE** 09/22/2010

THIS IS EVIDENCE THAT INSURANCE AS IDENTIFIED BELOW HAS BEEN ISSUED, IS IN FORCE, AND CONVEYS ALL THE RIGHTS AND PRIVILEGES AFFORDED UNDER THE POLICY.

| PRODUCER | COMPANY |
|---|---|
| **PHONE** (A/C, No, Ext): (323) 934-8160 | American Safety Indemnity Company |
| Shomer Insurance Agency | |
| 7461 Beverly Blvd., Ste. 306 | |
| Los Angeles    CA 90036- | |

| CODE: | SUB CODE: |
|---|---|
| **AGENCY CUSTOMER ID #:** 0C7988B | |

| INSURED | LOAN NUMBER | POLICY NUMBER |
|---|---|---|
| Fairfield Shopping Center, LLC | | 201CMP100048210 |
| c/o YEM Properties | | |

| EFFECTIVE DATE | EXPIRATION DATE | CONTINUED UNTIL TERMINATED IF CHECKED |
|---|---|---|
| 09/15/2010 | 09/15/2011 | |

THIS REPLACES PRIOR EVIDENCE DATED:

## PROPERTY INFORMATION

**LOCATION/DESCRIPTION**

6501 EJ Oliver Blvd                    Fairfield         AL 35064-

## COVERAGE INFORMATION

| COVERAGE/PERILS/FORMS | AMOUNT OF INSURANCE | DEDUCTIBLE |
|---|---|---|
| Building/Special Form/All Risk/Replacement Cost/No Coinsurance | 7,753,000 | 25,000 |
| Business Income not available for vacant building | | |
| Terrorism Coverage included | | |

## REMARKS (Including Special Conditions)

RE:  Loan #6322688  6501 E. J. Oliver Blvd.
Except 10 days Notice of Cancellation for Non-Payment of Premium.*

## CANCELLATION

THE POLICY IS SUBJECT TO THE PREMIUMS, FORMS, AND RULES IN EFFECT FOR EACH POLICY PERIOD. SHOULD THE POLICY BE TERMINATED, THE COMPANY WILL GIVE THE ADDITIONAL INTEREST IDENTIFIED BELOW  30*  DAYS WRITTEN NOTICE, AND WILL SEND NOTIFICATION OF ANY CHANGES TO THE POLICY THAT WOULD AFFECT THAT INTEREST, IN ACCORDANCE WITH THE POLICY PROVISIONS OR AS REQUIRED BY LAW.

## ADDITIONAL INTEREST

| NAME AND ADDRESS | | |
|---|---|---|
| | X MORTGAGEE | X ADDITIONAL INSURED |
| | X LOSS PAYEE | |
| GE Commercial Finance Business | **LOAN #** | |
| Property Corp (see remarks) | 6322688 | |
| 1500 City West Blvd. #200 | **AUTHORIZED REPRESENTATIVE** | |
| Houston         TX 77042- | *[signature]* | |

ACORD 27 (3/93)
INS027 (0112) 05

ELECTRONIC LASER FORMS INC. (800) 327-0545

© ACORD CORPORATION 1993

# ACORD. CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
09/22/2010

| | |
|---|---|
| PRODUCER  (323) 934-8160<br>Shomer Insurance Agency<br>7461 Beverly Blvd., Ste. 305<br><br>Los Angeles      CA  90036- | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |

| INSURED | INSURERS AFFORDING COVERAGE | NAIC # |
|---|---|---|
| Fairfield Shopping Center, LLC<br>c/o YEM Properties<br>500 N. Larchmont<br>Los Angeles      CA  90004- | INSURER A: American Safety Indemnity | |
| | INSURER B: | |
| | INSURER C: | |
| | INSURER D: | |
| | INSURER E: | |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADDL INSD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| A | X | GENERAL LIABILITY | 201CGP100048210 | 09/15/2010 | 09/15/2011 | EACH OCCURRENCE | $ 1,000,000 |
| | X | COMMERCIAL GENERAL LIABILITY | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | CLAIMS MADE  X  OCCUR | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | PRODUCTS - COMP/OP AGG | $ 1,000,000 |
| | X | POLICY  X  PRO-JECT  LOC | | | | NO DED/BIR | |
| | | AUTOMOBILE LIABILITY | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | ANY AUTO | | | | | |
| | | ALL OWNED AUTOS | | | | BODILY INJURY (Per person) | $ |
| | | SCHEDULED AUTOS | | | | | |
| | | HIRED AUTOS | | | | BODILY INJURY (Per accident) | $ |
| | | NON-OWNED AUTOS | | | | | |
| | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | GARAGE LIABILITY | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | ANY AUTO | | | | OTHER THAN    EA ACC | $ |
| | | | | | | AUTO ONLY:      AGG | $ |
| | | EXCESS/UMBRELLA LIABILITY | | | | EACH OCCURRENCE | $ |
| | | OCCUR    CLAIMS MADE | | | | AGGREGATE | $ |
| | | | | | | | $ |
| | | DEDUCTIBLE | | | | | $ |
| | | RETENTION  $ | | | | | $ |
| | | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | | | | WC STATU-TORY LIMITS    OTH-ER | |
| | | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? | | | | E.L. EACH ACCIDENT | $ |
| | | If yes, describe under SPECIAL PROVISIONS below | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| | | OTHER | | | | | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS
RE: Loan #632688-001. Property Located at 6501 F.J. Oliver Blvd
GE Commercial Finance Business Property Corporation, its successors and/or assigns are included as
additional insured.
Except 10 days notice of cancellation for non-payment of premium.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| GE Commercial Finance<br>Business Property Corp<br>1500 City West Blvd. #200<br>Houston      TX  77042- | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL 30 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.<br><br>AUTHORIZED REPRESENTATIVE |

ACORD 25 (2001/08)                                                                    © ACORD CORPORATION 1988
INS025 (0108).08                    ELECTRONIC LASER FORMS, INC. (800)327-0545                    Page 1 of 2

Chron Source Doc 02259

# IMPORTANT

If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

# DISCLAIMER

The Certificate of Insurance on the reverse side of this form does not constitute a contract between the issuing insurer(s), authorized representative or producer, and the certificate holder, nor does it affirmatively or negatively amend, extend or alter the coverage afforded by the policies listed thereon.

Chron Source Doc 02260

# WKF&C Vacant Property Supple...ent
### In addition to Acord Property Application

## General Information

Named Insured  _FAIRFIELD SHOPPING CENTER LLC_

Principal Owners  _____

_____

_____

Percent of Building Vacant  _100%_          Age of building  _982_

Reason for Vacancy  _TENANT MOVED OUT_

Date of last Occupancy  _6/1/2010_

Prior Occupancy  _OFFICE - CALL CENTER_

Intended use  _OFFICE_

Expected Date of Occupancy  _____

Any pending appeals to change property zoning?      Yes _____   No _✓_

*Renovations are not permitted during the policy period.*
*Note if renovations are scheduled please contact our Inland Marine Department.*

|  | Gas | Water | Electric |
|---|---|---|---|
| Are Utilities operational ? | ✓ | ✓ | ✓ |

## Security

### Building

| Boarded | Locked | Fenced | Alarmed |
|---|---|---|---|
|  | ✓ |  | X |

If Alarmed specify Type
_BURGLAR + FIRE_
_8 CENTRAL STATION_

### Neighborhood

| Industrial | Residential | Commercial | Rural |
|---|---|---|---|
|  |  | ✓ |  |

Frequency of building inspection      Daily   Weekly   Monthly

## Valuation

RCV  _7,753,000_                    Square Footage  _316,600_

ACV  _____

Purchase Price  _4,886,000_     Date of Purchase  _2006_

## Financial

Are all real estate taxes paid?                                        Yes _X_   No _____
Are all Mortgage obligations fully paid to date?                        Yes _X_   No _____
Any liens (other than mortgage) against the property?                  Yes _____   No _X_
Is any insured, insured affiliate, or principal in bankruptcy or
currently in the process of filing for bankruptcy?                      Yes _____   No _X_

## Loss Information

Any losses at this property in the past 36 months?                     Yes _____   No _X_
Any losses at any other properties owned or managed by the insured
in the past 36 months?                                                  Yes _____   No _X_

The above information is material to WKF&C. Please reference the Acord application re false or fraudulent information.

Applicant Signature  _____     Producer Signature  _Donna Ratcliff_



**SELECTION OR REJECTION STATEMENT**
**TERRORISM RISK INSURANCE ACT OF 2002**

To:     American Safety Insurance Services, Inc.
        d/b/a in California as ASIG Insurance Services, Inc.

        Applicant:                Fairfield Shopping Center LLC
        Insurance Company:        American Safety Insurance Company

**Please select one.**

☐   I hereby elect to purchase terrorism coverage as afforded by the Terrorism Risk
     Insurance Act of 2002 for the premium amount as quoted.

☐   I hereby reject the offer to amend the terrorism exclusion contained in this Quote.
     I understand that the exclusion will be applicable at the inception date of my policy.

First Named Insured: Fairfield Shopping Center LLC

Applicant:        Fairfield Shopping Center LLC

Signature:

Print Name:

Title:

Date:

Notes:

• Must be signed by owner or corporate officer.
• Please attach your completed Selection or Rejection Statement to your request to
  bind coverage.

**Chron Source Doc 02262**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

PROTECTIVE SAFEGUARD PROMISSORY WARRANTY

In consideration of the premium charged, it is understood and agreed by the insured that it is a condition precedent to the acceptance of this insurance and payment of any claim under the policy that the insured warrants that at all times during the currency of the policy: (1) the premises described herein is protected by the protective safeguard described in the SCHEDULE and; (2) the insured shall maintain in complete working order all equipment and services pertaining to the operation of the described protective safeguard.

SCHEDULE - Applicable Item(s) Denoted By "X"

- ☐    An approved dry chemical extinguishing system protecting all cooking surfaces including deep fat fryers.

- ☐    Watchman During Non Working Hours.

- ☐    All accessible openings are boarded.

- ☒    Premises is Locked and Secured against unauthorized entry.

- ☒    No Occupancy (including storage) without Underwriter Agreement.

- ☒    Sufficient Heat to preclude freezing.

- ☐    All water has been drained from the plumbing and any other water vessels.

- ☒    Automatic Sprinkler System including Central Station supervisory service therefore.

- ☒    Burglar Alarm including Central Station supervisory service therefore.

- ☐    Fire Alarm including Central Station supervisory service therefore.

- ☐

- ☐    _____

- ☐    _____

BREACH OF ANY WARRANTY(S) SHALL RENDER COVERAGE PROVIDED BY THIS POLICY NULL AND VOID.

CPD00010607

**Chron Source Doc 02263**