FILED

2015 Sep-02  PM 01:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AMERICAN SAFETY INDEMNITY COMPANY<br><br>    Plaintiff,<br><br>v.<br><br>FAIRFIELD SHOPPING CENTER, LLC; GE COMMERCIAL FINANCE BUSINESS PROPERTY CORP., ISAOA, individually and as assignee of FAIRFIELD SHIPPING CENTER, LLC<br><br>    Defendants. | CIVIL ACTION No. 2:12-CV-02415-HGD |

### BRIEF IN SUPPORT OF ASIC'S MOTION TO EXCLUDE OPINIONS OF JERKINS AND VARNADO

COMES NOW, American Safety Indemnity Company ("ASIC") and respectfully moves this Honorable Court to exclude the testimony of the experts retained by GE Commercial Finance Business Property Corp. ("GE").

### STATEMENT OF FACTS

The facts of this matter have been set forth in detail in *ASIC's Motion for Summary Judgment* which was filed with this Honorable Court on August 24, 2015. ASIC hereby adopts the *Statement of Facts* from that motion by reference. For the convenience of the Court, ASIC sets forth the following summary of facts relevant to this motion below.

*FACTS RELEVANT TO THIS MOTION*

In late May 2011, GlassRatner hired Darrell Varnado who testified he was initially hired to calculate possible repairs rather than file a claim.[1] Darrell Varnado asked Roddy Jerkins to assist him to prepare an estimate which they intended to be used as a bid for work at the Property, which estimate included not only repairs for the neglected roof and old HVAC units, but also included interior work such as removal and replacement of all drywall, electrical systems, carpet and ceiling tiles.[2]

Jerkins and Varnado first visited the Property in mid-April/early May 2010, nearly three months after the Policy was cancelled and more than five months after November 20, 2010, the date of loss set forth in the Proof of Loss.[3] As a result of their work in preparing the estimate for repairs and improvements, they were retained by GE to provide expert testimony.[4] They prepared and submitted a Rule 26 written expert report (a single report) on June 15, 2015.[5] GE experts have gone beyond their purported fields of ex-

---

[1] *Rec. Doc. 67-1* (Brief in Support of ASIC's Motion for Summary Judgment), p. 17.

[2] *Id.*

[3] *Rec. Doc. No. 67-30* (Deposition of Darrell Varnado (hereafter "Varnado Dep.")), p. 9, lines 14–16; *Rec. Doc. No. 67-32* (Deposition of Roddy Jerkins Vol. I (hereafter, "Jerkins Dep. I)), p. 35, lines 14–18; *Rec. Doc. No. 67-9* (Cancellation Notice); *Rec. Doc. No. 67-23* (Proof of Loss Executed by GE).

[4] *Exhibit A* (Expert Report of Roddy Jerkins and Darrell Varnado), p. 10.

[5] *Id.*

pertise set forth in their report and have attempted to offer opinions for

which they have no special education, training or experience.

*ARGUMENT AND CITATION OF AUTHORITY*

Jerkins' and Varnado's opinions must be stricken because they do not

meet the standard for reliable, admissible expert testimony under Fed. R.

Evid. 702 and the jurisprudence interpreting it. Moreover, certain of their

opinions must be stricken because they were not disclosed in the Rule 26 re-

port.

**I.    Jerkins' and Varnado's opinions which were not disclosed in their
        written report must be stricken as procedurally defective.**

Fed. R. Civ. P. 26(a)(2)(B) sets forth the requirements for a written ex-

pert report:

> The report must contain:
>
> (i) a complete statement of all opinions the witness
> will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in
> forming them. . . .[6]

The Court of Appeals for the Eleventh Circuit has explained that Rule

26's "expert disclosure rule is intended to provide opposing parties reasona-

---

[6] Fed. R. Civ. P. 26(a)(2)(B). *See also Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824
(11th Cir. 2009) ("Fed. R. Civ. P. 26(a) and (e) require parties to disclose all bases of their
experts' opinions and to supplement timely their expert disclosures upon discovery of an
omission or as required by court order.").

ble opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses."[7]

Jerkins and Varnado issued their written report on June 15, 2015.[8] They were subsequently deposed on July 29 and August 5.[9] During their depositions, Jerkins and Varnado testified to three previously-undisclosed opinions. First, they opined that thieves gained access to the Property through the roof, climbed along the steel girders inside the building, created holes in drywall and stole electrical equipment from the Property (at unspecified times which are not set out in the Proof of Loss which asserts a single date).[10] Second, they opined that the roof system deteriorated beyond repair over the course of the two months following November 20, 2010.[11] Finally, they opined that certain raised flooring panels inside the Property were damaged with a hammer.[12] None of these opinions (collectively, the "Late Opinions") are set forth in their written expert report (the "JV Report").[13]

---

[7] *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1361-62 (11th Cir. 2008) (quoting *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008)).

[8] *Exhibit A* (Expert Report of Roddy Jerkins and Darrell Varnado).

[9] *Varnado Dep.*, cover; *Jerkins Dep. I*, cover; *Rec. Doc. No. 67-33* (Deposition of Roddy Jerkins Vol. II (hereafter "Jerkins Dep. II")), cover.

[10] *Varnado Dep.*, pp. 40–43, lines 19–3, pp. 89–92; *Jerkins Dep. I*, pp. 36–37, lines 5–9; *Jerkins Dep. II.*, p. 112, lines 1–12.

[11] *Varnado Dep.*, p. 215–216, lines 7–19.

[12] *Id.* at, p. 34, lines 10–18; *Jerkins Dep. II*, pp. 277–279, lines 19–19.

[13] *Exhibit A* (Expert Report of Roddy Jerkins and Darrell Varnado).

Fed. R. Civ. P. 37(c)(1) states that when "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[14]

The failure to report the Late Opinions as required by Rule 26 was not substantially justified and has been harmful to ASIC's prosecution of its case. ASIC has been unable to conduct discovery or retain experts to consult and/or testify to rebut the Late Opinions. As it would be manifestly unfair for GE to rely on the Late Opinions, the must be excluded under Rule 37.

## II.   Jerkins' and Varnado's opinions must be excluded because they do not meet the standards imposed by Fed. R. Evid. 702 and are improper attempts to introduce speculation and conjecture.

Rule 702 of the Federal Rules of Evidence allows expert testimony when (1) the witness is qualified as an expert; and (2) his expertise "will assist the trier of fact to understand the evidence or to determine a fact in issue. . . ."[15] More specifically, Rule 702 reads:

---

[14] *Mitchell*, 318 F. App'x at 824 (*quoting* Fed. R. Civ. P. 37(c)(1)).

[15] Fed. R. Evid. 702; *Clark v. Hill*, 2013 WL 6987627, 2–3 (N.D. Ala. 2013) (Rule 702 must be read in conjunction with three seminal decisions by the Supreme Court of the United States related to expert testimony: *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *General Elec. Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 177 A.L.R. Fed. 667 (U.S. 1997); and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[16]

GE bears the burden of proving that its experts' opinions are admissible under *each* of the standards annunciated in these cases.[17] "'[A]ny step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible.'"[18]

Although ASIC contends that the Late Opinions should be stricken for failure to comply with Rule 26, ASIC will address them together will the opinions appearing in the JV Report (collectively, the "JV Opinions"), as the

---

[16] Fed. R. Evid. 702.

[17] *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1306 (11th Cir. 1999) ("The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence" (citing *Daubert,* 509 U.S. at 592 n. 10));.*Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.,* 402 F.3d 1092, 1107 (11th Cir. 2005) ("the proponent must demonstrate that the witness is qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will be helpful to the trier of fact" (*citing U.S. v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion....."))). *See also McCorvey v.. Baxter Healthcare Corp.,* 298 F.3d 1253, 1257 (11th Cir. 2002); *Maiz v. Virani,* 253 F.3d 641, 664 (11th Cir. 2001).

[18] *McClain v. Metabolife International, Inc.,* 401 F.3d 1233, 1245 (11th Cir. 2005) (*quoting Amorgianos v. National Railroad Passenger Corp.,* 303 F.3d 256, 267 (2d Cir.2002)) (*emphasis in original*).

JV Opinions also do not meet the standards imposed by *Daubert* and its

progeny and therefore must be excluded.

The Supreme Court instructed trial courts to ensure that an expert relying

on personal experience "employs in the courtroom the same level of intellec-

tual rigor that characterizes the practice of an expert in the relevant field."[19]

The United States Court of Appeals for the Eleventh Circuit has explained

that reliable expert testimony must be based upon more than the subjective

belief or speculation of the expert:

> [To] meet the standard of evidentiary reliability,
> expert testimony must be (1) "ground[ed] in the
> methods and procedures of science," (2) authenti-
> cated by "more than subjective belief or unsup-
> ported speculation," and (3) "supported by appro-
> priate validation—*i.e.*, 'good grounds,' based on
> what is known." "[T]he trial court must scrutinize
> not only the principles and methods used by the
> expert, but also whether those principles and
> methods have been properly applied to the facts of
> the case."
>
> . . ."nothing ... requires a district court to admit
> opinion evidence that is connected to existing data
> only by the *ipse dixit* of the expert. A court may
> conclude that there is simply too great an analyti-
> cal gap between the data and the opinion prof-
> fered."[20]

---

[19] *Kumho Tire,* 526 U.S. at 152.

[20] *Frazier,* 387 F.3d at 1295-96 (*quoting Daubert,* 509 U.S. at 590, 113 S.Ct. at 2795 *and citing Joiner,* 522 U.S. at 146) (*citations omitted*).

The Supreme Court explained that the analysis under *Daubert* and its progeny requires that a trial court assess the reasonableness of expert testimony in the context of "*the particular matter to which the expert testimony was directly relevant.*"[21]

Jerkins and Varnado are speculating—under the guise of expert testimony—as to the costs associated with conditions  observed after the date of loss or with unproven events that are not the subject of the Proof of Loss. "'An expert may not testify to his opinion on matters outside of his field of training and experience.'" [22]

These are not qualified to offer their views on events outside of their expertise or offer conjecture as to the timing of unproven events for which there is no factual support. Because the JV Opinions are simply subjective views they are unreliable and not the proper use of expert testimony, and must be excluded.

---

[21] *Kumho Tire*, 526 U.S. at 153–54 (*emphasis in original*). *See also Hall*, 753 F. Supp. 2d at 1154.

[22] *Lingefelt v. International Paper Co.*, 57 So.3d 118, 127 (Ala. 2010) (*quoting Kyser v Harrison*, 908 So.2d 914, 919–20 (Ala. 2005) (affirming a trial court's exclusion of proffered expert testimony by a physician when the physician had training in forensic pathology but not pediatric forensic pathology) (*quoting Central Aviation Co. v. Perkinson*, 112 So.2d 326, 331 (1959))). *See also Furin v. City of Huntsville*, 3 So.3d 256, 261–62 (Ala.Civ.App. 2008) (affirming a trial court's disqualification of an engineer's testimony when the engineer had training and experience in civil engineering and aerospace engineering but not in matters pertaining to floods or their causes).

A. <u>The JV Opinions must be excluded because they are not based on sufficient facts or data.</u>

"An expert opinion must be based on facts that enable the expert 'to express a reasonably accurate conclusion as opposed to conjecture or speculation, [but] absolute certainty is not required.'"[23] It is error for a trial court to permit an expert to testify where the testimony is based upon unrealistic and speculative assumptions.[24] A testifying expert's opinion is required to have a

---

[23] *Villalobos v. Am. Airlines, Inc.*, 1998 WL 1770592, at 3 (S.D. Fla. Nov. 13, 1998) (*quoting Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996) (*quoting Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988))). *See also Jones*, 861 F.2d at 662 (expert testimony must be based on "facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or speculation"); *Browder v. Gen. Motors Corp.*, 5 F.Supp.2d 1267, 1283 (M.D. Ala. 1998) ("basing an 'expert' opinion on facts not in evidence is not helpful to the trier of fact in understanding the evidence or determining a fact in issue"); *Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1235 (5th Cir. 1986) (an award for damages "cannot stand when the only evidence to support it is speculative and purely conjectural."); *E.T. Barwick Indus. v. Walter Heller & Co.*, 692 F.Supp. 1331, 1347 (N.D. Ga. 1987), *aff'd*, 891 F.2d 906 (11th Cir.1989) ("[t]heoretical speculations, unsupported assumptions, and conclusory allegations advanced by an expert ... are [not] entitled to any weight when raised in opposition to a motion for summary judgment"); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"); *United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1040 (11th Cir. 1988) ("certainly where an expert's testimony amounts to no more than a mere guess or speculation, a court should exclude his testimony"); *Townsend*, 642 So.2d 411 (Ala. 1994); *Kirk v. Griffin*, 667 So.2d 1378 (Ala. 1995); *Lingefelt v. International Paper Co.* 57 So.3d 118, 127 (2010) (""A[n expert] witness's testimony cannot be based on mere speculation and conjecture."); *Swanstrom v. Teledyne Continental Motors, Inc*. 43 So.3d 564 (2009) (Mere assertions of belief, without any support, cannot qualify as proper expert testimony).

[24] *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 22 (2d Cir.1996) (excluding testimony of economic expert who assumed contrary to the party's prior work history that party would be employed full time with fringe benefits for the remainder of his career); *Gumbs v. International Harvester, Inc.*, 718 F.2d 88, 98 (3d Cir.1983) (remanding case where expert was permitted to testify regarding estimates of future earnings which were based upon unsupported supposition that party would have worked past the age of 65 and would have received fringe benefits where there was no evidence that the party had ever received any fringe benefits); *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 567 (D.C.

reasonable basis-in-fact which distinguishes it from one of many possible

theories; otherwise, it supplants the jury's right to weigh the evidence.

> Without an underlying basis of support, the 'expert's' opinion is only one of many possible theories and interpretations of the facts at issue, and is no more or less helpful than the trier of fact's own reading of the evidence.[25]

If the facts relied on by the witness are insufficient to support an opinion,

then the challenge may go to the admissibility of the opinion.[26]

As demonstrated below, the JV Opinions do are not grounded upon a

facts. They are speculative. They are thus unreliable and must be excluded.

Jerkins and Varnado are not qualified to or allowed to speculate under the

guise of expert testimony as to causation or timing of events for which there

is no factual support.

---

Cir. 1993) (finding it inappropriate to allow jury to evaluate weight of expert's speculative testimony); *see also* *In re Air Crash Disaster,* 795 F.2d at 1234–35 (5th Cir. 1986) (excluding testimony of damages expert where he assumed 5% tax rate and annual increase in salary of 8% for 40 years because assumptions were abusive of the facts).

[25] *Browder,* 5 F.Supp.2d at 1283.

[26] *Ammons v. Massey–Ferguson, Inc.,* 663 So.2d 961, 965 (Ala.1995) (Houston, J., concurring specially) (*citing* *Morris v. Young,* 585 So.2d 1374 (Ala.1991); *Alabama Power Co. v. Robinson,* 447 So.2d 148 (Ala.1983); J. Colquitt, Alabama Law of Evidence, § 7.3 (1990)).

### 1. There is no factual basis for the JV Opinions regarding entry into the Property by unauthorized persons during the Policy period.

There is no evidence that *any* person was at the Property during the Policy period at any time other than November 20, 2010. On that date, two individuals were arrested *on the ground-level and outside* the Property for attempted theft of components from three HVAC units located on the exterior of the property.[27] The Police Report makes no mention of entry into the Property.[28] The Police Report includes an inventory of items which the alleged thieves took from the Property, and that inventory included *only* items which were removed from HVAC units.[29] The report makes no reference to how or when the HVACs were damaged, nor does it identify the particular units which were allegedly damaged (there were over forty units).

Jerkins and Varnado have posited that thieves entered the Property through the roof and engaged in theft/vandalism. When questioned about the facts which support this theory, Jerkins admitted that: 1) he never visited the property until April 2011;[30] 2) he does not know when any alleged hole in

---

[27] *Rec. Doc. No. 67-11* (Police Report), pp. GE02004–02003.

[28] *Id.* at pp. GE02004–02005.

[29] *Id.* at pp. GE01999, 02002.

[30] *Jerkins Dep. II,* p. 35, lines 14–18.

the roof of the Property was made;[31] 3) he has no idea how a would-be thief would enter the Property through the roof;[32] 4) he has no idea if thieves actually used a hole through the roof to enter the Property;[33] 5) he has never surveyed the actual path he believes the thieves took when they entered the Property through the roof;[34] and, 6) he has no idea if thieves used any alternative routes to enter the Property.[35]

Similarly, Varnado admitted that: 1) he never visited the Property before late May, 2011;[36] 2) he does not know when any alleged holes in the roof was created;[37] 3) he does not know where the thieves allegedly entered the Property;[38] and, 4) he has never surveyed the actual path he believes the thieves took when they entered the Property through the roof.[39]

The experts' testimony reveals that there is no factual basis which supports their opinion that the Property was entered through the roof on No-

---

[31] *Jerkins Dep. II,* p. 159, lines 2–9.

[32] *Id.* at p. 71, lines 10–20, p. 117–118, lines 2–2.

[33] *Id.* at p. 124, lines 16–23, pp. 124–125, lines 24–20, p. 135, lines 5–14, pp. 130–131, lines 17–4.

[34] *Id.* at p. 99, lines 3–22, p. 124, lines 16–23.

[35] *Id.* at p. 122, lines 11–19, pp. 123–124, lines 18–12, p. 146, lines 11–22, p. 154, lines 10–17, p. 149, lines 3–12.

[36] *Varnado Dep.*, p. 9, lines 14–16.

[37] *Id.* at p. 160, lines 3–15; p. 99, lines 9–19

[38] *Id.* at p. 45, lines 2–21, p. 81, lines 8–20.  p. 177, lines 2–10.

[39] *Id.* at p. 82, lines 6–18, p. 85, lines 2–4, p. 86, lines 6–20, pp. 90–91, lines 19–6.  p. 93, lines 7–11, p. 94, lines 1–9.

vember 20 and during the Policy period. Accordingly, their expert opinion is not based upon facts. It is conjecture and speculation and not within their stated field of expertise. It must therefore be excluded.

### 2. There is no factual basis for the JV Opinions regarding alleged theft/vandalism damage to interior components of the Property during the Policy period.

The Police Report describing the loss on November 20, 2010, says nothing about theft of equipment from the interior of the Property[40] during the Policy period. As established previously, there are no other facts which would permit a conclusion that the Property was entered during the Policy period.

The alleged damage to the electrical components in the interior of the building is a significant portion—nearly 60%—of Jerkins' and Varnado's estimate for repairs to the interior of the building.[41] Electrical equipment and elevated floor panels are the *only* materials which Jerkins and Varnado allege was stolen from inside the building.[42] The remaining interior damage

---

[40] *Rec. Doc. No. 67-11* (Police Report), pp. GE02004–02005; *Varnado Dep.*, p. 39–40, lines 16–14, p. 110, lines 11–21.

[41] *Rec. Doc. No. 67-20* (Commercial Renovators Estimate), pp. GE01559–01560.

[42] *Exhibit A* (Expert Report of Roddy Jerkins and Darrell Varnado), pp. 1–2, ¶ (A)(2); *Jerkins Dep. II*, pp. 283–284, lines 9–3.

alleged by GE was allegedly the result of water intrusion and subsequent development of mold.[43]

With respect to electrical components, Jerkins testified that he does not know if any electrical components were stolen from the Property.[44] He also has no knowledge of the condition of the electrical equipment in the Property at any time during the Policy period.[45]

Similarly, Varnado testified that: 1) he has no way of knowing when damage to the electrical systems occurred;[46] 2) he has no knowledge of how the electrical system works and does not know whether components had been removed from the Property by prior tenants.[47]

Thus, is no evidence that anyone took the electrical equipment on November 20, 2010 or at any other time during the Policy period.

Neither Jerkins nor Varnado is aware of any facts which support his conjecture that the interior of the Property was subjected to theft and/or vandalism on November 20, 2010 or at any other time during the Policy period. Accordingly, their opinions must be excluded.

---

[43] *Exhibit A* (Expert Report of Roddy Jerkins and Darrell Varnado), pp. 1–2, ¶ (A)(2).

[44] *Jerkins Dep. II,* p. 288, lines 6–15.

[45] *Id.* at p. 287, lines 2–9, p. 288, lines 6–15.

[46] *Varnado Dep.*, p. 38, lines 5–9, p. 39–40, lines 16–14, p. 110, lines 5–21.

[47] *Id.* at p. 127, lines 4–10, pp. 127–128, lines 24–4, pp. 129–130, lines 25–5, p. 77, lines 1–9; p. 127, lines 4–18.

### 3.  *There is no factual basis for the JV Opinions regarding damage to the roof membrane during the Policy period.*

Jerkins and Varnado's opinion is that the roof to the Property was damaged when thieves dragged sharp parts across it at some unspecified dates.[48] There are no factual data which support this theory, and most importantly, there are no factual data which establish that such damage occurred *during the Policy period,* which is a prerequisite of the insurance claim.

Jerkins was never on the roof and never observed the HVACs or any material related to the HVACs.[49] Varnado never inspected the roof; he was on the roof in one area for a short period of time but never walked around.[50] During the short period Varnado was on the roof, he was unable to observe any soft spots or punctures in the roof.[51]

Neither Jerkins nor Varnado inspected the allegedly sharp edges of materials associated with the rooftop HVAC units, as all of the units had been removed and hauled away from the Property by the time Jerkins and Varnado first visited the Property.[52] Because there is no factual evidence upon

---

[48] *Exhibit A* (Expert Report of Roddy Jerkins and Darrell Varnado), p. 4, ¶ 5.

[49] *Jerkins Dep. II*, p. 62, lines 4–15.

[50] *Varnado Dep.*, p. 152, lines 3–12.

[51] *Id.* at p. 25, lines 8–23, p. 212, lines 16–25.

[52] *Rec. Doc. No. 67-18* (Commercial Renovators Invoice); *Rec. Doc. No. 67–19* (Zachary May Report); *Jerkins Dep. II*, p. 62, lines 4–10, pp. 180–182, lines 4–13; *Jerkins Dep. II*, p. 66, lines 18–22.

which to conclude that sharp metal edges were present on the roof during the policy period and caused damage to the roof membrane during the policy period, the JV Opinion on this score must be excluded.

### 4. *There is no factual basis for the JV Opinions regarding the value of allegedly damaged HVAC equipment.*

There is no evidence of the type, model, or cost of the HVAC units involved in the attempted theft reported in the Police Report.[53] Moreover, there is no evidence of the specifications of *any* of the rooftop HVAC units. There is also no evidence to suggest any other units were damaged on November 20, 2010 or at any other time during the Policy period.

Jerkins and Varnado testified that they obtained a quote for repair of the HVACs but lost it and are no longer aware of its contents or its author.[54] As explained above, they testified that all of the HVAC evidence was destroyed prior to their initial visit to the Property.[55] Most significantly, the unknown contractor who prepared the lost HVAC quote visited the building in August 2011 after all of the HVAC equipment had been removed from the Property; therefore, they were unable to inspect the condition of the previous equip-

---

[53] *Rec. Doc. No. 67-20* (Commercial Renovators Estimate), p. GE01555, line item 824.

[54] *Varnado Dep.*, p. 79–80, lines 15–20; *Jerkins Dep. II*, pp. 63–64, lines 24–25.

[55] *Jerkins Dep. II*, p. 62, lines 4–10, pp. 180–182, lines 4–13.

ment.[56] As a result, there is no evidence which would allow any type of conclusion as to the condition or repair cost associated with any particular HVAC unit.

Moreover, both Jerkins and Varnado testified that they have no way of knowing whether any of the HVAC units (other than the three units identified in the Police Report) were damaged during the Policy period.[57]

Because neither Jerkins nor Varnado is aware of any facts which support his opinion regarding the value of the allegedly damaged HVAC units, the opinion must be excluded.

    B.  <u>The JV Opinions regarding the cause of alleged damages must be excluded because they are speculative.</u>

Rule 702 separately requires that a putative expert's opinions be the product of reliable principles and methods. As demonstrated below, the JV Opinions do not meet this standard because they are speculative.

        *1.*  *The JV Opinions regarding entry into the Property by unauthorized persons during the Policy period are unreliable.*

Jerkins testified that he was never asked to identify the number of times that the interior of the Property was accessed by unauthorized persons, and

---

[56] *Id.* at pp. 179–180, lines 23–23.

[57] *Varnado Dep.*, p. 109, lines 11–23, p. 111, lines 7–20, p. 113, lines 5–13; *Jerkins Dep. II*, p. 63, lines 5–12, p. 84, lines 10–22, p. 177, lines 5–7, p. 179, lines 3–13.

he has no idea if it was so accessed during the Policy period.[58] There is certainly no evidence the apprehended culprits did so on November 20, 2010.

Varnado candidly admitted that he has never taken a course or received instruction on how to investigate property theft and, consequently, he has not based his conclusions regarding unauthorized entry to the Property on any specialized training, expertise or education.[59] Ultimately, Varnado admitted that he doesn't know whether anyone entered the Property during the Policy period[60] Instead, he simply used his "sense" to support his "opinions" on that score.[61]

```
22      It wouldn't make sense. See,
23      that's what we're talking about. We're
24      talking about things that make sense. . .
1       A But when you -- but when you
2       couch this in such a way, you know, Well,
3       did you see anybody that did this. I mean,
4       well, how did they do it? Well, I don't
5       know, but we have to use our sense at some
6       point just like you're using here to do
7       this.[62]
```

Varnado's "sense" regarding access to the interior of the Property is precisely the sort of subjective belief that is subject to exclusion and not appro-

---

[58] *Jerkins Dep. II*, pp. 137–138, lines 17–2, p. 155, lines 1–9.

[59] *Varnado Dep.*, p. 193, lines 2–19, p. 194, lines 11–19.

[60] *Id.* at  pp. 123–124, lines 22–7. *See also Id.* at 194–195, lines 20–2, pp. 244–245, lines 18–13.

[61] *Id.*

[62] *Id.*

priate expert testimony. His comments are purely subjective, and "[t]he more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable."[63]

As stated before, there is no evidence that the Property was ever entered during the Policy period. Because neither Jerkins nor Varnado are qualified to opine as to the nature of purported criminal activity and are purely imposing their own subjective views, their opinions regarding any entry to the interior must be excluded.

### 2. The JV Opinions regarding alleged theft/vandalism damage to interior components of the Property during the Policy period are unreliable.

Because neither Jerkins nor Varnado can reliably establish that the Property was entered by thieves/vandals during the Policy period, they logically cannot establish that the interior of the Property was subjected to theft/vandalism on November 20, 2010 or at any other time during the Policy period.

Even if there were evidence of theft/vandalism during the Policy period, Jerkins and Varnado cannot reliably opine as to *what* was taken, *whether* it was functioning, *when* it was taken or *how much* it cost. As explained earlier, both Jerkins and Varnado testified that they only equipment they believe

---

[63] *Frazier*, 387 F.3d at 1298-99 (*quoting* Fed. R. Evid. 702 advisory committee notes, 2000 amends).

was stolen from inside the property is the electrical components and raised

flooring panels. As for the flooring panels, Jerkins and Varnado do not know

the condition of the floor during the policy period because they did not visit

the Property until almost three months after the Policy was cancelled on.[64]

    As for the electrical equipment, both testified that they have limited

knowledge of such equipment and that they would defer to Mr. Ken

Elkins—the gentleman who prepared the electrical damage estimate for

GE—for any testimony regarding such equipment.[65] They did not identify

Elkins as a person relied upon in the JV Report.[66] Mr. Elkins was never

identified in any fashion in GE's initial disclosures, interrogatory responses

or any supplement thereto.[67] Because Jerkins and Varnado are without any

training or expertise to opine as to the nature, condition and valuation of the

electrical components of the Property, they are simply guessing as to those

variables.

---

[64] *Jerkins Dep. II*, p. 280, lines 11–14, p. 281, lines 6–20.

[65] *Varnado Dep.*, pp. 76–77, lines 22–9, p. 127, lines 4–23, p. 379, lines 9–17; *Jerkins Dep. II*, p. 182, lines 10–23, p. 284, lines 4–9, p. 285, lines 20–23.

[66] *Exhibit A* (Expert Report of Roddy Jerkins and Darrell Varnado).

[67] *Exhibit B* (GE's Initial Disclosures); *Exhibit C* (GE's Responses to Interrogatories).

Additionally, it is undisputed that certain electrical equipment was re-moved from the Property long before the Policy period began.[68] Jerkins and Varnado testified that they have no way of knowing how much electrical equipment was removed from the Property before the Policy period.[69] They have failed to address this alternate explanation for the allegedly missing electrical equipment. "An expert's failure to address alternative explanations for the opinions he asserts in the ways standard in his field of expertise 'vio-lates a primary purpose of *Daubert:* to ensure the expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"[70] In this case, Jerkins' and Varnado's failure to address alternative explanations highlights the subjective, unrelia-ble nature of their opinion.

Neither Jerkins nor Varnado can reliably establish whether operational electrical equipment was stolen from the Property during the Policy period, nor can they establish the nature, condition or value of such property. Ac-

---

[68] *Record Doc. No. 67-1* (Brief in Support of ASIC's Motion for Summary Judgment), p. 9, n. 27.

[69] *Varnado Dep.*, pp. 127–128, lines 24–4, pp. 129–130, lines 25–5; *Jerkins Dep. II*, p. 160, lines 15–25.

[70] *Hall v. Thomas*, 753 F. Supp. 2d 1113, 1149 (N.D. Ala. 2010) (*quoting Guinn v. AstraZeneca Pharmaceuticals LP,* 602 F.3d 1245, 1255 (11th Cir. 2010) (*quoting Kumho Tire,* 526 U.S. at 152)).

cordingly, their conjecture regarding the alleged theft of such equipment must be excluded.

### 3. *The JV Opinions regarding damage to the roof membrane during the Policy period are unreliable.*

The JV Opinion that the roof of the Property was damaged by supposed thieves who allegedly dragged metal components across the roof must be excluded because it is not the product of a reliable application of expert experience and training. There is no evidence of anyone on the roof dragging HVAC components on November 20, 2010 or at any other time during the ASIC policy period.

Jerkins never observed cuts, scrapes or other punctures in the roof of the Property.[71] He relied upon a person named Mike McDonald to inform him of the condition of the roof;[72] however, McDonald is not mentioned in the JV Report as a person who provided information relied upon in the report.[73] Ultimately, Jerkins admitted that he has no way of knowing if the roof was leaking prior to the inception of the Policy.[74]

Varnado testified that he has *never* been involved in estimating damages to an EPDM roof (the type of roof at the Property) which were caused by

---

[71] *Jerkins Dep. II*, p. 203, lines 4–14.

[72] *Id.* at p. 204, lines 2–18

[73] *Id.* at p. 207, lines 5–13.

[74] *Id.* at p. 309, lines 4–9.

equipment being dragged across the roof surface.[75] He has examined *hundreds* of EPDM roofs, but not a single one which sustained damage in the manner he opines in this case.[76]

Finally, Jerkins and Varnado admit that there are other potential causes of damage to the roof which they never investigated or considered. For example, the roof could have been damaged by a routine maintenance contractor.[77] Additionally, Varnado and Jerkins didn't consider whether ponding water on the roof surface caused any damage.[78] Finally, they failed to consider whether the roof could have been repaired. Varnado admitted that the mere theft of HVAC units from an EPDM roof such as the one at the Property does not result in irreparable damage to the roof.[79] He described the mechanism by which an EPDM roof can be repaired and explained that an assessment of the condition of the roof requires a physical inspection which he never did.[80]

Neither Jerkins nor Varnado has demonstrated that he is qualified to reliably apply his experience, expertise or training to the facts of this case. An

---

[75] *Varnado Dep.*, p. 241, lines 1–11.

[76] *Id.*

[77] *Id.* at p. 213, lines 4–10.

[78] *Id.* at p. 211, lines 1–13; *Jerkins Dep. II*, p. 73, lines 7–19.

[79] *Varnado Dep.*, p. 336, lines 13–21.

[80] *Id.* at pp. 339–342, lines 22–20.

expert must not be permitted to offer his subjective judgment "in the guise of a reliable expert opinion."[81]

In essence, Jerkins' and Varnado's theory is: *If* there were thieves on the roof during the Policy period and *if* the metal panels of the HVAC units were sharp and *if* the thieves were careless then they *might* have damaged the roof membrane. This is pure speculation.

In *U.S. v. Thanh Quoc-Hoang*,[82] the court noted that statements of mere possibility are not permitted as expert opinion because they do not help the jury.

> A possibility is an abstraction. A possibility is a vague quantity, if in fact it represents any quantity at all. The word epitomizes vagueness. Black's Law Dictionary defines possibility as: 1. An event that may or may not happen.35 Indeed, as too many people agree: anything is possible. A possibility is a contingency that never completes itself. Hardly the stuff of admissible evidence.[83]

This Honorable Court has recognized that: "[E]xpert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the

---

[81] *Elcock v. Kmart Corp.*, 233 F.3d 734, 748 (3d Cir. 2000).

[82] 891 F. Supp. 2d 1355, 1362-63 (M.D. Ga. 2012) *aff'd*, 560 F. App'x 849 (11th Cir. 2014).

[83] *Id.*

district courts must take care to weigh the value of such evidence against its potential to mislead or confuse."[84]

> Because of the powerful and potentially mislead-ing effect of expert evidence, [] sometimes expert opinions that otherwise meet the admissibility re-quirements may still be excluded by applying Rule 403. Exclusion under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to con-fuse or mislead the jury, [] or if the expert testimo-ny is cumulative or needlessly time consuming.[85]

Jerkins' and Varnado's opinion regarding the mechanism of damage to the roof is not the product of reliable expertise; rather, it is simply a theory which GE's counsel can argue in closing argument. It is not expert testimony and must be excluded.

### 4. The JV Opinions regarding the value of allegedly damaged HVAC equipment are unreliable.

Both Jerkins and Varnado testified that they have no particular expertise in estimating the replacement cost of HVAC equipment and thus they sought

---

[84] *Vaughn v. Hyster Co.*, 2010 WL 9936530, at 6 (N.D. Ala. Dec. 3, 2010) *aff'd sub nom. Vaughn v. Nacco Materials Handling Grp., Inc.*, 440 F. App'x 821 (11th Cir. 2011).

[85] *Vaughn*, 2010 WL 9936530 at 6, (*citing Daubert*, 509 U.S. at 595, 113 S.Ct. at 2798; *U.S. v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985); *Hull v. Merck & Co., Inc.*, 758 F.2d 1474, 1477 (11th Cir. 1985) (*per curiam*) (finding that admission of speculative and "po-tentially confusing testimony is at odds with the purposes of expert testimony as envi-sioned in Fed. R. Evid. 702"); *United States v. Stevens*, 935 F.2d 1380, 1399 (3d Cir. 1991) (finding expert testimony properly excluded because its probative value was out-weighed by concerns of "undue delay, waste of time, or needless presentation of cumula-tive evidence")) (*citations omitted from quotation*).

the assistance of a third party to prepare an estimate in this case.[86] As stated before, the estimate was lost and Jerkins and Varnado cannot recall who they obtained it from in the first place.

Because Jerkins and Varnado have admitted their lack of expertise in the field of estimating HVAC damages, their opinions regarding such damages must be excluded because it is not reliable.

## CONCLUSION

Because the JV Opinions fail to satisfy the requirements of Fed. R. Evid. 702 and because certain opinions were not disclosed in accordance with the Federal Rules of Civil Procedure, ASIC prays that this Honorable Court issue an order which prohibits Jerkins and Varnado from opining that:

1. any unauthorized access to the interior of the Property during the Policy period;

2. any theft or vandalism occurred inside the Property during the policy period;

3. the roof membrane at the Property was damaged when thieves, vandals and/or other unauthorized persons caused damage to it by carelessly handling sharp metal parts during the policy period; and,

---

[86] *Jerkins Dep. II*, p. 182, lines 10–23; *Varnado Dep.*, p. 127, lines 4–23, p. 379, lines 9–17.

4.  the HVAC units which were subject to attempted theft on November 20, 2010 had any value and/or that any other HVAC units were subject to theft or vandalism during the policy period.

Respectfully submitted this 2nd day of September, 2015,

**BOVIS, KYLE, BURCH & MEDLIN, LLC**

200 Ashford Center North, Suite 500
Atlanta, Georgia  30338-2668
Tel: (770) 391-9100
Fax: (770) 668-0878
wdavis@boviskyle.com

_s/ William M. Davis_
Steven J. Kyle
   Ga. State Bar No. 430500
_William M. Davis_
   Ga. State Bar No. 721062
(_admitted pro hac vice_)

_Counsel for Plaintiff American Safety Indemnity Company_

**MAYNARD, COOPER & GALE, PC**

2400 Regions Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35208–2618
Tel: (205) 254-1000
Fax: (205) 254-1999

James R. Bussian
   Bar No. ASB-5105-S72B

_Counsel for Plaintiff American Safety Indemnity Company_

## CERTIFICATE OF SERVICE

This is to certify that I served the foregoing _Brief in Support of ASIC's Motion to Exclude Opinions of Jerkins and Varnado_ upon all parties using

the CM/ECF systems which will automatically send e-mail notification of

such filing to the following attorneys of record:

> Stephen A. Rowe
> Aaron G. McLeod
> Adam & Reese, LLP
> 2100 Third Avenue North, Suite 1100
> Birmingham, AL  35203

I hereby certify the foregoing has also been served upon the following

parties by placing a true and correct copy of same in the United States Mail

with adequate postage affixed, addressed to the following:

Fairfield Shopping Center, LLC       Cunthia Futter, Esq.
c/o E.M. Gewin                       Futter-Wells, PC
2527 College Street                  2463 Ashland Avenue
Montgomery, AL  36106                Santa Monica, CA  90405

This 2nd day of September, 2015,

> **BOVIS, KYLE, BURCH & MEDLIN, LLC**
>
> *s/ William M. Davis*
> ─────────────────────────
> Steven J. Kyle
>   Ga. State Bar No. 430500
> *William M. Davis*
>   Ga. State Bar No. 721062
> (*admitted pro hac vice*)
>
> *Counsel for Plaintiff American Safety Indemnity Company*